Derek W. Loeser, WSBA #24274
Gretchen S. Obrist, WSBA #37071
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| MICHAEL BEWLEY, JULIA BOSS, and TYPE 1 DIABETES DEFENSE FOUNDATION, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> CVS HEALTH CORPORATION, CAREMARK RX, L.L.C., CAREMARK RX, INC., EXPRESS SCRIPTS HOLDING COMPANY, EXPRESS SCRIPTS, INC., UNITEDHEALTH GROUP, INC., OPTUMRX, INC., ELI LILLY AND COMPANY, and NOVO NORDISK INC., <br><br> Defendants. | No. <br><br> CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

I.     INTRODUCTION .................................................................................. 1

II.    PARTIES ............................................................................................. 10

       A.    Plaintiffs ................................................................................. 10

       B.    Defendants .............................................................................. 13

III.   JURISDICTION AND VENUE ............................................................ 15

IV.    FACTUAL ALLEGATIONS ................................................................ 17

       A.    Millions of diabetes patients need to have glucagon on hand in
             case of severe hypoglycemia. ................................................. 17

       B.    The diabetes care market is enormous. .................................. 25

       C.    The prescription medical product supply chain. .................... 28

       D.    Consumer costs in the glucagon supply chain ....................... 30

       E.    The rise of the PBMs in the pharmaceutical supply chain. .... 36

       F.    The Glucagon Pricing Scheme. .............................................. 41

       G.    Glucagon's price has risen dramatically in the past decade. .. 42

       H.    PBMs collude with the Manufacturer Defendants to inflate
             glucagon prices. ..................................................................... 45

       I.    The Defendants profit at the financial and physical expense of
             consumers. ............................................................................. 47

V.     ERISA ALLEGATIONS ...................................................................... 47

       A.    The PBM Defendants are fiduciaries and parties in interest. .. 47

       B.    The PBM Defendants' ERISA duties. .................................... 55

       C.    The PBM Defendants breached their duties. ........................... 60

VI.    MEDICARE ALLEGATIONS ............................................................. 63

       A.    The Glucagon Pricing Scheme. .............................................. 63

       B.    Defendants' concealment of the Glucagon Pricing Scheme. .. 64

VII.   EQUITABLE TOLLING AND THE DISCOVERY RULE ...................... 64

VIII.  CLASS ACTION ALLEGATIONS ....................................................... 66

IX.    CLAIMS FOR RELIEF ....................................................................... 72

COUNT ONE — VIOLATIONS OF 18 U.S.C. § 1962(C)-(D) THE
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
ACT, 18 U.S.C. §1961, ET SEQ. ............................................................ 72

       A.    Description of the CVS Health RICO Enterprise. .................. 73

       B.    The CVS Health RICO Enterprise Sought to Fraudulently Increase
             Defendants' Profits and Revenues. ......................................... 76

       C.    Predicate Acts: Mail and Wire Fraud. .................................... 78

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT TWO — VIOLATIONS OF 18 U.S.C. § 1962(C)-(D) THE
    RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
    ACT, 18 U.S.C. §1961, *ET SEQ.* ................................................................ 83

    A.    Description of the Express Scripts RICO Enterprise. ........................ 84

    B.    The Express Scripts RICO Enterprise Sought to Fraudulently
        Increase Defendants' Profits and Revenues. ..................................... 87

    C.    Predicate Acts: Mail and Wire Fraud. .............................................. 89

COUNT THREE — VIOLATIONS OF 18 U.S.C. § 1962(C)-(D) THE
    RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
    ACT, 18 U.S.C. §1961, *ET SEQ.* ................................................................ 94

    A.    Description of the OptumRx RICO Enterprise. ................................. 95

    B.    The OptumRx RICO Enterprise Sought to Fraudulently Increase
        Defendants' Profits and Revenues. .................................................... 98

    C.    Predicate Acts: Mail and Wire Fraud. ............................................ 100

COUNT FOUR — VIOLATION OF §§ 1 AND 3 OF THE SHERMAN ACT, 15
    U.S.C. §§ 1, 3, *ET SEQ.* ......................................................................... 104

    A.    Description of Defendants' Price Fixing and Inflationary
        Arrangement. .................................................................................. 106

    B.    Defendants' Violations Restrained Competition and Damaged
        Plaintiffs and the Classes. .............................................................. 109

COUNT FIVE — VIOLATIONS OF STATE ANTITRUST AND RESTRAINT
    OF TRADE LAWS ................................................................................... 111

COUNT SIX — PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. § 1132(A)(3)
    FOR VIOLATIONS OF ERISA § 406(B), 29 U.S.C. § 1106(B) ............... 119

COUNT SEVEN — PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. §
    1132(A)(3) FOR VIOLATIONS OF ERISA § 404, 29 U.S.C. § 1104 ...... 121

COUNT EIGHT — PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. §
    1132(A)(3) FOR VIOLATIONS OF ERISA § 702, 29 U.S.C. § 1182 ...... 123

COUNT NINE — PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. § 1132(A)(3)
    FOR KNOWING PARTICIPATION IN VIOLATIONS OF ERISA ......... 126

COUNT TEN — VIOLATIONS OF ALABAMA DECEPTIVE TRADE
    PRACTICES ACT (ALA. CODE § 8-19-1, *ET SEQ.*) ............................. 128

COUNT ELEVEN — VIOLATION OF THE ALASKA UNFAIR TRADE
    PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT.
    § 45.50.471, *ET SEQ.*) ........................................................................... 131

COUNT TWELVE — VIOLATIONS OF THE ARIZONA CONSUMER
    FRAUD ACT (ARIZ. REV. STAT. § 44-1521, *ET SEQ.*) ...................... 133

COUNT THIRTEEN — VIOLATIONS OF THE ARKANSAS DECEPTIVE
    TRADE PRACTICE ACT (ARK. CODE ANN. § 4-88-101, *ET SEQ.*) .... 136

COUNT FOURTEEN — VIOLATION OF CALIFORNIA CONSUMERS
    LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*) .......... 139

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT FIFTEEN — VIOLATIONS OF CALIFORNIA FALSE
    ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*) ..............143

COUNT SIXTEEN — VIOLATIONS OF THE CALIFORNIA UNFAIR
    COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)................145

COUNT SEVENTEEN — VIOLATIONS OF THE COLORADO CONSUMER
    PROTECTION ACT (COL. REV. STAT. § 6-1-101, *ET SEQ.*)................................147

COUNT EIGHTEEN — VIOLATIONS OF CONNECTICUT UNFAIR TRADE
    PRACTICES ACT (CONN. GEN. STAT. § 42-110A, *ET SEQ.*)...........................150

COUNT NINETEEN — VIOLATIONS OF THE DELAWARE CONSUMER
    FRAUD ACT (6 DEL. CODE § 2513, *ET SEQ.*) ........................................................153

COUNT TWENTY — VIOLATIONS OF FLORIDA'S UNFAIR &
    DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. § 501.201, *ET
    SEQ.*)........................................................................................................................156

COUNT TWENTY-ONE — VIOLATIONS OF GEORGIA'S FAIR BUSINESS
    PRACTICES ACT (GA. CODE ANN. § 10-1-390, *ET SEQ.*)...................................159

COUNT TWENTY-TWO — VIOLATIONS OF GEORGIA'S UNIFORM
    DECEPTIVE TRADE PRACTICES ACT (GA. CODE ANN. § 10-1-370,
    *ET SEQ.*) ...................................................................................................................162

COUNT TWENTY-THREE — UNFAIR AND DECEPTIVE ACTS IN
    VIOLATION OF HAWAII LAW (HAW. REV. STAT. § 480, *ET SEQ.*).................165

COUNT TWENTY-FOUR — VIOLATIONS OF THE IDAHO CONSUMER
    PROTECTION ACT (IDAHO CODE § 48-601, *ET SEQ.*) ........................................168

COUNT TWENTY-FIVE — VIOLATIONS OF ILLINOIS CONSUMER
    FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS
    505/1, *ET SEQ.* AND 720 ILCS 295/1A).......................................................................171

COUNT TWENTY-SIX — VIOLATIONS OF THE INDIANA DECEPTIVE
    CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3) ............................................174

COUNT TWENTY-SEVEN — VIOLATION OF THE IOWA PRIVATE RIGHT
    OF ACTION OR CONSUMER FRAUDS ACT (IOWA CODE § 714H.1,
    *ET SEQ.*) ...................................................................................................................177

COUNT TWENTY-EIGHT — VIOLATIONS OF THE KANSAS CONSUMER
    PROTECTION ACT (KAN. STAT. ANN. § 50-623, *ET SEQ.*)................................179

COUNT TWENTY-NINE — VIOLATIONS OF THE KENTUCKY
    CONSUMER PROTECTION ACT (KY. REV. STAT. § 367.110, *ET
    SEQ.*)........................................................................................................................183

COUNT THIRTY — VIOLATIONS OF THE LOUISIANA UNFAIR TRADE
    PRACTICES AND CONSUMER PROTECTION LAW (LA. REV.
    STAT. § 51:1401, *ET SEQ.*) .....................................................................................185

COUNT THIRTY-ONE — MAINE UNFAIR TRADE PRACTICES ACT
    (MUTPA) AND UNIFORM DECEPTIVE TRADE PRACTICES ACT
    (MUDTPA) (5 M.R.S.A. § 205-A *ET SEQ.*, 5 M.R.S.A. § 1211 *ET SEQ.*) ...............188

COUNT THIRTY-TWO — VIOLATIONS OF THE MARYLAND
    CONSUMER PROTECTION ACT (MD. CODE COM. LAW § 13-101,
    *ET SEQ.*) ...................................................................................................................191

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT THIRTY-THREE — DECEPTIVE ACTS OR PRACTICES
    PROHIBITED BY MASSACHUSETTS LAW (MASS. GEN. LAWS CH.
    93A, § 1, *ET SEQ.*)..........................................................................................194

COUNT THIRTY-FOUR — VIOLATIONS OF THE MICHIGAN CONSUMER
    PROTECTION ACT (MICH. COMP. LAWS § 445.903, *ET SEQ.*) ..........................198

COUNT THIRTY-FIVE — VIOLATIONS OF MINNESOTA PREVENTION
    OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68, *ET SEQ.*).....................201

COUNT THIRTY-SIX — VIOLATIONS OF MINNESOTA UNIFORM
    DECEPTIVE TRADE PRACTICES ACT (MINN. STAT. § 325D.43-48,
    *ET SEQ.*) .......................................................................................................204

COUNT THIRTY-SEVEN — VIOLATIONS OF MISSISSIPPI CONSUMER
    PROTECTION ACT (MISS. CODE. ANN. § 75-24-1, *ET SEQ.*).............................207

COUNT THIRTY-EIGHT — VIOLATIONS OF MISSOURI
    MERCHANDISING PRACTICES ACT (MO. REV. STAT. § 407.010,
    *ET SEQ.*) .......................................................................................................210

COUNT THIRTY-NINE — VIOLATION OF THE MONTANA UNFAIR
    TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973
    (MONT. CODE § 30-14-101, *ET SEQ.*) ......................................................212

COUNT FORTY — VIOLATION OF THE NEBRASKA CONSUMER
    PROTECTION ACT (NEB. REV. STAT. § 59-1601, *ET SEQ.*)...............................214

COUNT FORTY-ONE — VIOLATIONS OF THE NEVADA DECEPTIVE
    TRADE PRACTICES ACT (NEV. REV. STAT. § 598.0903, *ET SEQ.*)...................216

COUNT FORTY-TWO — VIOLATIONS OF N.H. CONSUMER
    PROTECTION ACT (N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*)......................219

COUNT FORTY-THREE — VIOLATIONS OF THE NEW JERSEY
    CONSUMER FRAUD ACT (N.J. STAT. ANN. §§ 56:8-1, *ET SEQ.*) ......................222

COUNT FORTY-FOUR — VIOLATIONS OF THE NEW MEXICO UNFAIR
    TRADE PRACTICES ACT (N.M. STAT. ANN. §§ 57-12-1, *ET SEQ.*)...................225

COUNT FORTY-FIVE — VIOLATIONS OF NEW YORK GENERAL
    BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349)............................................228

COUNT FORTY-SIX — VIOLATIONS OF THE NORTH CAROLINA
    UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. GEN.
    STAT. §§ 75-1.1, *ET SEQ.*)..............................................................................230

COUNT FORTY-SEVEN — VIOLATION OF THE NORTH DAKOTA
    UNLAWFUL SALES OR ADVERTISING PRACTICES LAW (N.D.
    CENT. CODE § 51-15-02) ..................................................................................233

COUNT FORTY-EIGHT — VIOLATIONS OF THE OHIO CONSUMER
    SALES PRACTICES ACT (OHIO REV. CODE §§ 1345.01, *ET SEQ.*)....................235

COUNT FORTY-NINE — VIOLATIONS OF THE OHIO DECEPTIVE TRADE
    PRACTICES ACT (OHIO REV. CODE § 4165.01, *ET SEQ.*)..................................238

COUNT FIFTY — VIOLATIONS OF OKLAHOMA CONSUMER
    PROTECTION ACT (OKLA. STAT. TIT. 15 § 751, *ET SEQ.*)................................241

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT FIFTY-ONE — VIOLATIONS OF THE OREGON UNLAWFUL
    TRADE PRACTICES ACT (OR. REV. STAT. §§ 646.605, *ET SEQ.*) ......................244

COUNT FIFTY-TWO — VIOLATIONS OF THE PENNSYLVANIA UNFAIR
    TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S.
    § 201-1, *ET SEQ.*) ................................................................................247

COUNT FIFTY-THREE — VIOLATION OF THE RHODE ISLAND UNFAIR
    TRADE PRACTICES AND CONSUMER PROTECTION ACT (R.I.
    GEN. LAWS § 6-13.1, *ET SEQ.*)................................................................250

COUNT FIFTY-FOUR — VIOLATIONS OF THE SOUTH CAROLINA
    UNFAIR TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10, *ET
    SEQ.*)......................................................................................................252

COUNT FIFTY-FIVE — VIOLATION OF THE SOUTH DAKOTA
    DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION
    LAW (S.D. CODIFIED LAWS § 37-24-6)....................................................254

COUNT FIFTY-SIX — VIOLATIONS OF TENNESSEE CONSUMER
    PROTECTION ACT OF 1977 (TENN. CODE ANN. § 47-18-101, *ET
    SEQ.*)......................................................................................................256

COUNT FIFTY-SEVEN — VIOLATIONS OF THE DECEPTIVE TRADE
    PRACTICES ACT – CONSUMER PROTECTION ACT (TEX. BUS. &
    COM. CODE §§ 17.41, *ET SEQ.*).............................................................259

COUNT FIFTY-EIGHT — VIOLATIONS OF UTAH CONSUMER SALES
    PRACTICES ACT (UTAH CODE ANN. § 13-11-1, *ET SEQ.*) ................................262

COUNT FIFTY-NINE — VIOLATIONS OF VERMONT CONSUMER
    PROTECTION ACT (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*) ...........................265

COUNT SIXTY — VIOLATIONS OF THE VIRGINIA CONSUMER
    PROTECTION ACT (VA. CODE ANN. §§ 59.1-196, *ET SEQ.*)...........................268

COUNT SIXTY-ONE — VIOLATIONS OF THE WASHINGTON
    CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. §§
    19.86.010, *ET SEQ.*)................................................................................270

COUNT SIXTY-TWO — VIOLATIONS OF THE WEST VIRGINIA
    CONSUMER CREDIT AND PROTECTION ACT (W. VA. CODE §
    46A-1-101, *ET SEQ.*) ..............................................................................273

COUNT SIXTY-THREE — VIOLATIONS OF THE WISCONSIN DECEPTIVE
    TRADE PRACTICES ACT (WIS. STAT. § 100.18) ..................................................276

COUNT SIXTY-FOUR — VIOLATIONS OF THE WYOMING CONSUMER
    PROTECTION ACT (WYO. STAT. §§ 40-12-101, *ET SEQ.*)...................................278

COUNT SIXTY-FIVE — COMMON LAW FRAUD ......................................................282

COUNT SIXTY-SIX — UNJUST ENRICHMENT ........................................................284

X.     PRAYER FOR RELIEF .............................................................................284

XI.    JURY DEMAND ........................................................................................286

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# I.    INTRODUCTION

1.    Nearly 30 million people, 9.3% of the country, have diabetes.[1] People with diabetes cannot produce the hormone insulin or cannot use insulin effectively enough, causing glucose, or sugar, to build up in the bloodstream. Approximately six million Americans rely on insulin treatments to control their blood sugar level.[2] Failure to properly control blood sugar can have severe long-term consequences, including damage to internal organs, nerves, eyes, feet, and skin.[3]

2.    The more immediate effects of improperly controlled blood sugar levels are devastating as well. If a person with diabetes has too little insulin in her system, she can lose consciousness and die within days.[4] Conversely, too much insulin can also cause serious health consequences, including death, when blood sugar levels plunge without being noticed or more rapidly than the patient is able to treat her low blood sugar (hypoglycemia) with oral carbohydrates.[5] In cases of severe hypoglycemia, the patient becomes incapable of swallowing and may lose consciousness, thus requiring emergency treatment administered by someone else.[6] Severe hypoglycemia is a deadly and unfortunately common danger for diabetes patients. Indeed, it has been estimated that 6, 7, or even 10 percent of people with type 1 diabetes die from hypoglycemia.[7]

---

[1] *National diabetes statistics report: estimates of diabetes and its burden in the United States*, CENTERS FOR DISEASE CONTROL AND PREVENTION [herein after CDC], (2014), https://www.cdc.gov/diabetes/pubs/statsreport14/national-diabetes-report-web.pdf.

[2] *Id.*

[3] *Chronic Disease Prevention and Health Promotion: Diabetes*, CENTERS FOR DISEASE CONTROL AND PREVENTION (July 25, 2016), https://www.cdc.gov/chronicdisease/resources/publications/aag/diabetes.htm.

[4] *Diabetic ketoacidosis*, Mayo Clinic: Diseases and Conditions, http://www.mayoclinic.org/diseases-conditions/diabetic-ketoacidosis/basics/definition/con-20026470 (last visited Mar. 10, 2017).

[5] *See* National Institute of Diabetes and Digestive and Kidney Diseases [hereinafter NIDDKD], *Low Blood Glucose (Hypoglycemia)*, NIDDKD (last visited May 19, 2017) https://www.niddk.nih.gov/health-information/diabetes/overview/preventing-problems/low-blood-glucose-hypoglycemia.

[6] Philip E. Cryer, *Death During Intensive Glycemic Therapy of Diabetes: Mechanisms and Implications*, 124 AM. J. MED. 993, 993 (2011), http://www.amjmed.com/article/S0002-9343(11)00687-5/pdf.

[7] *Id.* at 993.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 1

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

3.     Insulin works in tandem with another hormone, glucagon, which causes the body to release stored glucose into the blood stream.[8] In the bodies of people who do not have diabetes, when blood sugar levels drop too low, pancreatic cells release glucagon, which causes the liver to convert stored glycogen into glucose, raising the blood sugar level.[9] In addition to interfering with the body's ability to produce (in the case of type 1 diabetes) or use (in the case of type 2 diabetes) insulin, however, diabetes interferes with the body's glucagon functions.[10] Thus, injectable glucagon is a vital emergency treatment for severe hypoglycemic episodes. Indeed, it is "the only first-line treatment for severe hypoglycemia that can be administered in a nonmedical environment."[11]

4.     Only two companies market glucagon kits in the United States: Defendants Novo Nordisk, Inc., and Eli Lilly and Company (collectively, the "Manufacturer Defendants"). Novo Nordisk markets its emergency glucagon treatment under the name GlucaGen HypoKit. Eli Lilly markets its product under the name Glucagon Emergency Kit.

5.     The costs of diabetes medicine and supplies, including glucagon, have ballooned recently because diabetes-related drugs and supplies are subject to pricing abuses. For example, the price of insulin has soared over the last decade—a prescription that might have cost $25 in the past, now costs consumers between $250 and $450. As recent articles have revealed, the prices for insulin have surged in part because of powerful middlemen—pharmacy benefit managers, or PBMs—who negotiate the prices of drugs and other products on behalf of their clients, insurers.[12] PBMs profit from "rebates" received from manufacturers in exchange for

---

[8] Susan York Morris & Darren Hein, *How Insulin and Glucagon Work*, HEALTHLINE (Nov. 11, 2016), http://www.healthline.com/health/diabetes/insulin-and-glucagon#Introduction1.

[9] *Id.*

[10] *See id.*

[11] Nitil Kedia, *Treatment of severe diabetic hypoglycemia with glucagon: an underutilized therapeutic approach*, 4 DIABETES, METABOLIC SYNDROME AND OBESITY: TARGETS AND THERAPY at 338 (Sept. 6, 2011).

[12] *See, e.g.*, Kasia Lipska, *Break Up the Insulin Racket*, N.Y. TIMES (Feb. 20, 2016), https://www.nytimes.com/2016/02/21/opinion/sunday/break-up-the-insulin-racket.html; Wayne Winegarden, *The Economic Costs of Pharmacy Benefit Managers: A Review of the Literature*, PACIFIC RESEARCH INSTITUTE (May 2017), http://www.pacificresearch.org/article/new-brief-highlights-the-economic-costs-of-pharmacy-benefit-managers/.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

making the manufacturers' prescription products available to their clients. In the case of insulin, manufacturers have artificially increased the list price for the drug to accommodate PBM "rebates"—which are estimated to comprise up to 50 percent of the list price of insulin,[13] if not more.

6.    PBMs and drug manufacturers have used a similar scheme to artificially inflate the price of injectable glucagon, the focus of this case. A recent article noted that the list price for Eli Lilly's glucagon product has increased 544% since it was originally approved in 1998.[14]

7.    Diabetes patients who take insulin, particularly those on intensive insulin therapy, need to have injectable glucagon on hand. If a person with diabetes experiences extremely low blood sugar—such as from injecting too much insulin, from exercising strenuously, or due to illness—she may become disoriented, dizzy, and eventually unconscious.[15] And, while patients on intensive insulin therapy—whether they take multiple daily injections of insulin or use an insulin pump to keep blood sugar levels from rising too high—benefit from reduced or delayed vascular complications of diabetes by taking multiple daily insulin injections or using an insulin pump to try to keep blood sugar levels from rising too high, those "benefits are counterbalanced by the increased risk of hypoglycemia that is an inevitable side effect of intensive insulin therapy."[16] Although a person can drink juice or take glucose tablets to raise her blood sugar level during mild low blood sugar episodes, if she is unaware that her blood sugar is low or unable to keep food down, a diabetes patient may lose consciousness or even die without emergency intervention.[17]

8.    This is where emergency glucagon comes in. When a diabetes patient is unconscious due to severe hypoglycemia, another person administers the glucagon injection to

---

[13] Lipska, *supra* note 12.

[14] Lydia Ramsey, *Diabetics can spend $1,000 a month taking care of themselves – and it's not just because of insulin*, BUSINESS INSIDER (Sep. 19, 2016, 1:52 PM), http://www.businessinsider.com/costs-to-manage-type-1-diabetes-2016-9.

[15] Kedia, *supra* note 11, at 338.

[16] *Id.* at 337.

[17] *See* NIDDKD, *supra* note 5.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 3

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

raise the patient's blood sugar level and avoid more serious complications while waiting for medical assistance.[18] The emergency use of glucagon not only can help save a life and preserve the health of someone experiencing severe hypoglycemia, but it has the potential to reduce healthcare costs by reducing the number of people who need to be admitted to the hospital for severe low blood sugar.[19]

9.     Because low-blood sugar emergencies can come on suddenly and unexpectedly, manufacturers advise diabetes patients, and parents whose children have diabetes to purchase multiple glucagon kits. Eli Lilly, for example, gives parents the following advice:

**Figure 1: Eli Lilly Glucagon Emergency Kit[20]**

> **Ask your child's healthcare provider about prescribing more than one Lilly Glucagon Emergency Kit for severe low blood sugar.**

10.     Moreover, glucagon expires, meaning that even if a diabetes patient does not need to be treated with any or all of her supply of glucagon, she must replace the drug anyway.[21]

11.     Even though the Manufacturer Defendants advertise the need for diabetes patients to have not just one, but multiple glucagon kits for emergency situations,[22] they also have been steadily increasing the price for glucagon kits—in lock-step, as described further below.

12.     Like the skyrocketing price of insulin, the list prices of glucagon are artificially inflated as a result of a scheme, enterprise, and price-fixing conspiracy among the Manufacturer Defendants and the three largest PBMs (collectively, as defined below, the "PBM Defendants"). In this "Glucagon Pricing Scheme," the Manufacturer Defendants set two different prices for

---

[18] *See* Kedia, *supra* note 11, at 343.

[19] *Id.* at 344.

[20] Eli Lilly and Company, *Glucagon: You might not need it, but you need to know it's there*,
http://www.lillyglucagon.com/assets/pdf/glucagon_brochure.pdf (last visited May 23, 2017).

[21] *Id.*

[22] *See, e.g., id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 4

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

glucagon—a publicly-available "list" price and an undisclosed lower "net" price that the PBMs actually pay for the drug.

13.    And, also like insulin, glucagon is a big business. In 2015, the annual glucagon market in the United States for the treatment of severe hypoglycemia was approximately $160 million.[23] One industry estimate valued the glucagon market in the United States in 2015 at $305 million.[24] For Medicare alone, aggregate spending for glucagon in 2015 reached $10,395,862.[25] Medicare beneficiaries paid an additional $2,150,442 annually out-of-pocket for glucagon.[26] Medicare reported that the annual change in average cost per unit for glucagon was a 24% increase.[27]

14.    The Glucagon Pricing Scheme is possible because of the insidious role that PBMs play in the pharmaceutical supply chain. The PBM Defendants serve as both middlemen and gatekeepers between drug and medical supply manufacturers on the one hand, and health insurers and patients on the other. For the PBM Defendants, business is booming. Combined, they report more than $200 billion a year in revenue.[28] They control over 80% of the industry, administering and managing pharmacy benefits for over 180 million insureds.[29]

15.    PBMs are supposed to negotiate lower prices for their clients, health insurers and plan administrators.[30] Using the sheer volume of their clients as leverage, the PBM Defendants set up exclusionary tiered formularies—ranked lists of drugs—where some cheaper and more effective products are supposed to be placed into lower tiers, generally with lower cost-sharing

---

[23] Biodel Inc., Current Report, Ex 99.1 (Form 8-K) (April 6, 2015).

[24] Britt Jensen, *From peptide to patient – Building a portfolio of specialty medicines*, at 15, ZEALAND PHARMA A/S (Nov. 28, 2016), https://abonnement.ugebrev.dk/investordag-biotek-pharma/presentations/Zealand_presentation.pdf.

[25] *Medicare Drug Spending Dashboard 2015*, CENTERS FOR MEDICARE & MEDICAID SERVICES, https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/Dashboard/2015-Medicare-Drug-Spending/medicare-drug-spending-dashboard-2015-data.html (last visited May 23, 2017).

[26] *See id.*

[27] *Id.*

[28] Lipska, *supra* note 12.

[29] *Id.*

[30] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 5

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

amounts due from patients. Plan administrators and health insurers rely on PBMs' formularies to calculate how much of their insureds' costs for formulary drugs they will cover. Drugs that are in the lower, preferred, formulary tiers should be cheaper for health plan members.

16.     If two drugs are basically interchangeable, as the GlucaGen HypoKit and Glucagon Emergency Kit are, a PBM sometimes will exclude from its formulary the more expensive version—again, supposedly based on the price of the drug for consumers. Health plans that use a PBM's formulary either will not reimburse members for the purchase price of drugs that are excluded from the formulary or will require members to pay a larger coinsurance amount based on the list price rather than the actual net price that the PBM paid. Thus, exclusionary formularies allow PBMs, including the PBM Defendants, to push patients toward certain brands over others. This gives PBM Defendants enormous control over purchasing and leverage over manufacturers.

17.     While the PBM Defendants could use this market power to drive down the prices for drugs by forcing manufacturers to compete on price for formulary placement, instead they and the Manufacturer Defendants have figured out a way to game the system for their mutual benefit. To gain formulary access, which is controlled by the PBM Defendants, the Manufacturer Defendants inflate their list prices and then "rebate" a significant portion of the list price back to the PBM Defendants. The rebates are provided under a variety of labels—discounts, credits, concession fees, etc. [31] Regardless of the term used to describe them, they are a *quid pro quo* for formulary inclusion or preferential placement. In the context of this complaint, rebates should be understood to include all payments or financial benefits of any kind conferred by the Manufacturer Defendants to the PBM Defendants, either directly via contract or indirectly via manufacturer-controlled intermediaries.

---

[31] *See, e.g.*, Linda Cahn, *Don't Get Trapped By PBMs' Rebate Labeling Games*, MANAGED CARE, (Jan. 2009), https://www.managedcaremag.com/archives/2009/1/don-t-get-trapped-pbms-rebate-labeling-games.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 6

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

18.     The result of this rebating scheme is a vast difference between the list price reported by the Manufacturer Defendants and the actual net price obtained by the Manufacturer Defendants after the PBM Defendants have taken their rebates.

19.     The PBM Defendants may pass a portion of the rebates to their major insurer clients, some of which are owned by or affiliated with them, and pocket the rest. The higher the rebate, the more the PBM Defendants can retain. The total amount and nature of the rebates, the amount that the PBM Defendants pocket, and the amount that the PBM Defendants pass through to payers are all carefully guarded secrets.[32]

20.     This rebate scheme creates the best of both worlds for Defendants. The PBM Defendants obtain large rebates in exchange for granting access to the exclusionary formularies, increasing their take, and the Manufacturer Defendants pay rebates from their increased revenue from selling their pharmaceutical products at inflated prices. This is because the net price for glucagon—the amount that the PBM Defendants actually pay—is independent of the list price. This is the same tactic that manufacturers and PBMs use to artificially inflate the list price of insulin.

21.     The result of this scheme is a wide gap between the price paid by the PBM Defendants for glucagon (*i.e.*, the net realized price actually received by the Manufacturer Defendants), and the publicly available manufacturer list prices. Because only the Manufacturer Defendants market glucagon, diabetes patients have no choice but to be subject to Defendants' Glucagon Pricing Scheme to get this life-saving emergency treatment.

22.     The PBM Defendants tout their market power to drive down prices for prescription products. They boast about the "rebates" or "discounts" for which they bargain with manufacturers. The story they tell is that these rebates and discounts are obtained for the benefit of patients since they purportedly result in lower costs for prescription products. For example,

---

[32] *See* Winegarden, *supra* note 1, at 5; Lipska, *supra* note 12.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 7

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Express Scripts claims, "[w]e put medicine within reach of patients while helping health benefit providers improve access to prescription drugs and make them more affordable. . . ."[33]

23.    OptumRx also claims that its PBM "businesses have dedicated units that help improve overall health system performance through optimizing care quality, reducing costs and improving consumer experience and care provider performance leveraging distinctive capabilities in data and analytics, pharmacy care services, population health, health care delivery and health care operations."[34]

24.    CVS Health Corp. contends, "[w]e assist our clients in designing pharmacy benefit plans that help minimize the costs to the client while helping improve health outcomes . . . ."[35]

25.    But the story that the PBM Defendants tell is far from the whole truth. They obtain rebates and discounts, but neglect to reveal the portion of the rebates that they pocket or pass to their insurer clients. They also neglect to reveal that their formulary decisions are based on the amount of the spread they obtain from the rebate paid by manufacturers. And they neglect to reveal that the consequence of this scheme is higher costs for patients, because PBMs calculate payments for some insureds at the pharmacy point of sale based on the unrebated list price of medical products, not the lower price actually paid by the PBMs after all rebates and other financial benefits received by the PBMs from the Manufacturers and other third parties are taken into account. Indeed, the PBM Defendants misrepresent the role they play in the supply chain, and their impact on the prices actually paid by consumers—including even uninsured consumers, who are also subject to inflated list prices. The PBMs are avaricious middlemen, with a stranglehold on the medical supply chain. Their scheme to sell formulary access in exchange for increasingly large rebates drives up the cost of prescription drugs for the people who need to use them to stay alive.

---

[33] Express Scripts Holding Company, Annual Report (Form 10-K) (Dec. 31, 2016).
[34] UnitedHealth Care, Annual Report (Form 10-K) (Dec. 31, 2016).
[35] CVS Health Corp., Annual Report (Form 10-K) (Feb. 9, 2017).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 8

26.     The Manufacturer Defendants are equally at fault. Their conduct, including their collusion with PBM Defendants to hide net prices (and, therefore, rebate amounts) from consumers deprives patients of a fair price for glucagon—a price that would result from the operation of normal market forces. They maintain or increase their ability to sell glucagon to the millions of Americans who depend on it without having to lower the "real," net prices to gain market share. They bargain for market share by providing ever-larger rebates to PBMs and, in some cases, entering into exclusive relationships with those PBMs, inflating the prices paid by consumers in order to preserve or increase their net realized price. Their refusal to disclose their net realized prices for glucagon and the web of confidentiality agreements they have created and/or participated in with PBMs have been critical to the furtherance of the Glucagon Pricing Scheme.

27.     By hiking list prices, the Manufacturer Defendants reap their own significant profits through additional sales at higher prices (particularly to the uninsured, whose purchases are immune from the PBMs' cut).

28.     People with diabetes who use insulin and are thus exposed on a daily basis to the risk of life-threatening episodes of severe hypoglycemia are the victims of the Defendants' Glucagon Pricing Scheme. These patients are burdened with exorbitant out-of-pocket expenses for glucagon because their payment obligations are based on the list prices, not the opaque net prices provided to the PBM Defendants. This is so regardless of whether these patients are uninsured and paying the entire list price or whether they are insured and paying large deductibles, coinsurance, or high-tier copayments. All of these patients are making payments based on the inflated list price.

29.     The hardship—monetary, physical, and emotional—caused by the Glucagon Pricing Scheme is terrible. Because of the inflated list price of glucagon, some people with diabetes go without the emergency drug on hand.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

30.    This lawsuit alleges that the three largest PBMs—CVS Health, Express Scripts, and OptumRx—violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, federal and state antitrust laws, various state consumer protection laws, and state common law, by engaging in extortion, a RICO enterprise, a self-dealing and conflict-laden scheme, and deceptive conduct, whose purpose is to unlawfully extract ever-larger portions of rebates along with other payments—"PBM Kickbacks"—from the Manufacturer Defendants. Plaintiffs further allege that the Manufacturer Defendants have provided the PBM Defendants increasingly large rebates and kickbacks by inflating the list prices of glucagon, and then have further conspired with the PBM Defendants and their insurer clients to prevent disclosure of net prices to consumers—also in violation of the aforementioned laws. Defendants' Glucagon Pricing Scheme directly and foreseeably causes consumers to overpay for this life-saving drug. Thus, this action is brought to redress Plaintiffs' injuries that flow from Defendants' Glucagon Pricing Scheme—which has driven up the cost of glucagon to the substantial benefit of PBMs and glucagon manufacturers—and to obtain prospective injunctive relief to curtail Defendants' practices and provide greater transparency in glucagon pricing, as well as lower prices going forward. The causes of action asserted herein allow, *inter alia*, the remedies of monetary damages, damage multipliers, surcharge, restitution, injunctive relief, and other equitable relief.

## II.    PARTIES

### A.    Plaintiffs

31.    **Plaintiff Michael Bewley** is domiciled in New York. He has type 1 diabetes and he needs to keep glucagon on hand in case he suffers a severe hypoglycemic episode. Bewley is insured through his wife's employer, HSBC, and is enrolled in the HSBC – North America U.S. Consolidated Health and Welfare Plan, for which Defendant CVS Caremark administers the pharmacy benefits. The plan is an employee welfare benefit health plan governed by ERISA. On

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

numerous occasions, pursuant to the terms of his plan, Bewley paid a copay or coinsurance for the Glucagon Emergency Kit produced by Defendant Eli Lilly.

32.     From 2013 to 2016, Bewley was enrolled in the HSBC Blue Cross Blue Shield PPO Plan for which Defendant CVS Caremark administered the pharmacy benefits. Under this plan, Bewley was forced to pay a high copay for Eli Lilly's Glucagon Emergency Kits. On numerous occasions in 2016 Bewley paid a $100 copay for the glucagon kits.

33.     As of January 1, 2017, Bewley is enrolled in the HSBC Blue Cross Blue Shield Health Savings Plan, for which Defendant CVS Caremark administers the pharmacy benefits. Bewley's current plan requires him to pay 100% of the list price of glucagon kits until he meets his $2,600 deductible, after which the plan pays 90% of the list price of the kits.

34.     **Plaintiff Julia Boss** is domiciled in Oregon. She is the mother and a caretaker for her minor daughter who was diagnosed with type 1 diabetes in March 2015. In both Oregon and Washington, where she formerly resided, Boss purchased and enrolled in health benefit plans through the Affordable Care Act ("ACA") marketplace, as well as directly through an insurer, for which Defendants CVS Health and Express Scripts administer pharmacy benefits. On numerous occasions, pursuant to the terms of those plans, Boss paid a copay, coinsurance, and/or the full list price for the Glucagon Emergency Kit produced by Eli Lilly.

35.     In 2015, while residing in Washington, Boss was enrolled in the Assurant Health Washington CoreMed Bronze 1 Plan, for which Defendant CVS Caremark administered the pharmacy benefits. Under this plan, Boss paid 100% of the list price of the Glucagon Emergency Kit until she met her $6,000 deductible/out-of-pocket maximum, after which the plan paid 100% of the list price of the Glucagon Emergency Kit.

36.     On January 1, 2016, Boss enrolled in the Premera Blue Cross Preferred Silver 3000 HSA, for which Express Scripts administered the pharmacy benefits. During this time Plaintiff Boss paid 100% of the list price of the Glucagon Emergency Kit until she met the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 11

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

$3,000 deductible, after which she paid a 20% coinsurance. Once she met the $4,100 out-of-pocket limit, the plan paid 100% of the list price of the Glucagon Emergency Kit.

37.    During August 2016, Boss and her family moved to Eugene, Oregon, where she enrolled in the Moda Health Oregon Standard Silver Plan using the ACA Marketplace. The plan had an effective date of September 1, 2016 and included a prescription benefit administered by MedImpact. Under this plan, Boss paid a $50 copay for her daughter's Glucagon Emergency Kit.

38.    As of January 1, 2017, Boss is enrolled in the Providence Oregon Standard Silver Plan, for which Argus Health Systems, Inc. administers the pharmacy benefits. Under the terms of her current plan, Boss pays a $50 copay per refill for her daughter's Glucagon Emergency Kits. Since her daughter's diagnosis in March 2015, Boss has paid approximately $2,161 for Glucagon Emergency Kits, $2,060 of which she paid while residing in Washington.

39.    **Plaintiff Type 1 Diabetes Defense Foundation ("T1DF")** is a not-for profit corporation initially incorporated in Washington State and currently organized and existing under the laws of the State of Oregon. T1DF is an organization operated exclusively for charitable purposes and to promote the social welfare, further the common good, and protect the legal rights of all individuals diagnosed with type 1 diabetes and individuals with other insulin-dependent diabetes. In furtherance of its goals, the organization works through lobbying, litigation, and campaigns to raise public awareness about issues that affect people with type 1 diabetes.

40.    On information and belief, each individual paid out-of-pocket for Glucagon Emergency Kit and GlucaGen HypoKit based on an artificially inflated list price. As a result, each individual Plaintiff has been injured and Plaintiffs have standing to protect their own rights and the rights of others whose interests are at stake in this case.

41.    Together, Plaintiffs Boss and T1DF seek to represent the Non-ERISA Employee/Exchange Plan Class as the "Non-ERISA Employee/Exchange Plaintiffs." T1DF seeks to represent the Medicare Class as the "Medicare Plaintiffs" and the Uninsured Class as the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 12

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

"Uninsured Plaintiffs." Together, Plaintiffs Bewley and T1DF seek to represent the ERISA Class as the "ERISA Plaintiffs." The respective Classes are defined below.

**B.    Defendants**

42.    **Defendant CVS Health Corporation** is a corporation organized under the laws of Delaware and headquartered at One CVS Drive, Woonsocket, Rhode Island, 02895. CVS Health Corporation is a pharmacy benefit manager and, as such, contracts on behalf of health plans and insurers with the Manufacturer Defendants for the glucagon that these companies make. CVS Health Corporation provides comprehensive prescription benefit management services to over 2,000 health plans, including corporations, managed care organizations, insurance companies, unions and government entities, and covers 65 million lives.[36] CVS Health Corporation reported $177.5 billion in revenue in 2016.[37]

43.    **Defendant Caremark Rx, L.L.C.** is a Delaware limited liability company and an immediate or indirect parent of many subsidiaries, including pharmacy benefit management subsidiaries. Caremark Rx, L.L.C. is a subsidiary of Defendant CVS Health Corporation.

44.    **Defendant Caremark Rx, Inc.** is a corporation organized under the laws of Delaware and headquartered at 211 Commerce Street, Suite 800, Nashville, Tennessee, 37201. Caremark Rx, Inc. is an immediate or indirect parent of many subsidiaries, including pharmacy benefit management subsidiaries, and a subsidiary of Defendant CVS Health Corporation. Collectively, Defendant CVS Health Corporation, Defendant Caremark Rx, L.L.C. and Defendant Caremark Rx, Inc. are referred to as "CVS Health."

45.    **Defendant Express Scripts Holding Company** is a Delaware corporation. Its principal place of business is at 1 Express Way, St. Louis, Missouri, 63121.

---

[36] Ed Kaplan & Wendy Pongracz, *Negotiating and Drafting Pharmacy Benefit Manager Contracts for Self-Insured Plans*, STRAFFORD (June 21, 2016), http://media.straffordpub.com/products/negotiating-and-drafting-pharmacy-benefit-manager-contracts-for-self-funded-plans-2016-06-21/presentation.pdf.

[37] CVS Health Corp., Annual Report (Form 10-K) (Dec. 31, 2016).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

46.     **Defendant Express Scripts, Inc.** is a corporation organized under the laws of Delaware and headquartered at 1 Express Way, St. Louis, Missouri, 63121. Express Scripts is a pharmacy benefit manager and, as such, contracts on behalf of health plans and insurers with the Manufacturer Defendants for purchase of the glucagon that these companies make. As the largest pharmacy benefit management organization in the United States, Defendant Express Scripts Inc. covers 79 million lives[38] and the company reported $96.5 billion in revenue in 2016.[39] Defendant Express Scripts, Inc. is a subsidiary of Defendant Express Scripts Holding Company. Defendant Express Scripts, Inc., and Defendant Express Scripts Holding Company collectively are referred to as "Express Scripts."

47.     **Defendant UnitedHealth Group, Inc.** is a Delaware corporation with its principal place of business at 9900 Bren Road East, Minnetonka, Minnesota, 55343. UnitedHealth is a diversified managed healthcare company. In 2015, UnitedHealth Group reported revenue in excess of $157 billion, and the company is currently ranked sixth on the Fortune 500 list. UnitedHealth offers a spectrum of products and services including health insurance plans through its wholly owned subsidiaries and prescription products through its PBM, OptumRx.

48.     **Defendant OptumRx, Inc.** is a corporation organized under the laws of California and headquartered at 2300 Main St., Irvine, California, 92614. OptumRx is a pharmacy benefit manager and, as such, contracts on behalf of health plans and insurers with the Manufacturer Defendants for purchase of the glucagon that these companies make. As one of the largest pharmacy benefit management companies in the United States, OptumRx covers 65 million lives[40] and reported approximately $48.2 billion in revenue in 2015; and over $60.44

---

[38] Kaplan & Pongracz, *supra* note 36.
[39] Express Scripts Holding Co., *supra* note 33.
[40] Kaplan & Pongracz, *supra* note 36.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 14

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

billion in 2016.[41] Collectively, Defendant OptumRx and Defendant UnitedHealth are referred to as "OptumRx."

49.    Together, CVS Health, Express Scripts, and OptumRx are referred to as the "PBM Defendants."

50.    **Defendant Eli Lilly** and **Company ("Eli Lilly")** is an Indiana corporation, and its principal place of business is in Indianapolis, Indiana. Eli Lilly produces the emergency glucagon product Glucagon Emergency Kit. The Food & Drug Administration approved Eli Lilly's emergency glucagon product in 1998.[42]

51.    **Defendant Novo Nordisk Inc. ("Novo Nordisk")** is a Delaware corporation. Its headquarters are in Plainsboro, New Jersey. Novo Nordisk has manufactured the glucagon product GlucaGen HypoKit since 2005.[43]

52.    Together, Eli Lilly and Novo Nordisk are referred to as the "Manufacturer Defendants."

53.    Throughout this complaint, when reference is made to a Defendant or Defendants, this includes the officers, agents, or employees of said defendants as well as predecessor and successor entities to the named defendants.

### III.    JURISDICTION AND VENUE

54.    **Subject Matter Jurisdiction**. Because claims alleged in this Complaint arise under federal law, 28 U.S.C. § 1331 provides subject-matter jurisdiction in this Court. Jurisdiction also exists pursuant to 18 U.S.C. § 1964(c) because Plaintiffs allege claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. Further, 29 U.S.C. § 1132(e)(1) confers subject matter jurisdiction on this Court over claims brought under Title I of ERISA. In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337

---

[41] UnitedHealth Group, Annual Report (Form 10-K) (Dec. 31, 2016).

[42] FDA Center for Drug Evaluation and Research, Approval Package for Application No. 20928, Glucagon for Injection (Sep. 11, 1998), https://www.accessdata.fda.gov/drugsatfda_docs/nda/98/20928.pdf.

[43] News Release, Novo Nordisk, *Novo Nordisk Launches GlucaGen HypoKit* (July 12, 2005), http://press.novonordisk-us.com/News-Releases?item=122461.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 15

because this action alleges violations of an Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies. This Court also has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), (5), because Plaintiffs and most members of the putative Class are citizens of different states than the Defendants, the aggregate amount in controversy exceeds five million dollars, exclusive of interest and costs, and the Class has more than 100 members.

55.    **Personal Jurisdiction**. This Court has personal jurisdiction over Defendants because Defendants are amenable to service of process, are co-conspirators, and each has minimum contacts with this district and has purposefully availed itself of the privilege of conducting business in the State of Washington, in particular with respect to Plaintiff Boss. ERISA § 502(e)(2) and 29 U.S.C. § 1132(e)(2) provide for nationwide service of process. This Court also has personal jurisdiction over all Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in Washington.

56.    **Venue**. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), because each Defendant transacts business in, is found in, and/or has agents in the Western District of Washington, and because some of the actions giving rise to the complaint took place within this district, including with respect to Plaintiff Boss. Venue is also proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendants may be found in this District and some of the fiduciary breaches or other violations for which relief is sought on behalf of the ERISA Class occurred in or originated in this District. Venue is also proper in this District pursuant to 18 U.S.C. § 1965, because Defendants are found, have an agent, or transact their affairs in this District, and the ends of justice require that any Defendant residing elsewhere be brought before this Court.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## IV.    FACTUAL ALLEGATIONS

**A.    Millions of diabetes patients need to have glucagon on hand in case of severe hypoglycemia.**

57.    "Diabetes is a condition in which the body does not properly process food for use as energy."[44] In a person who does not have diabetes, beta cells in the pancreas secrete the hormone insulin, which controls the rate at which food is converted to glucose, or sugar, in the bloodstream so as to be effectively used by the body as energy.[45] People with diabetes are unable to make enough insulin or cannot use insulin as effectively as necessary, causing glucose, or sugar, to build up in the bloodstream.[46] Consistently high levels of blood glucose pose a number of serious health risks including "heart disease, blindness, kidney failure, and lower-extremity amputations."[47] Though treatable, diabetes can be severely debilitating or fatal if left untreated.[48] Diabetes-related complications are the "seventh leading cause of death in the United States."[49]

58.    As of 2014, 29.1 million people in the United States, or 9.3 percent of the population, had diabetes, and that number continues to grow.[50] The most common types of diabetes in the U.S. are type 1 and type 2, as well as gestational diabetes.[51] Patients with type 1 diabetes are unable to produce insulin at all because their immune system attacks and destroys the cells in the pancreas that make it.[52] Although people with type 2 diabetes are able to produce insulin, they are unable to use it effectively.[53] About 95 percent of cases of diabetes in adults are

---

[44] CDC, *Diabetes*, https://www.cdc.gov/media/presskits/aahd/diabetes.pdf (last visited May 22, 2017).
[45] NIDDKD, *supra* note 5.
[46] *Id.*
[47] CDC, *supra* note 44.
[48] *Id.*
[49] *Id.*
[50] CDC, *supra* note 1.
[51] *What is Diabetes*, NATIONAL INSTITUTE OF HEALTH (Nov. 2016), https://www.niddk.nih.gov/health-information/diabetes/overview/what-is-diabetes.
[52] *Id.*
[53] CDC, *supra* note 44.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 17

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

type 2.[54] Of persons with diabetes in the United States, approximately *six million* rely on insulin treatments to survive.[55]

59.    The hormone insulin works in tandem with another hormone secreted by the pancreas, glucagon. While insulin helps the body process glucose and lower blood sugar levels, glucagon has the opposite effect. When blood sugar levels fall too low, alpha cells in the pancreas secrete the hormone glucagon, which stimulates the liver to break down glycogen stores into glucose, which enters the bloodstream.[56]

**Figure 2: Insulin and Glucagon Physiologic Response[57]**




60.    As indicated in the figure above, people who use insulin to treat diabetes depend on a complicated daily insulin regimen to control hyperglycemia (high blood glucose levels) but

---

[54] *Id.*

[55] CDC, *supra* note 1, at 5.

[56] *See Diabetes Basics: Common Terms*, AMERICAN DIABETES ASS'N, http://www.diabetes.org/diabetes-basics/common-terms/common-terms-f-k.html (last visited May 23, 2017).

[57] Presentation, *The Future of Diabetes Control*, BIODEL (Aug. 13, 2013), 2013 Life Sciences Management Access Conference.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 18

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

also carbohydrates to manage hypoglycemia resulting from the impaired glucagon function. They must constantly track and adjust their blood sugar levels to remain healthy and reduce the chronic and acute risks associated with hypo- and hyperglycemia.

61.     Controlling blood glucose levels is vital to managing diabetes and avoiding or delaying serious complications of the disease.[58] Because diabetes patients are unable to produce sufficient glucagon, however, tighter control of blood sugar levels increases the risk of hypoglycemia. In other words, the increased risk of hypoglycemia is "an inevitable side effect of intensive insulin therapy."[59] "[I]f it was not for the barrier of hypoglycemia, people with diabetes could have normal blood glucose levels and thus avoid the complications associated with hyperglycemia."[60] Unfortunately, "the incidence of severe hypoglycemia will probably rise due to the increasing number of people with diabetes and the shift to more intensive insulin regimens."[61]

62.     Diabetes patients who manage the disease with insulin must carefully balance their insulin doses, carbohydrate intake, and physical activity to regulate their blood sugar throughout the day and night.[62] Excessively high blood sugar levels lead to organ damage and other severe health problems.[63] Low blood sugar, or hypoglycemia, however, causes early symptoms including dizziness and irritability.[64]

63.     If a diabetes patient is aware that her blood glucose level is too low, she can raise her blood sugar by consuming food that is high in sugar, such as fruit juice or glucose tablets. When a diabetes patient does not quickly consume glucose, however, low blood sugar can rapidly become an episode of severe hypoglycemia—a life-threatening event.

---

[58] Kedia, *supra* note 11, at 337.

[59] *Id.*

[60] Antonio E. Pontiroli, *Intranasal Glucagon: A Promising Approach for Treatment of Severe Hypoglycemia*, 9(I) J. OF DIABETES SCI. AND TECH. at 38 (2015).

[61] Kedia, *supra* note 11, at 344.

[62] *See* NIDDKD, *supra* note 5.

[63] Diabetic ketoacidosis, *supra* note 4.

[64] NIDDKD, *supra* note 5.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 19

64.    Severe hypoglycemia occurs when blood glucose levels drop so low that another person must intervene to treat the person with diabetes.[65] This level of hypoglycemia can result in seizure, loss of consciousness, or even death.[66] Severe hypoglycemia is associated with significant morbidity and mortality.[67]

**Figure 3: Symptoms of Hypoglycemia[68]**



65.    Low blood sugar emergencies can come on quickly and without warning.[69] For example, if a diabetes patient injects insulin in preparation for eating a meal but experiences food poisoning or a stomach flu, she may be unable to eat a meal or keep any food down.[70] The injected insulin will cause the patient's body to process the existing glucose in the blood, creating an emergency if the person is unable to ingest sugar before losing consciousness.[71]

---

[65] Pontiroli, *supra* note 60.

[66] *Id.* at 38, 39.

[67] Michael R. Rickels, et al., *Intranasal Glucagon for Treatment of Insulin-Induced Hypoglycemia in Adults With Type 1 Diabetes: A Randomized Crossover Noninferiority Study*, 39 DIABETES CARE 265 (Feb. 2016).

[68] NIDDKD, *supra* note 5, at 340.

[69] *See* NIDDKD, *supra* note 5 ("Sometimes people don't feel any symptoms.").

[70] *See id.*

[71] Rickels, *supra* note 67.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 20

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

66.     An emergency also can arise if a diabetes patient who takes multiple types of insulin accidentally injects the wrong type—taking a rapid-acting insulin when she meant to inject a gradual, long-acting insulin, for example.[72] Or a diabetes patient may simply forget to eat a needed amount of carbohydrates before bed.[73] Severe hypoglycemia also simply happens as a result of the inherent variability and instability of physiological processes that are not self-regulated by a fully functioning pancreas and its complex set of hormones. The current exclusive reliance on insulin as the basis for intervention leaves patients exposed to its residual effect long after glucose production via digestion has ceased.

67.     Any of these factors can result in a sudden emergency. Glucagon is the first-aid tool that a can be used to save a diabetes patient's life if she experiences severe hypoglycemia.[74] A glucagon kit consists of two parts: a vial of glucagon powder and a syringe filled with sterile water.[75] The person administering the glucagon injects the water into the vial, swirls the vial to dissolve the powder, refills the syringe with the glucagon solution, and injects the drug into the person suffering from severe hypoglycemia.[76] Although emergency services may still be needed, glucagon injections are a vital emergency tool for diabetes patients and their caregivers.[77] Administering glucagon "can prevent the delay in commencing treatment that is otherwise experienced while waiting for the arrival of emergency personnel, reducing the need for hospitalization and providing reassurance for patients and their caregivers."[78] A glucagon kit for emergencies is so vital that it "should be available for all people with diabetes who are being treated with insulin."[79]

---

[72] *Insulin Overdose*, DIABETES.CO.UK: THE GLOBAL DIABETES COMMUNITY, http://www.diabetes.co.uk/insulin/insulin-overdosage.html (last visited May 23, 2017).

[73] *See id.*

[74] *See* NIDDKD, *supra* note 5.

[75] U.S. Patent Application No. 62/117,031, Publication No. 2016/133863 A1 (published Aug. 25, 2016) (Eli Lilly and Company, applicant), 2.

[76] *Id.*

[77] *See id.*

[78] Rickels, *supra* note 67, at 343.

[79] Pearson, T., *Glucagon as a treatment of severe hypoglycemia*, 34 THE DIABETES EDUCATOR at 131 (2008).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 21

68.     Severe hypoglycemia also results in significant indirect costs, including lost productivity and time. Although indirect costs often are overlooked, it has been reported that patients with hypoglycemia have, for example, 77% more short-term disability days per year.[80]

69.     Fear of severe hypoglycemia can also act as a barrier to achieving blood glucose targets and their long-term health benefits.[81] Indeed, fear of hypoglycemia "is becoming almost as much of a barrier to glycemic control as hypoglycemia itself."[82] One survey showed that patients with type 2 diabetes "reported an increased fear of hypoglycemia over fear of long-term complications."[83]

70.     Severe hypoglycemia is not a rare event for patients with type 1 or type 2 diabetes. Hypoglycemia "is the most common and serious side effect of glucose-lowering therapies."[84] In 2011, approximately 282,000 visits to the emergency room for adults aged 18 years or older listed hypoglycemia as the first-listed diagnosis and diabetes as another.[85]

71.     Among patients with type 1 diabetes, "[s]evere hypoglycemia (requiring help for recovery) has … an annual incidence of 1.0 – 1.7 episodes per patient per year."[86] Type 2 diabetes patients who use insulin experience severe hypoglycemia as often as 11.8 times per 100 patient years.[87] And, at least for type 1 diabetes patients, episodes of severe hypoglycemia likely are underreported because appropriately trained family members or caretakers may have

---

[80] Won Chul Ha, et al., *Severe Hypoglycemia Is a Serious Complication and Becoming an Economic Burden in Diabetes*, 36 DIABETES METAB. J.at 283 (2012).

[81] Jeff Unger, *Uncover undetected hypoglycemic events*, 5 DIABETES, METABOLIC SYNDROME AND OBESITY: TARGETS AND THERAPY at 62 (2012).

[82] *Id.*

[83] Sanjay Kalra, et al., *Hypoglycemia: The neglected complication*, 17(5) INDIAN J. ENDOCRINOL METAB. 819-834 (Sep-Oct 2013).

[84] *Id.*

[85] American Diabetes Association, *Statistics about Diabetes*, http://www.diabetes.org/diabetes-basics/statistics/ (last visited May 23, 2017).

[86] Rory J. McCrimmon and Robert S. Sherwin, *Hypoglycemia in Type 1 Diabetes*, 59 DIABETES 2333 (Oct. 2010)

[87] Kedia, *supra* note 11, at 338.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 22

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

effectively administered glucagon, such that outside medical assistance was not needed and the episode was not reported.[88]

72.      The risk of hypoglycemia also increases with age. A study of patients 65 years or older in the United States who visited emergency departments found that 13 percent of visits for adverse drug events were because of insulin—and of the cases attributed to insulin, 95.4 percent were due to hypoglycemia.[89] In a registry of 26,000 people with type 1 diabetes, 21 percent of people over the age of 65 reported a seizure or loss of consciousness because of hypoglycemia over the prior year.[90] The following figure shows a similar correlation between episodes of severe hypoglycemia and increased age:

**Figure 4: Frequency of Severe Hypoglycemia Increases with Age[91]**



---

[88] *See* Andreas Holstein, et al., *Incidence and Costs of Severe Hypoglycemia*, 25 DIABETES CARE No. 11, 2109 (Nov. 2002).

[89] Daniel S. Budnitz, et al., *Medication Use Leading to Emergency Department Visits for Adverse Drug Events in Older Adults*, 147 ANNALS OF INTERNAL MEDICINE No. 11, 755, 762.

[90] Riva Greenberg, *Major Hypoglycemia News From Paris Diabetes Conference*, HUFFPOST (Mar. 4, 2015, 5:52 PM), http://www.huffingtonpost.com/riva-greenberg/major-hypoglycemia-news-f_b_6763574.html.

[91] Presentation, Eliot Brenner, et al., *Engaging Patients and HCPs in Critical Elements of Product Development*, THE HELMSLEY CHARITABLE TRUST, http://www.partneringforcures.org/assets/Uploads/Innovators/LocemiaT1DHelmsley.pdf (last visited May 23, 2017).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 23

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

73.     Severe hypoglycemia also affects people with diabetes indirectly. As one blogger summarized, severe hypoglycemia "is the dreaded fear of most people with diabetes. It can kill you."[92] Of course, loved ones of people with diabetes share this fear. Over 60% of family members of people with diabetes feel very worried about the risk of severe hypoglycemia.[93]

74.     This fear and the desire to avoid episodes of hypoglycemia affects diabetes patients' treatment of the disease, sometimes to the detriment of their health. A survey found, for example, that 14 percent of type 2 diabetes patients intentionally let their blood glucose increase, and 16 percent missed doses of insulin to avoid hypoglycemia.[94]

75.     In addition to the physical consequences of severe hypoglycemia, severe low blood sugar events also are financially costly.

**Figure 5: Financial Costs of Severe Hypoglycemia[95]**






---

[92] Greenberg, *supra* note 91.

[93] Brenner, *supra* note 92.

[94] Volker Foos, et al., *Economic impact of severe and non-severe hypoglycemia in patients with Type 1 and Type 2 diabetes in the United States*, J. OF MED. ECON. at 10 (2015).

[95] Brenner, *supra* note 92.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 24

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

76.    The six million people with diabetes who depend on insulin are also at risk of hypoglycemia—which means they need access to emergency glucagon—a life-saving drug that many cannot afford and others purchase despite the financial burden the Glucagon Pricing Scheme has created.

**B.    The diabetes care market is enormous.**

77.    Nearly 30 million Americans live with diabetes, and another 86 million suffer from prediabetes, meaning that they have a significant chance of developing type 2 diabetes.[96] The condition is a significant source of health care costs. One in five health care dollars nationwide is spent caring for people with diabetes.[97]

**Figure 6: Diabetes Costs in America[98]**



The Staggering Costs of Diabetes

---

[96] CDC, *supra* note 1.

[97] American Diabetes Association, *Economic Costs of Diabetes in the U.S. in 2012*, 36 DIABETES CARE 1033 (2013), http://care.diabetesjournals.org/content/36/4/1033.full-text.pdf.

[98] *The Staggering Costs of Diabetes In America*, AMERICAN DIABETES ASSOC., http://main.diabetes.org/dorg/images/infographics/adv-cost-of-diabetes.gif (last visited Mar. 9, 2017).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 25

78.     Thus, millions of glucagon purchasers whose health—or the health of their loved ones—depends on the products are captive to the market manipulation and other harmful aspects of Defendants' Glucagon Pricing Scheme, which has unlawfully hiked the price of glucagon.

79.     Although glucagon has been approved as an emergency treatment for severe hypoglycemia since 1998, only two companies, the Manufacturer Defendants, market glucagon in the United States. In other words, diabetes patients are dependent upon the Manufacturer Defendants' pricing for glucagon, and have no option but to pay any amount demanded if they need to have the drug available for emergencies.

80.     Here, the relevant market is—geographically—the United States and its territories. The relevant product market is the market for glucagon.

81.     The two existing emergency glucagon products, the Glucagon Emergency Kit (marketed by Eli Lilly) and the GlucaGen Hypo-kit (marketed by Novo Nordisk), are essentially identical. Each is comprised of a vial containing 1 milligram of lyophilized (freeze-dried) human recombinant glucagon in salt form (glucagon hydrochloride) with other ingredients and a syringe pre-filled with 1 milliliter of diluent.[99] These two components are packaged in a hard-plastic outer case.

82.     Both Manufacturer Defendants use glucagon produced via a bioengineering process called recombinant DNA expression, which is the same process used for synthetizing insulin. Both kits rely on a formulation or mix based on lactose and hydrochloric acid to lower the pH and thus increase solubility. Both glucagon formulations are freeze-dried or lyophilized to improve stability and thus allow commercialization.[100]

---

[99] *GlucaGon: Drug Description*, RxLIST: THE INTERNET DRUG INDEX, http://www.rxlist.com/glucagon-drug.htm (last visited May 23, 2017); *GlucaGen: Drug Description*, RxLIST: THE INTERNET DRUG INDEX, http://www.rxlist.com/glucagen-drug.htm (last visited May 23, 2017).
[100] *See id.* (for both citations).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 26

83.     Glucagon, and the recombinant process used to manufacture it, are not novel. The existence of a second pancreatic hormone, other than insulin, was first proposed in 1923.[101] In the late 1950s, chemists discovered the molecular structure of glucagon.[102] The first glucagon available to diabetes patients in the United States was animal-sourced pancreatic glucagon, supplied by Eli Lilly.[103] After FDA approval, Eli Lilly's recombinant glucagon kit was launched in 1999,[104] and Novo Nordisk's GlucaGen HypoKit, also using recombinant glucagon, has been available since 2005.[105]

84.     The technology and construction of Eli Lilly's and Novo Nordisk's emergency glucagon kits have not been significantly changed in the 18 and 12 years, respectively, since the products have been available. It appears that significant improvements have been designed, however, including a needle-free nasal glucagon spray[106] and a device that automatically reconstitutes glucagon before the hormone is auto-injected into the person.[107] Neither of the Manufacturer Defendants—the only suppliers of emergency glucagon kits in the United States— has marketed these potentially more accessible (particularly to a wider array of caretakers) and easier-to-use needle-free options. As a result, the same injection kits that Eli Lilly and Novo Nordisk introduced in 1999 and 2005, are still sold in the United States basically unchanged.

85.     Moreover, the cost of producing glucagon kits has not increased—if anything, the primary ingredient has decreased in price. On information and belief, synthetic glucagon

---

[101] *See* Kimball CP, Murlin JR, *Aqueous extracts of pancreas; III. Some precipitation reactions of insulin*, 58(1) J. BIOL. CHEM. 337-346 (1923).

[102] Piotr Ceranowicz, et al., *The Beginnings of Pancreatology as a Field of Experimental and Clinical Medicine, BioMed Research International*, Vol. 2015, Art. ID 128095, at 3.

[103] *See* New Drug Application for GlucaGen, NDA 20-918, at 5, submitted by Novo Nordisk to the Center for Drug Evaluation and Research (Sep. 24, 1997),
https://www.accessdata.fda.gov/drugsatfda_docs/nda/98/020918s000_Glucagen_Medr.pdf.

[104] Sharon Kellaher, *Lilly Introduces Synthetic Glucagon for Severe Hypoglycemia*, DIABETESHEALTH (May 1, 1999), https://www.diabeteshealth.com/lilly-introduces-synthetic-glucagon-for-severe-hypoglycemia/.

[105] News Release, Novo Nordisk, *Novo Nordisk Launches GlucaGen HypoKit* (July 12, 2005),
http://press.novonordisk-us.com/News-Releases?item=122461.

[106] Greenberg, *supra* note 91.

[107] Biodel Inc., *supra* note 23.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 27

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

produced in accordance with the FDA's Current Good Manufacturing Practices is available in quantities of up to 100 grams for prices between $2,500 and $4,500 per gram. The cost for the amount of glucagon needed for a glucagon emergency kit, 1 milligram, therefore would range between $2.50 to $4.50, although the Manufacturer Defendants' costs to produce large quantities of glucagon likely are much lower. And the overall price of peptides, such as glucagon, is falling.[108] Adding the cost of formulation and packaging of glucagon kits, which one author estimated to be $1.50 to $2.50 per unit,[109] even Eli Lilly's *original* wholesale price of $66 would provide a significant profit.

86.     Even though technology has remained broadly unchanged, however, and despite Novo Nordisk's entry as a competitor in the market, list prices for emergency glucagon have been drastically raised. The benefit of a competitive glucagon market never materialized because, as explained below, the Defendants continually raise the list prices of glucagon products to account for increasing "rebates" to PBMs.

C.    **The prescription medical product supply chain.**

87.     The supply chain for prescription drugs in the United States consists of four major actors: Manufacturers, Wholesale Distributors, Pharmacies, and PBMs.

88.     Prescription drugs originate in manufacturing sites; are transferred to wholesale distributors; are stocked at retail, mail-order, and other types of pharmacies; are subject to price negotiations and processed through quality and utilization management screens by PBMs; are dispensed by pharmacies; and ultimately are delivered to and taken by patients.[110] Relevant here, the PBMs may transcend or overlap with other actors in the supply chain. For example, the PBM

---

[108] *See* Jim Hampton, *Trends in Peptide Manufacturing: A Move toward Lower Costs*, AMBIPHARM, INC., http://www.ambiopharm.com/download/CostTrendsInPeptides.pdf (last visited May 22, 2017).

[109] Dick Rylander, Jr., *Glucagon in the Artificial Pancreas: Supply and Marketing Challenges*, 9(I) J. OF DIABETES SCI. AND TECH. 53 (2015).

[110] Health Strategies Consultancy LLC, *Follow the Pill: Understanding the U.S. Commercial Pharmaceutical Supply Chain*, THE KAISER FAMILY FOUNDATION (Mar. 2005), https://kaiserfamilyfoundation.files.wordpress.com/2013/01/follow-the-pill-understanding-the-u-s-commercial-pharmaceutical-supply-chain-report.pdf.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 28

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendants operate mail-order pharmacies, and Defendant CVS Health also owns retail pharmacies. PBMs' vertical integration in the supply chain is one way they maintain control over pricing in the prescription drug market.

89.     The technical function of a PBM is to administer a health coverage provider's prescription benefit program. A PBM develops the coverage provider's formulary (the list of prescription drugs and other medical products included in coverage at various pricing "tiers"), processes claims, creates a network of retail pharmacies that provide discounts in exchange for access to a provider's plan participants, and negotiates with manufacturers.

90.     Often, PBMs are also responsible for performing drug utilization reviews and operating their own mail-order and specialty pharmacies. PBMs also contract with a network of retail and community pharmacies. Pharmacies agree to dispense drugs to covered patients. The contract provides for a payment rate for each prescription, plus a dispensing fee. Pharmacies are also responsible for collecting patient cost-sharing payments and sending those to the PBM or reducing the PBM's or plan's share owed by that amount. Many PBMs also own mail-order and specialty pharmacies, which directly supply drugs to patients.

91.     In addition, and of particular significance here, PBMs have contractual relationships with drug manufacturers. PBMs negotiate rebates, fees, and other concessions with the manufacturers. These relationships allow PBMs to exert tremendous influence and control over what products are made available to health plans and insureds.

92.     The following chart illustrates the prescription supply chain, and the PBMs central role in it:

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Figure 7: Prescription Distribution Chain**[111]



# How Drug Distribution Works
A complex supply chain determines how prescription drugs are paid for in the U.S.

Sources: Avalere Health

THE WALL STREET JOURNAL.

## D.    Consumer costs in the glucagon supply chain

93.    Defendants' schemes to make increasing profits off of glucagon sales have devastating effects on the lives of real people. Unlike the PBMs, insurers, pharmacies, and health plans, patients are directly subjected to the list price artificially set by the Manufacturer Defendants. The manner and extent of this impact depends on how patients get their glucagon.

94.    **Uninsured**. First, uninsured consumers who need to have glucagon—because they are completely outside of the PBMs' and manufacturers' web of PBM Kickback financing arrangements through health plans—must pay the full list price that results from the scheme between the Manufacturer Defendants and the PBM Defendants. This is not a small population. Although the coverage rates have increased significantly lately, by the end of 2015 there were still 28.5 million nonelderly Americans who lacked insurance.[112] In 2012, there were 2 million

---

[111] Joseph Walker, *Drugmakers Point Finger at Middlemen for Rising Drug Prices*, WALL ST, J. (Oct. 3, 2016, 12:43 PM), https://www.wsj.com/articles/drugmakers-point-finger-at-middlemen-for-rising-drug-prices-1475443336.

[112] *Key Facts about the Uninsured Population*, THE KAISER FAMILY FOUNDATION (Sept. 29, 2016), http://kff.org/uninsured/fact-sheet/key-facts-about-the-uninsured-population/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 30

adults between the ages of 18-64 with diabetes without health insurance coverage, which has "considerable public health and economic impact."[113] If coverage options are reduced by federal legislation, the ongoing impact to the uninsured will rise in future years.

95.    **Deductibles**. Second, consumers who are in health plans suffer directly from inflated glucagon prices when they pay their deductibles. The deductible is the amount that an insured must pay before insurance benefits will contribute to medical and pharmacy expenses. Thus, until the deductible is met, an insured must pay out-of-pocket. Depending on the plan, consumers may be required to pay the full list price of drugs and other medical needs.

96.    Moreover, deductibles are rising, meaning that insured consumers are having to pay more out-of-pocket for medical needs, including glucagon. The Kaiser Family Foundation found that in 2016, deductibles rose 12% in the market group and four times faster than premiums increased.[114] The higher the deductible, the more consumers have to pay full price for their prescriptions until their coverage begins.

97.    "Almost a quarter of all people obtaining insurance through employers are now enrolled in high-deductible-health plans ("HDHPs"), up from 4% in 2006. The average deductible amount has increased 67% since 2010. And almost half of workers are covered by insurance with annual deductibles of at least $1,000 for individual coverage."[115] With the surge in popularity among employer-sponsored health plans of "high-deductible" plans, deductible thresholds affect an ever-increasing number of patients:

---

[113] Sarah Casagrande & Catherine Cowie, *Health Insurance Coverage Among People With and Without Diabetes in the U.S. Adult Population*, 35(11) DIABETES CARE 2243-2249 (Nov. 2012), http://care.diabetesjournals.org/content/35/11/2243.

[114] Drew Altman, *The Missing Debate Over Rising Health-Care Deductibles*, THE KAISER FAMILY FOUNDATION (Sept. 18, 2016), http://kff.org/health-costs/perspective/the-missing-debate-over-rising-health-care-deductibles/.

[115] *Don't Be Fooled By Eli Lilly's & Express Scripts' New Insulin Program*, National Prescription Coverage Association (2017), http://nationalprescriptioncoveragecoalition.com/dont-be-fooled-by-eli-lillys-express-scripts-new-insulin-program/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 31

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

**Figure 8: Percent Increase of High-Deductible Plans:** [116]



*Estimate is statistically different from estimate for the previous year shown (p < .05).

NOTE: Covered Workers enrolled in an HDHP/SO are enrolled in either an HDHP/HRA or a HSA-Qualified HDHP. For more information, see the Survey Methods Section. The percentages of covered workers enrolled in an HDHP/SO may not equal the sum of HDHP/HRA and HSA-Qualified HDHP enrollment estimates due to rounding.

SOURCE: Kaiser/HRET Survey of Employer-Sponsored Health Benefits, 2006-2016.



98.    High deductible plans require consumers to pay thousands of dollars before their coverage kicks in. Many individuals and families cannot afford to hit their high-deductible costs year after year. As a result, rising list prices for drugs and other prescription products are particularly harmful to patients in high-deductible plans, not only because they hit their deductibles annually, but because they hit their deductibles over a *shorter period of time*, resulting in significant financial burden at the start of each calendar year. Individuals or families who do not have excess cash or access to credit to meet this annual burden may delay purchasing glucagon until they have exhausted their annual deductible.

99.    **Cost sharing**. Third, even after deductibles are paid, insured consumers' prescription costs still are affected by the PBMs' and manufacturers' pricing scheme through

---

[116] *Employer Health Benefits: 2016 Summary of Findings*, THE KAISER FAMILY FOUNDATION (2016), https://kaiserfamilyfoundation.files.wordpress.com/2016/09/employer-health-benefits-2016-summary-of-findings.pdf.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 32

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

copayments and coinsurance requirements. Some plans require these payments during the deductible phase, while others require payment of the full list price with copayments and coinsurance requirements only after the deductible is met.

100.    Copayments are set amounts that an insured must pay for medical services, including prescriptions. Copayments vary by the prescribed product, with products in preferred formulary positions carrying a lower copay and products in a disfavored position costing the insured more.

101.    Coinsurance is a percentage of the cost of a medical service or prescription drug that the insured must pay. In the case of prescription drugs, the coinsurance amount is based on the inflated list price, not an adjusted price based on the secret rebates and kickbacks that PBMs negotiate, and not the amount that manufacturers actually collect and that PBMs or their clients actually pay.

102.    To add insult to injury, the portion of prescription costs that an insured person's plan will pay is often not based on the full, inflated list price—it is based on a negotiated lower price, which will take into account some rebates, discounts, or other concessions passed through to the plan by the PBM. Thus, plans with such arrangements do not simply pay the difference between the participant's payment and the list price—they instead pay something less—and for large insurers or those that own PBMs, something *much* less. The burden on participants and beneficiaries of such plans is disproportionate to whatever percentages they may think they are shouldering.

103.    **Medicare**. Fourth, consumers covered by Medicare are also overcharged as a result of the Glucagon Pricing Scheme. In 2017, for Medicare Part D participants, there is a deductible phase of up to $400[117] during which many Medicare Part D plan participants must foot the entire bill for the inflated cost of drugs. After meeting the deductible, some Medicare

---

[117] *Yearly deductible for drug plans*, MEDICARE.GOV, https://www.medicare.gov/part-d/costs/deductible/drug-plan-deductibles.html (last visited May 19, 2017).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 33

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Part D participants are responsible for a 25% coinsurance payment in their second coverage phase.[118] Paying a percentage, like 25%, of an inflated price injures these participants. They stay in this phase until they and the plan have spent a total of $3,700 on covered drugs.[119] After hitting the second coverage breakpoint, the participant is in what is known as the Medicare Part D "Donut Hole," which refers to a coverage gap phase where the participant must pay even more. In 2017, for brand drugs, participants pay 40%[120] of the list price (the manufacturer discounts brand drugs by 50%, and the plan pays the remaining 10%).[121] Again, the percentage-of-cost requirement means that inflated glucagon prices hurt Medicare participants in this third coverage phase. A participant leaves the coverage gap and is covered again in the catastrophic phase with a 5% coinsurance requirement only after spending total $4,950 out-of-pocket—which is also when total drug costs covered by the participant, the plan, and discounts reach $7,425.[122]

---

[118] *Copayment/coinsurance in drug plans*, MEDICARE.GOV, https://www.medicare.gov/part-d/costs/copayment-coinsurance/drug-plan-copayments.html (last visited May 19, 2017).

[119] *Costs in the coverage gap*, MEDICARE.GOV, https://www.medicare.gov/part-d/costs/coverage-gap/part-d-coverage-gap.html (last visited Mar. 15, 2017).

[120] In prior years in the Class Period, these percentages were even higher—for example Donut Hole cost sharing for participants was 50% in 2011 and 2012.

[121] Medicare.gov, *supra* note 121.

[122] *Catastrophic coverage*, MEDICARE.GOV, https://www.medicare.gov/part-d/costs/catastrophic-coverage/drug-plan-catastrophic-coverage.html (last visited Mar. 15, 2017).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 34

**Figure 9: Standard Medicare Prescription Drug Benefit 2017**[123]



Standard Medicare Prescription Drug Benefit, 2017

NOTE: Some amounts rounded to nearest dollar. ¹Amount corresponds to the estimated catastrophic coverage limit for non-low-income subsidy (LIS) enrollees ($7,425 for LIS enrollees), which corresponds to True Out-of-Pocket (TrOOP) spending of $4,950, the amount used to determine when an enrollee reaches the catastrophic coverage threshold in 2017.
SOURCE: Kaiser Family Foundation illustration of standard Medicare drug benefit for 2017.



104.    Thus, Medicare Part D participants face a double burden when it comes to inflated drug prices. First, they cost-share based on inflated glucagon list prices, regardless of the phase they are in, often paying the entire drug cost in their deductible phase, and always paying percentages of inflated drug prices in later coverage phases. Second, because the *total* list price of the drug, including amounts contributed by all parties, is used to calculate when the participant reaches each coverage phase's breakpoints throughout the year, the inflated price of insulin *pushes the participants into the "Donut Hole" faster*—where coverage is less generous and their out-of-pocket costs are higher. The acceleration of Medicare Part D participants' movement through coverage phases due to inflated drug prices means they ultimately pay even more for glucagon and other drugs they need.

---

[123] *The Medicare Part D Prescription Drug Benefit*, THE KAISER FAMILY FOUNDATION (Sept. 26, 2016), http://kff.org/medicare/fact-sheet/the-medicare-prescription-drug-benefit-fact-sheet/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 35

1

**E.    The rise of the PBMs in the pharmaceutical supply chain.**

2

3      105.    When they first came into existence in the late 1960s, PBMs provided

4 administrative services to health plans by processing claims and maintaining formularies. Over

5 time, they played a larger role negotiating prices with drug manufacturers. Since PBMs were

6 independent, they generally were thought to pass savings back to health plans and consumers by

7 using their leverage to negotiate lower reimbursement rates with pharmacies and discounts with

manufacturers.[124]

8      106.    In the 1990s, manufacturers began acquiring PBMs, which caused an "egregious

9 conflict[] of interest," prompting the Federal Trade Commission to undo those deals.[125] In 1993,

10 for example, Merck purchased Medco for $6 billion. The next year, Defendant Eli Lilly bought

11 PCS Health Systems and SmithKlineBeecham bought Diversified Pharmaceutical Services. The

12 deals allowed drug manufacturers to coordinate pricing policies, see their competitors' sensitive

13 pricing information, and favor their own products over those of their competitors and so the FTC

14 forced the manufactures to sell the companies between 1998 and 2005.[126]

15      107.    In the early and late 2000s, PBMs started buying pharmacies,[127] which has caused

16 a similar conflict of interest that resulted from the merger of manufacturers and PBMs in the

17 1990s. When a PBM combines with a pharmacy, they "lose the incentive to police against

18 pharmaceutical company schemes to steer patients to more expensive drugs. Indeed, they may

19 collude in them."[128] The power of the largest PBMs has continued to grow, and has allowed them

20 to distort the pharmaceutical supply chain to their own financial advantage.

21      108.    For example, the PBM Defendants operate mail-order pharmacies, and Defendant

22 CVS Health also owns retail pharmacies. When consumers purchase glucagon products from

23

24 _____

[124] Brian Feldman, *Big pharmacies are dismantling the industry that keeps US drug costs even sort-of under
control*, QUARTZ (Mar. 17, 2016), https://qz.com/636823/big-pharmacies-are-dismantling-the-industry-that-
keeps-us-drug-costs-even-sort-of-under-control/.

25 [125] *Id.*

26 [126] *Id.*

[127] *Id.*

[128] *Id.*

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

these pharmacies, they are dealing with the PBM entities that are conspiring to drive up the prices of glucagon through their formulary placement leverage and rebate demands from the manufacturers, who then raise their prices to benefit themselves and the PBM Defendants.

109.    PBMs make outsize profits by exploiting the complex prescription distribution system in the United States. While the role of PBMs in the supply chain is well known, the size of the rebates and other fees they extract from companies for formulary placement, and the portion of these payments they pocket (the "PBM Kickbacks") are carefully guarded secrets.[129]

110.    Manufacturers well understand the power of PBMs.[130] Because of their size, and the many thousands of health plan clients they represent, PBMs can steer business from one manufacturer to another based on which one pays the larger PBM Kickback. These relationships also result in higher prices to those who are uninsured or otherwise have no direct relationship with the PBMs other than buying from the pharmacies the PBMs own.

111.    PBMs depend on the lack of transparency to conduct their business and have vigorously resisted any requirement that they disclose the details of their agreements with manufacturers, and the PBM Kickbacks they receive from manufacturers—as well as their agreements with the insurers and pharmacies.[131]

112.    Although consumers are led to believe that the list price is the actual price for a drug, including glucagon, the list price is inflated to account for PBM Kickbacks, which are "rebated" back to the PBMs, as shown in the following diagram. Note that the diagram is only illustrative and that insurers do not necessarily receive a large proportion of the "rebates" back from PBMs, which may keep all or most of the PBM Kickbacks in some instances. "Overall,

---

[129] *See, e.g.*, Lydia Ramsey, *One of the largest middlemen in the drug industry just released a video showing why it should be able to remain secretive*, BUSINESS INSIDER (Feb. 9, 2017, 5:22 PM), http://www.businessinsider.com/what-pharmacy-benefit-managers-are-doing-about-trump-and-drug-pricing-2017-2.

[130] Denise Roland & Peter Loftus, *Insulin Prices Soar While Drugmakers' Share Stays Flat*, WALL ST. J. (Oct. 7, 2016, 5:46 PM), https://www.wsj.com/articles/insulin-prices-soar-while-drugmakers-share-stays-flat-1475876764.

[131] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 37

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

nearly one-third of the total expenditures on branded pharmaceuticals were, in some way, rebated back to PBMs and payers in 2015."[132]

**Figure 10: Who Pays for Your Medication**[133]



---

[132] Winegarden, *supra* note 1, at 5.

[133] Lydia Ramsey and Skye Gould, *A huge pharma middleman just lost its biggest customer — and it shows how drug pricing really works*, BUSINESS INSIDER (Apr. 25, 2017, 6:57 AM), http://www.businessinsider.com/express-scripts-esrx-anthem-not-renewing-pbm-2017-4.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 38

113.    Even though PBMs tell their clients that they reduce prescription prices, the "rebates" that PBMs negotiate actually comprise a significant portion of the gross sales of manufacturers. The following figure depicts the percentage of gross drug sales that is accounted for by both "rebates" and selling, general, and administrative (SG&A) spending.

**Figure 11: SG&A and Rebates as a Percentage of U.S. Gross Drug Sales Per Company in 2016[134]**



114.    "Rebates" continue to rise. In 2016, rebates climbed to 37.3% from 35.7% in 2015.[135]

115.    According to the Pharmaceutical Care Management Association, the trade group that represents the PBM industry, PBMs manage pharmacy benefits for over 266 million Americans.[136] Three large companies dominate the PBM market: Express Scripts, CVS Health, and OptumRx. Together, these companies cover roughly 78% of insured Americans.[137]

116.    Express Scripts is the largest PBM in the United States.[138] In 2016, annual

---

[134] *Global Pharma and Biotech Sector Review*, CREDIT SUISSE (Apr. 18, 2017).

[135] *Id.* at 5.

[136] *Our Mission*, PHARMACEUTICAL CARE MANAGEMENT ASSOCIATION, https://www.pcmanet.org/our-industry/ (last visited Feb. 26, 2017).

[137] Patricia M. Danzon, PhD, *2014 ERISA Advisory Council PBM Compensation and Fee Disclosure* (2014), https://www.dol.gov/sites/default/files/ebsa/about-ebsa/about-us/erisa-advisory-council/ACDanzon061914.pdf.

[138] Anne Steele, *Express Scripts Revenue Falls*, WALL ST. J. (Feb. 14, 2017, 4:49 PM), https://www.wsj.com/articles/express-scripts-revenue-falls-1487108990.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 39

revenue for Express Scripts was approximately $102.287 billion.[139] As of December 31, 2016, more than 69,000 retail pharmacies, representing over 98% of all retail pharmacies in the nation, participated in one or more of Express Scripts' networks.[140]

117.    CVS Health Corporation, including its subsidiary CVS Caremark filled or managed approximately 1.2 billion prescriptions during the year ended December 31, 2016, equaling approximately 1.6 billion prescriptions when counting 90-day prescriptions as three separate prescriptions.[141]

118.    In 2015, CVS Health Corporation's pharmacy services segment, which includes the corporation's PBM activities but not its retail/long-term care segment, brought in $100.363 billion in net revenues.[142] CVS Health, through its subsidiary PBM, provides pharmacy benefit administration for a network of more than 68,000 retail pharmacies, including approximately 41,000 chain pharmacies and 27,000 independent pharmacies.[143]

119.    The third largest PBM, OptumRx, owned by UnitedHealth, provides pharmacy care services to more than 65 million people in the nation through a network of more than 67,000 retail pharmacies and multiple delivery facilities.[144] In 2016, OptumRx managed more than $80 billion in pharmaceutical spending.[145] OptumRx's 2016 revenue was $60.44 billion.[146]

120.    Business for the PBM Defendants is booming. For example, from 2014 to 2015, Express Scripts' net income increased by $468.8 million, or 23.4 percent.[147] During 2016, gross profit for CVS Health's pharmacy services segment, which includes the PBM CVS Caremark,

---

[139] Express Scripts, *supra* note 33.
[140] *Id.*
[141] CVS Health Corp., *supra* note 37.
[142] CVS Health, 2015 Annual Report (2016).
[143] *Id.*
[144] UnitedHealth Group, *supra* note 41.
[145] *Id.*
[146] *Id.*
[147] Express Scripts Holding Company, *supra* note 33.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 40

increased 12.9 percent.[148] And OptumRx's earnings from operations increased 53 percent from 2015 to 2016.[149]

**F.    The Glucacon Pricing Scheme.**

121.    PBMs make a profit in three primary ways: first, their health insurer clients pay service fees for processing prescriptions and running mail-order pharmacies; second, insurers pay transaction fees on the different operations required to manage the complex cash flows between insurers, pharmacists and manufacturers; and third, PBMs take a cut of the "rebates" and other fees they negotiate with manufacturers.

122.    This rebate arrangement, if operated ethically and honestly, would encourage PBMs to negotiate *lower* net prices for medical products. If PBMs could purchase products more cheaply from the manufacturers, they could increase their margins when they sell the products to their clients. And PBMs have greater leverage to negotiate lower prices when multiple companies make interchangeable products—*i.e.*, medical equipment that serves the same function. In such a scenario, the manufacturers should compete on price, as in normal competitive markets, for the PBMs' business.

123.    However, the arrangement is not operated ethically and honestly. The Manufacturer Defendants and PBM Defendants are gaming the system. They have realized that they both benefit if, instead of the PBM Defendants forcing the Manufacturer Defendants to sell glucagon to them and their clients for less money, they induce the Manufacturer Defendants to raise their publicly reported list price, but largely maintain the net prices. This creates what is, in effect, a massive slush fund derived from the difference between the net and list prices that can be used by the Manufacturer Defendants to pay the larger and larger rebates demanded by the PBM Defendants for formulary placement.[150]

---

[148] CVS Health Corp., *supra* note 37.
[149] UnitedHealth Group, *supra* note 41.
[150] Roland & Loftus, *supra* note 131.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 41

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

124.     The scheme allows the Manufacturer Defendants to maintain or increase their profit margins on glucagon sold in the United States and ensure their access to the millions of Americans whose drugs and other medical products are made available via the PBM formularies. And, the scheme allows the PBM Defendants to leverage their control over formularies to obtain PBM Kickbacks. With net prices staying the same, and list prices going up, the rebates get bigger, and so does the PBM Defendants' cut. The scheme artificially drives up list prices specifically so that the PBM Defendants can earn more profit from the rebates that the Manufacturer Defendants pay to the PBM Defendants behind the scene. And the Manufacturer Defendants can pay the PBM Defendants what they demand while increasing the Manufacturer Defendants' profits and sales.

125.     Thus, the Manufacturer Defendants have demonstrated their commitment to maintaining inflated list prices, and far from using their prodigious bargaining power to lower glucagon prices, the PBM Defendants abuse their position in order to benefit both themselves and the Manufacturer Defendants. It is a profitable enterprise, though deeply unethical and damaging to consumers, who shoulder the burden of the higher list prices through increased out-of-pocket payments. This dynamic lies at the heart of the rising cost of glucagon, and the resulting public health disaster.

**G.     Glucagon's price has risen dramatically in the past decade.**

126.     While the Defendants often obscure the true net realized prices for drugs, the escalating list price is a matter of public record. Since 2005, the average wholesale price of Eli Lilly's Glucagon Emergency Kit has increased from $91.94 to $309.12, or over 236%.[151] Similarly, Novo Nordisk increased the average wholesale price for GlucaGen HypoKit from $91.95 to $306.78, over 233%.[152] These rates are especially astounding when compared with the

---

[151] Determined based on Medi-Span average wholesale price data.
[152] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 42

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

medical inflation rate, which was 46% over a similar time period.[153]

127.    The timing and context of the Manufacturer Defendants' price increases for glucagon seem to bear little, if any, relation to developmental advances, costs of production, or market demand. Eli Lilly's emergency recombinant glucagon treatment was approved by the Food & Drug Administration in 1998.[154] In 1999, the wholesale price for Eli Lilly's glucagon was only about $66.[155] Since Novo Nordisk's GlucaGen HypoKit entered the marketplace in 2005, rather than resulting in lower prices due to competition, the average wholesale price, or AWP, for each product has steadily and dramatically *increased*. In nine instances, the AWP increases were identical—down to the penny.[156]

**Figure 12: AWP Price Increases for the Manufacturer Defendants' Glucagon**

| Novo Nordisk - GlucaGen | | Eli Lilly – Glucagon | |
|---|---|---|---|
| **Date** | **AWP** | **Date** | **AWP** |
| 06/01/2005 | $91.95 | 04/27/2005 | $91.94 |
| - | - | 01/03/2007 | $103.30 |
| 01/28/2008 | $99.30 | 01/12/2006 | $98.38 |
| 09/03/2008 | $108.44 | 01/03/2008 | $108.48 |
| 02/02/2009 | $117.19 | 01/15/2009 | $117.19 |
| 09/26/2009 | $112.50 | 09/26/2009 | $112.50 |
| 01/06/2010 | $120.36 | 01/05/2010 | $119.28 |
| 04/21/2011 | $140.40 | 01/04/2011 | $140.40 |
| 10/11/2011 | $153.00 | 09/28/2011 | $153.00 |
| 09/26/2012 | $166.78 | 06/27/2012 | $166.78 |
| 05/01/2013 | $181.78 | 05/15/2013 | $181.80 |
| 01/21/2014 | $198.00 | 12/18/2013 | $198.00 |
| 07/01/2014 | $215.82 | 06/19/2014 | $215.82 |
| 12/02/2014 | $235.25 | 11/25/2014 | $235.25 |
| 06/23/2015 | $258.54 | 05/29/2015 | $258.54 |
| 12/16/2015 | $281.64 | 12/01/2015 | $284.14 |
| 07/06/2016 | $306.78 | 07/13/2016 | $309.12 |

---

[153] Irl B. Hirsch, MD, *Changing Cost of Insulin Therapy in the U.S.* (Mar. 6, 2016), http://professional.diabetes.org/files/media/Changing_Cost_Insulin.pdf (listing inflation over prior 13 years).
[154] FDA, *supra* note 42.
[155] Kellaher, *supra* note 105.
[156] Compiled from Medi-Span average wholesale price data.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 43

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Figure 13: Lock-Step Price Increases for Emergency Glucagon Treatment**[157]



128.    Unlike other products, the dramatic price increases do not appear to correlate to any significant advancements in the Manufacturer Defendants' glucagon. Upon information and belief, the cost of the raw glucagon used for the Manufacturer Defendants' glucagon formulation is low—under five dollars per unit, perhaps even less. Because only the Manufacturer Defendants supply glucagon to the diabetes community in the United States, they know that their customers will pay exorbitant amounts for this life-saving emergency treatment.

---

[157] Compiled from Medi-Span average wholesale price data.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 44

129.    Despite the serious risk posed by severe hypoglycemia, many diabetes patients simply cannot afford to pay the inflated prices for glucagon. Indeed, it has been estimated that only 10 to 20 percent of high-risk patients currently have an unexpired glucagon kit.[158]

**H.    PBMs collude with the Manufacturer Defendants to inflate glucagon prices.**

130.    In a normal market, companies offering comparable products would compete by offering consumers lower prices. But the market for glucagon is far from normal. Like insulin and other drugs, glucagon is a prescription drug. Thus, whether and to what extent health plan enrollees will have coverage for a manufacturer's glucagon depends on how the PBM Defendants structure their formularies.

131.    As explained above in regard to the PBM Defendants' grip on the pharmacy benefit market, they wield extraordinary control over the access that manufacturers of pharmacy products have to insured diabetes patients. Just last year, for example, two of the PBM Defendants, CVS Health and Express Scripts, made headlines for removing dozens of medications from their standard formularies.[159]

132.    To gain or maintain a preferable placement on a PBM's formulary, the Manufacturer Defendants artificially inflate the list price for their glucagon—allowing the PBM Defendants to cash in on the spread between the list and net prices without decreasing their own profits.

133.    The Manufacturer Defendants have admitted that they increase their drug prices at least enough to account for "rebates." In a press release issued on November 30, 2016, for example, Novo Nordisk stated:

> News reports on drug prices have left the public with an impression that companies like ours realize all the profits from the "list price" increases we've

---

[158] Press Release, Biodel, Inc., *Biodel Announces Commercial Manufacturing Agreement With Emergent BioSolutions for Glucagon Rescue Product* (Mar. 5, 2014), https://globenewswire.com/news-release/2014/03/05/615985/10071362/en/Biodel-Announces-Commercial-Manufacturing-Agreement-With-Emergent-BioSolutions-for-Glucagon-Rescue-Product.html.

[159] Alison Kodjak, *Will Your Prescription Meds Be Covered Next Year? Better Check!*, NATIONAL PUBLIC RADIO (Aug. 15, 2016, 4:32 AM), http://www.npr.org/sections/health-shots/2016/08/15/489790412/will-your-prescription-meds-be-covered-next-year-better-check.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 45

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

made over the last decade. In other words, a list price increase by XX percent leads to an automatic XX percent profit for the drug maker. We believe that is misleading and here's why: As the manufacturer, we do set the "list price" and have full accountability for those increases. However, after we set the list price, we negotiate with the companies that actually pay for the medicines, which we call payers. This is necessary in order for our medicines to stay on their preferred drug list or formulary. The price or profit we receive after rebates, fees and other price concessions we provide to the payer is the "net price." The net price more closely reflects our actual profits.[160]

134.    In its 2016 annual report, Novo Nordisk admitted to the practice of exchanging rebates for preferential formulary placement noting that: "Increasingly, PBMs and health plans play a key role in negotiating price concessions with drug manufacturers on behalf of private payers for both the commercial and government channels, and determining the list of drugs covered in the health plan's formulary. Specifically, . . . Payer pressure to reduce the overall drug costs has resulted in greater focus on negotiating higher rebates from drug manufacturers. Private payers are increasingly keen to adopt narrow formularies that exclude certain drugs, while securing increased rebates from the preferred brand."[161] As the report also explained, Novo Nordisk has announced contract negotiations for 2017 with higher-than-anticipated rebates to obtain broader coverage for its products.[162]

135.    Similarly, the Wall Street Journal reported Eli Lilly's explanation for high list prices, as explained by the president of the company's diabetes business: "The reason drugmakers sharply raise list prices without a corresponding increase in net price is that PBMs demand higher rebates in exchange for including the drug on their preferred-drug lists...."[163]

136.    Eli Lilly also indicated that its list prices are artificially inflated when it recently confirmed that list prices on certain drugs again would be increased, "not[ing that] the list prices 'do not reflect the significant discounts and rebates that [the company] provide[s] to ensure

---

[160] Perspectives, Novo Nordisk, *Our perspectives on pricing and affordability* (Nov. 30, 2016), http://press.novonordisk-us.com/leadership-perspectives?item=1.
[161] Novo Nordisk, 2016 Annual Report, 20 (2017).
[162] *Id.* at 1.
[163] Roland & Loftus, *supra* note 131.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 46

patients have adequate access to [Eli Lilly's] medicines.'"[164] So far *in 2017*, Eli Lilly raised the list price on glucagon another 9.01%.[165]

## I.    The Defendants profit at the financial and physical expense of consumers.

137.    While the Defendants have profited from the Glucagon Pricing Scheme, diabetes patients have borne the cost of the wrongfully inflated list prices for glucagon. Because of the Manufacturer Defendants' lock-step price increases for glucagon, each manufacturer now lists the drug at more than $300. Uninsured diabetes patients in the United States must pay the entire, inflated, list price for glucagon. Even diabetes patients who have insurance do not escape the effects of Defendants' Glucagon Pricing Scheme—they must pay the list price until they meet their deductible, and even after that is met, many insureds must pay copayments or coinsurance rates that are raised because of the inflated list prices for glucagon.

138.    As described above, diabetes patients who treat with insulin, especially with intensive insulin therapy, face the constant risk of severe hypoglycemia, for which the Manufacturer Defendants' glucagon products are the *only* first-line treatment that can be used in the event of a severe low blood sugar episode. Insulin does kill. By artificially inflating list prices for glucagon, Defendants have endangered the health of diabetes patients.

## V.    ERISA ALLEGATIONS

### A.    The PBM Defendants are fiduciaries and parties in interest.

139.    The ERISA Plaintiffs and the members of the ERISA Class (as defined below) are participants in employee welfare benefit plans, as that term is defined in 29 U.S.C. § 1002(1)(A), whose pharmacy benefits covering prescription medications are administered by the PBM Defendants ("ERISA Plans").

---

[164] Meg Tirrell, *Eli Lilly raised prices on 9 drugs last week*, CNBC (May 10, 2017, 12:36 PM), http://www.cnbc.com/2017/05/10/eli-lilly-raised-prices-on-9-drugs-last-week.html.
[165] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 47

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

140. ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

141. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional test. Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

142. The PBM Defendants are fiduciaries of all of the ERISA Class members' ERISA Plans for which they administered prescription benefits in that they exercised discretionary authority or control respecting the following plan management activities, ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and in that they had discretionary authority or discretionary responsibility in the administration of the ERISA Plans of participants and beneficiaries in the ERISA Class, ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because, by way of example, they did and/or could do one or more of the following *with respect to the ERISA Plans*:

A. negotiate with the Manufacturer Defendants for the inclusion of the prescription products that they manufacture on the PBM Defendants' formularies that govern prescription coverage through the ERISA Plans;

B. negotiate with the Manufacturer Defendants the prices that patients and the ERISA Plans will pay, including through placement of glucagon on tiered formularies;

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

C.  dictate whether a brand of glucagon was covered, and if so, in which tier it was categorized;

D.  dictate the price of glucagon to patients and ERISA Plans;

E.  negotiate with the Manufacturer Defendants the amount of rebates, discounts, fees, or other financial incentive payments (*i.e.*, PBM Kickbacks, as defined above) that the PBM Defendants will receive from the Manufacturer Defendants upon the purchase of glucagon by patients and health plans;

F.  induce the Manufacturer Defendants to artificially inflate list prices so that there is room enough in the glucagon pricing regime for the PBM Kickbacks, while the Manufacturer Defendants' net profits and sales volumes are buoyed by the inclusion of their brand of glucagon on PBM formularies;

G.  dictate the portion, *if any*, of the PBM Kickbacks that are shared with or passed through to other entities, such as health insurers, plan administrators, plan sponsors, or patients;

H.  dictate the amount ultimately paid to pharmacies for glucagon;

I.  dictate the amount pharmacies charge patients for glucagon;

J.  manage the prescription benefit program, including processing and paying glucagon claims received from pharmacies;

K.  choose whether to fill a prescription from a participant for glucagon, reject the prescription, or shift the participant to a different brand of glucagon or require the use of the PBM Defendants' exclusive mail order pharmacies;

L.  determine the amount of and require the collection of additional profits and compensation for services provided by the PBM Defendants pursuant to the ERISA Plans;

M.  set their own margin/compensation for services performed as fiduciaries by dictating the amount of PBM Kickbacks they will collect from the Manufacturer Defendants

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and the amount of such PBM Kickbacks they will ultimately keep for themselves in connection with glucagon purchases;

N.  unilaterally collect their own compensation for services performed as fiduciaries by collecting PBM Kickbacks;

O.  set and change the compensation of themselves with respect to the ERISA Plans by allocating the proceeds of PBM Kickbacks;

P.  misrepresent, conceal, and/or fail to disclose to patients and fiduciaries other than the PBM Defendants the manner in which the PBM Defendants charged for prescription products as alleged above;

Q.  misrepresent, conceal, and/or fail to disclose to patients and to fiduciaries other than the PBM Defendants the amounts and components of PBM Kickbacks that the PBM Defendants collect from the Manufacturer Defendants;

R.  misrepresent, conceal, and/or fail to disclose to patients and to fiduciaries other than the PBM Defendants the PBM Defendants' compensation and profit collected in connection with prescription product transactions;

S.  improperly trade off the interests of ERISA Plan participants and beneficiaries for the benefit of themselves in charging inflated prices in order to obtain excessive profits at the expense of participants and others paying amounts that are captured by the PBM Defendants as PBM Kickbacks;

T.  improperly trade off the interests of plan participants and beneficiaries for the benefit of third parties, including the Manufacturer Defendants, who are able to sell more of the glucagon they produce as a result of their participation in the pricing scheme described herein;

U.  improperly trade off the interests of plan participants and beneficiaries for the benefit of third parties, including the Manufacturer Defendants, who are able to sell the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 50

glucagon that they produce at a higher price as a result of their participation in the pricing scheme described herein; and

V.   leverage their contractual relationships with ERISA Plans, their insurers, and plan administrators, and the pharmacies from which the ERISA Plans and their participants and beneficiaries purchase prescription products to exert control over billions of dollars that flow from glucagon purchases by ERISA Plans and their participants and beneficiaries, as well as leverage the ERISA Plan instruments that govern these transactions, as described further below, causing Plan participants to pay inflated prices for glucagon.

143.   The PBM Kickbacks are possible because of the PBMs' discretion and power to do the foregoing, which makes them fiduciaries to the ERISA Plans. The PBM Defendants' *relationships with* and *access to* the ERISA Plans and related glucagon purchases are the source of this discretion and power. They have and use discretion and authority to set their own fees and compensation by virtue of their role with respect to the administration and/or management of the ERISA Plans—a central part of which is and was negotiating glucagon prices from which the PBM Defendants extract a significant cut of rebates and other payments from the Manufacturer Defendants while increasing, rather than decreasing, costs to ERISA Plan participants. Thus the PBM Defendants' fiduciary power is, in part, the power over their own fees and compensation, because their fees and compensation flow from the glucagon price negotiations *only they* have the power to conduct on behalf of the ERISA Plans. The fees and compensation the PBM Defendants extract from these negotiations performed on behalf of the ERISA Plans or by improperly leveraging their relationships with the ERISA Plans are achieved at the substantial expense of the ERISA Plans' participants and beneficiaries, who must pay purchase prices that result from the inflated list prices that are central to and caused by Defendants' Glucagon Pricing Scheme.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 51

144.    Further, the PBM Kickbacks were additional compensation for the administration of glucagon coverage that was collected by the PBM Defendants that was neither disclosed to nor agreed to by the participants and beneficiaries or others that were required to make these additional payments so that participants and beneficiaries could receive their covered prescription products. The PBM Defendants had and exercised discretion to determine the amount of and require the payment of this additional undisclosed compensation, as well as whether to disclose it—or require its concealment. ERISA § 3(21)(A)(i), (iii), 29 U.S.C. § 1002(21)(A)(i), (iii).

145.    The PBM Kickbacks are additional "premium" within the meaning of ERISA § 702, for the provision of glucagon coverage that was collected by the PBM Defendants that was neither disclosed to nor agreed to by the participants and beneficiaries that were required to make these additional contributions to receive their covered glucagon. The PBM Defendants had and exercised discretion to determine the amount of and require the payment of this additional undisclosed premium payment, as well as whether to disclose it—or require its concealment. ERISA § 3(21)(A)(i), (iii), 29 U.S.C. § 1002(21)(A)(i), (iii).

146.    In addition to their fiduciary status under the foregoing discretion-based provisions, the PBM Defendants are fiduciaries of all of the ERISA Class members' ERISA Plans in that they exercised authority or control respecting management or disposition of *plan assets*, ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), because:

    a.    The copayments, coinsurance, and deductible payments the PBM Defendants required pharmacies to collect from participants and beneficiaries are "plan assets" within the meaning of ERISA;

    b.    The contracts (*e.g.*, insurance policies and administrative-services-only ("ASO") contracts) underpinning the plans are "plan assets" within the meaning of ERISA; and

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

c. Through the pricing scheme, as described above, the PBM Defendants exercised control over both (i) glucagon payments from participants and beneficiaries and (ii) the management of the contracts underpinning the ERISA Plans.

147.    Specifically, the PBM Defendants successfully and improperly leveraged their relationships with and authority over the ERISA Class members' ERISA Plans and plan assets to benefit themselves and third parties, and without their authority or control over significant plan assets and relationships with the ERISA Plans they would not have been able to do so. Through the Glucagon Pricing Scheme, the PBM Defendants caused participants to pay inflated prices for glucagon.

148.    Further, any plan-paid amounts that were contributed to participant glucagon transactions were "plan assets" within the meaning of ERISA. Incident to their pricing scheme, the PBM Defendants also exercised control over these plan assets, part of which became PBM Kickbacks, making the PBM Defendants fiduciaries for purposes of these transactions.

149.    Thus, the PBM Defendants are able to pervert their ostensible role as the entity that will drive glucagon prices *down*—and they instead induce the Manufacturer Defendants to *raise* prices on glucagon to allow for PBM Kickbacks—because they *have* and *exercise* control over both ERISA Plans and ERISA plan assets. The PBM Defendants' access to the ERISA Plans and their ERISA plan assets is used as leverage in the PBM Defendants' negotiations with the Manufacturer Defendants. But for the PBM Defendants' access to millions of insureds' glucagon transactions and the funds used to purchase glucagon for plan participants, and their central role in *managing plan assets—i.e.*, the insurance policies and ASO contracts underpinning Plaintiffs' ERISA Plans under which prescription benefits are provided—the PBM Defendants would not be able to negotiate and extract the PBM Kickbacks. Thus, the PBM Defendants leveraged their unique and powerful access to one of the most exploitable (and lucrative) plan assets that exists today—health insurance policies and ASO contracts—as well as their key relationships with and access to thousands of ERISA Plans. The direct result of the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 53

PBMs' power and abuse of that power is that *participants and beneficiaries* of the ERISA Plans must pay more for glucagon than they would absent the scheme.

150.    In addition to the conduct described herein, the PBM Defendants are fiduciaries because they exercise discretion to set the prices that the members of the ERISA Class were and are required to pay for glucagon. PBMs are required to act in the best interests of the members of the ERISA Class, but by allowing participants and beneficiaries of ERISA Plans to be subject to the pricing scheme described herein and participating in this scheme with the Manufacturer Defendants, the PBM Defendants have also breached their fiduciary duties to the ERISA Class, as described more below.

151.    The PBM Defendants are aware of the effect the pricing scheme is having on the ERISA Class. Nevertheless, they have maximized and continue to maximize their revenues and the revenues of the Manufacturer Defendants at the expense of the ERISA Class by engaging in the illegal conduct described herein.

152.    In summary, to the extent the PBM Defendants have negotiated agreements subject to or collected funds in connection with the Glucagon Pricing Scheme described herein, they have exercised both discretionary and non-discretionary authority and control over the ERISA Plans, their management and administration, and ERISA plan assets by setting their own margins and compensation for managing the sale of prescription medications through rebate and other payment negotiations with the Manufacturer Defendants. As discussed further below, this same conduct breached their fiduciary duties under ERISA and constituted prohibited transactions. For example, in negotiating and entering into a contract on behalf of an ERISA plan, a fiduciary must act prudently and negotiate terms that are reasonable and in the best interests of *plan participants and beneficiaries*. In these negotiations and in the contract, agreement, or arrangement that is ultimately agreed upon, a fiduciary cannot place its interests over the interests of the plan participants and beneficiaries, including with respect to the fiduciary's own compensation.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 54

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

153.    In addition to being fiduciaries for the foregoing reasons, the PBM Defendants are also parties in interest under ERISA because (a) they are fiduciaries, ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A); and/or (b) they provided plan administration and pharmacy benefit management services to the ERISA Plaintiffs' and the ERISA Class members' health plans, ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

154.    As further described below, the PBM Defendants—fiduciaries and parties in interest—also received and used for their own and third parties' benefit "plan assets," including patients' and certain ERISA Plans' contributions to glucagon purchases and ERISA Plan contracts under which and through the management of which they had access to the ERISA Plans and ERISA plan assets, and were able to impose their pricing scheme on the ERISA Class.

155.    Notably, the foregoing powers and activities confer fiduciary status on the PBM Defendants *for all types of ERISA Plans* for which they provide pharmacy benefit services— including both insured plans and self-insured or union funded (Taft-Hartley) plans for which a health insurance company provides administrative-services-only (ASO) plan administration— because these plans all utilize PBMs in the same manner. Thus, *all participants and beneficiaries* in ERISA Plans of whatever type are owed fiduciary duties by the PBM Defendants, and these participants and beneficiaries may bring claims for *their own personal losses* caused by the PBM Defendants' breaches and prohibited transactions, as set forth below.

156.    As a result of the PBM Defendants' misuse of their fiduciary power, ERISA Plan participants and beneficiaries are forced to finance the PBM Kickbacks, from which the PBM Defendants and others profit. The PBM Kickbacks do not just enrich the PBM Defendants. They do so to the detriment of Plan participants, who pay inflated prices for glucagon as a result of the scheme.

**B.    The PBM Defendants' ERISA duties.**

157.    **The Statutory Requirements**: ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

158.    **The duty of loyalty**. ERISA imposes on a plan fiduciary the duty of loyalty—that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ." The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

159.    **The duty of prudence**. Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence—that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."

160.    **The duty to inform**. The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: (a) a negative duty not to misinform; (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (c) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

161.    **Prohibited transactions**. ERISA's prohibited transaction rules bar fiduciaries from certain acts because they are self-interested or conflicted and therefore become *per se*

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

violations of ERISA § 406(b)—or because they are improper "party in interest" transactions under ERISA § 406(a). As noted above, under ERISA, a "party in interest" includes a fiduciary as well as entities providing any "services" to a plan, among others. *See* ERISA § 3(14), 29 U.S.C. § 1002(14). ERISA's prohibited transaction rules are closely related to ERISA's duties of loyalty, which are discussed above.

162.    ERISA § 406(a) provides that transactions between a plan and a party in interest are prohibited transactions unless they are exempted under ERISA § 408:

(a) Transactions between plan and party in interest

Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a).

163.    ERISA § 406(b), provides:

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 57

29 U.S.C. § 1106(b).

164.    **Co-fiduciary liability**. A fiduciary is liable not only for fiduciary breaches within the sphere of its own responsibility, but also as a co-fiduciary in certain circumstances. ERISA § 405(a), 29 U.S.C. § 1105(a), states, in relevant part, that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)    if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

165.    **The duty to monitor**. In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or delegation, assumes the duty to monitor that appointee to protect the interests of the ERISA participants and beneficiaries. As noted above, the power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power.

166.    **The duty not to discriminate**. A health insurer may not discriminate against insureds by charging excessive premiums. ERISA § 702, 29 U.S.C. § 1182, states in pertinent part:

Prohibiting discrimination against individual participants and beneficiaries based on health status.

(a) In eligibility to enroll.

(1)    In general. Subject to paragraph (2), a group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on any of the following health status-related factors in relation to the individual or a dependent of the individual:

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 58

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(A)    Health status.

(B)    Medical condition (including both physical and mental illnesses).

(C)    Claims experience.

(D)    Receipt of health care.

(E)    Medical history.

(F)    Genetic information.

(G)    Evidence of insurability (including conditions arising out of acts of domestic violence).

(H)    Disability.

(2)    No application to benefits or exclusions. To the extent consistent with section 701, paragraph (1) shall not be construed—

(A)    to require a group health plan, or group health insurance coverage, to provide particular benefits other than those provided under the terms of such plan or coverage, or

(B)    to prevent such a plan or coverage from establishing limitations or restrictions on the amount, level, extent, or nature of the benefits or coverage for similarly situated individuals enrolled in the plan or coverage.

(3)    Construction. For purposes of paragraph (1), rules for eligibility to enroll under a plan include rules defining any applicable waiting periods for such enrollment.

(b)    In premium contributions.

(1)    In general. A group health plan, and a health insurance issuer offering health insurance coverage in connection with a group health plan, may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual.

167.    **Non-fiduciary liability.** Under ERISA, non-fiduciaries—regardless of whether they are parties in interest—who knowingly participate in a fiduciary breach may themselves be liable for certain relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Accordingly, as to the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 59

ERISA claims, even for Defendants who have no fiduciary or party-in-interest status themselves, they must nevertheless restore unjust profits or fees and are subject to other appropriate equitable relief with regard to the transactions at issue in this action, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and well established case law. Thus, even though the Manufacturer Defendants are not fiduciaries to the ERISA Plans with regard to any transaction at issue in this action, they are nevertheless subject to equitable relief under ERISA based on their actual or constructive knowledge of the wrongdoing at issue.

168. **Rights of action under the plans, for fiduciary breach, prohibited transactions, and related claims.** ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants and fiduciaries to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The remedies available pursuant to § 502(a)(3) include remedies for breaches of the fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and for violation of the prohibited transaction rules set forth in ERISA § 406, 29 U.S.C. § 1106. The ERISA Plaintiffs bring their ERISA claims pursuant to ERISA § 502(a)(3), as further set forth below.

**C.    The PBM Defendants breached their duties.**

169. The PBM Defendants committed breaches of fiduciary duty and prohibited transactions, and harmed the ERISA Plaintiffs and ERISA Class members in the following ways:

A. The ERISA Plaintiffs and ERISA Class members were charged excessive "copayments" or "coinsurance" contributions for glucagon as a result of the Glucagon Pricing Scheme, which caused the list price of glucagon to be artificially inflated;

B. Through the Glucagon Pricing Scheme, the ERISA Plaintiffs and ERISA Class members were charged unlawful fees and additional premiums for glucagon;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

C. The ERISA Plaintiffs and ERISA Class members were overcharged for copayment and coinsurance contributions in that rather than paying a percentage of an uninflated price for glucagon or a flat fee based on an uninflated price for glucagon, these cost-sharing payments were based on substantially inflated amounts;

D. The ERISA Plaintiffs and ERISA Class members were overcharged when making payments toward their deductibles or out-of-pocket maximums in that rather than paying an uninflated price for glucagon, they were charged inflated amounts as a result of the Glucagon Pricing Scheme;

E. The PBM Defendants improperly leveraged their relationships with and access to the ERISA Plans and their plan assets to extract the PBM Kickbacks from the Manufacturer Defendants;

F. The PBM Defendants discriminated against patients who have diabetes as compared to those who do not;

G. The PBM Defendants misrepresented and failed to disclose to ERISA Plan participants and beneficiaries the manner in which they charged for glucagon as alleged above;

H. The PBM Defendants set their own compensation for services performed as fiduciaries by inducing the Manufacturer Defendants to inflate glucagon list prices to facilitate the PBM Defendants' collection of PBM Kickbacks;

I. The PBM Defendants unilaterally collected their own compensation for services performed as fiduciaries by collecting the PBM Kickbacks;

J. The PBM Defendants set and changed the compensation of third parties with respect to the ERISA Class members' ERISA Plans by allocating the proceeds of the PBM Kickbacks without heeding the best interests of participants and beneficiaries;

K. The PBM Defendants maximized their own profits and profits to third parties, at the expense of the ERISA Plaintiffs and ERISA Class members;

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

L.  The PBM Defendants received improper compensation from entities doing business with the ERISA Plans whose pharmacy benefits the PBM Defendants administered and managed;

M.  The PBM Defendants knew or reasonably should have known that their actions would injure plan participants and beneficiaries of *all* ERISA Plans whose glucagon prices they manipulated;

N.  The PBM Defendants negotiated glucagon prices and PBM Kickbacks based on disloyal and self-interested factors and made such decisions without putting the interests of participants and beneficiaries first;

O.  The PBM Defendants drove up glucagon prices instead of driving them down, in order to increase their and the Manufacturer Defendants' profits at the expense of participants and beneficiaries of the ERISA Plans; and

P.  The Manufacturer Defendants knowingly participated in and profited from the fiduciary breaches and prohibited transactions committed by the PBM Defendants.

170.    The ERISA Plaintiffs and ERISA Class members were overcharged for and/or paid unauthorized and excessive copayments, coinsurance, and deductible payments in connection with the purchase of the Manufacturer Defendants' glucagon.

171.    The ERISA Plaintiffs and ERISA Class members were harmed by an abuse of the fiduciary power that the PBM Defendants possess—a substantial part of which gives the PBM Defendants discretion and authority over the administration and management of the ERISA plans with respect to prescription benefits and costs and their own fees and compensation, as well as nondiscretionary power over the management and disposition of plan assets. The PBM Defendants' ability to wield their fiduciary power to extract from the Manufacturer Defendants kickbacks and other benefits for themselves directly and financially harmed participants and beneficiaries of the ERISA Plans. The ERISA Plaintiffs and ERISA Class members were forced to pay purchase prices for glucagon that were based on the very same inflated list prices that

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

facilitated the PBM Defendants' profits from rebates and other payments that the Manufacturer Defendants paid in exchange for formulary placement and access to the glucagon purchases of ERISA Plan participants and beneficiaries whose ERISA Plans the PBM Defendants managed and administered. Had the PBM Defendants required the Manufacturer Defendants to compete on price, participants' cost sharing amounts would have been based on lower list prices. Thus, the PBM Defendants' profits derived from the Glucagon Pricing Scheme directly harm participants and beneficiaries who must purchase glucagon.

## VI.    MEDICARE ALLEGATIONS

172.    The Medicare Plaintiffs are participants in Medicare Part D or Medicare Advantage Plans that provide prescription drug coverage.

173.    Such plans, administered under Medicare Part D, add prescription drug coverage to the coverage provided by Medicare Part A of Medicare Part B (or, for some individuals, both Parts A and B). Medicare Part D plans help pay for prescription drugs, vaccines, biologicals, and some supplies not covered by Medicare Part A or Part B. Prescription drug coverage under the Plans of the Medicare Class are managed and administered by the PBM Defendants.

## A.    The Glucagon Pricing Scheme.

174.    The Medicare Plaintiffs and similarly situated Medicare plan enrollees are required to pay a "Copay" or "Coinsurance" for prescription drugs, in order to share the cost of prescription drugs. Members of the Medicare Class also must pay deductibles. They participate in percentage-based cost-sharing for glucagon purchases in multiple coverage phases.

175.    In the case of glucagon, the prices that Medicare Plaintiffs and the Medicare Class pay are inflated due to Defendants' Glucagon Pricing Scheme, which generates PBM Kickbacks to the PBM Defendants and sales for the Drug Manufacturer Defendants.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

**B.      Defendants' concealment of the Glucagon Pricing Scheme.**

2

176.    In their advertising and marketing materials, and in all other extracontractual

3

communications with the Medicare Plaintiffs and members of the Medicare Class, Defendants

4

have not disclosed their Glucagon Pricing Scheme.

5

177.    Nor have Defendants disclosed the Glucagon Pricing Scheme to the Medicare

6

Plaintiffs and members of the Medicare Class, whether before or after their enrollment.

7

178.    Defendants keep secret the amount of rebates that the Drug Manufacturer

8

Defendants pay for placement on the PBM Defendants' formularies. Likewise, the PBM

9

Defendants keep secret the portion of the rebates and other payments from the Drug

10

Manufacturer Defendants that they pocket. Defendants conceal that the purpose and effect on the

11

Glucagon Pricing Scheme is to drive up the list price of glucagon while maintaining the net

12

prices paid by the PBM Defendants so that ever larger rebates can be paid without affecting the

13

Drug Manufacturer Defendants' profits.

14

179.    Moreover, Defendants restrict the ability of enrollees to obtain information about

15

the financial incentives that the Drug Manufacturer Defendants provide to the PBM Defendants

16

and maintain secrecy over these arrangements.

17

**VII.    EQUITABLE TOLLING AND THE DISCOVERY RULE**

18

180.    By its nature, Defendants' Glucagon Pricing Scheme has hidden Defendants'

19

unlawful conduct from consumers and injured parties. Plaintiffs and members of the classes did

20

not know about the Glucagon Pricing Scheme, nor could they have reasonably discovered its

21

existence until shortly before filing this action.

22

181.    Through the exercise of reasonable diligence, Plaintiffs and members of the

23

proposed Classes could not have discovered within the time period of applicable statutes of

24

limitation that Defendants were engaged in the conduct described in this Complaint and were

25

misrepresenting the actual cost of glucagon, the net price collected by the Manufacturer

26

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 64

Defendants, and the amount of PBM Kickbacks that resulted from the scheme. Indeed these are figures that Plaintiffs still do not know due to Defendants' secretive scheme.

182.    Nor did Plaintiffs and other members of the class know of facts that would have caused a reasonable person to suspect that Defendants were engaged in the Glucagon Pricing Scheme. A reasonable and diligent investigation would not have disclosed these facts.

183.    Even today, lack of transparency in glucagon pricing and the arrangements, relationships, and agreements between and among the Manufacturer Defendants and the PBM Defendants that result in the PBM Kickbacks continue to hide Defendants' unlawful conduct from members of the Classes.

184.    Thus, the discovery rule has tolled the statutes of limitation with respect to claims as to all glucagon products as described in this Complaint.

185.    Defendants' deceptive and fraudulent practices and the denial of the misconduct alleged in this action also have tolled all relevant statutes of limitation. For example, ERISA's statute of limitations for fiduciary breach claims, ERISA § 413, 29 U.S.C. § 1113, provides that "in the case of fraud or concealment, [an] action may be commenced not later than six years after the date of discovery of such breach or violation." And while the RICO statute does not contain an express limitation period, the United States Supreme Court has held that civil RICO claims must be brought within four years from the discovery of an injury, which limitation is subject to equitable tolling due to defendants' fraudulent concealment of their unlawful conduct. *Rotella v. Wood*, 528 U.S. 549 (2000).

186.    The Glucagon Pricing Scheme—by its nature a secret endeavor by Defendants— remains hidden from most members of the Classes. The precise amount of PBM Kickbacks remains information in Defendants' possession and largely a mystery to the Classes. Moreover, during the Class Period, as defined below, each Defendant actively and effectively concealed its participation in the Glucagon Pricing Scheme from Plaintiffs and other members of the Classes

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

through opaque practices and secrecy policies. There is no question that Plaintiffs' claims are timely.

187.    Defendants are estopped from relying on any statutes of limitations. Despite their ongoing obligation to reveal to Plaintiffs and members of the classes the real price that they should have been charged for glucagon, the Defendants instead disclosed only the artificially inflated list price that resulted from the Glucagon Pricing Scheme. The net price paid by the PBM Defendants for glucagon, the existence of the Glucagon Pricing Scheme, and the impact that it had on Plaintiffs' and members of the classes payment obligations for glucagon all were hidden in an attempt to continue to profit at the expense of Plaintiffs and members of the classes. This deception cannot be rewarded by allowing the Defendants to hide behind the defense of statutes of limitation.

## VIII.   CLASS ACTION ALLEGATIONS

188.    Plaintiffs repeat and re-allege every allegation above as if set forth in full herein.

189.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), (b)(2), and (b)(1), Plaintiffs bring this suit on their own behalf and on behalf of four proposed classes of other similarly situated persons, consisting of:

**The Non-ERISA Employee/Exchange Plan Class**. All individuals residing in the United States and its territories who are or were enrolled in a non-ERISA employer-sponsored, ACA exchange, or state exchange health benefit plan or health insurance plan for which one or more of the PBM Defendants administers pharmacy benefits, who purchased the Manufacturer Defendants' glucagon pursuant to such plans or policies and were required to pay all or a portion of the purchase price.

**The ERISA Class**. All individuals residing in the United States and its territories who are or were enrolled in an ERISA-covered health benefit plan or health insurance plan for which one or more of the PBM Defendants administers pharmacy benefits, who purchased the Manufacturer Defendants' glucagon pursuant to such plans or policies and were required to pay all or a portion of the purchase price.

**The Medicare Class.** All individuals residing in the United States and its territories who are or were enrolled in a Medicare Prescription Drug Plan or a Medicare Advantage Plan that includes prescription drug coverage and for which one or more of the PBM Defendants administers pharmacy benefits, who purchased glucagon pursuant to such plans or policies and were required to pay all or a portion of the purchase price.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 66

**The Uninsured Class**. All individuals residing in the United States and its territories who are or were not enrolled in a health benefit plan or health insurance plan, who purchased the Manufacturer Defendants' glucagon and who paid any portion of the purchase price.

Plaintiffs reserve the right to redefine the Classes prior to certification.

190.    **Class Period**. Plaintiffs will seek Class certification, damages, losses, and other available relief for fiduciary breaches and prohibited transactions occurring within the entire period allowable under ERISA § 413, 29 U.S.C. § 1113, including its fraud or concealment tolling provisions under RICO, 18 U.S.C. 1961, *et seq.* and the doctrine of equitable tolling, as well as under all state statutory and common law claims at issue here. Further, Plaintiffs reserve the right to refine the Class Period after they have learned the extent of Defendants' fraud and the length of its concealment.

191.    Excluded from the Classes are: (a) the named Defendants and any entity in which they have a controlling interest, their subsidiaries and affiliates, and their legal representatives, officers, directors, assignees, and successors and (b) any co-conspirators, and their officers, directors, management, employees, subsidiaries, and affiliates.

192.    Diabetes patients must pay a portion of the inflated list price under a number of different guises, including insurance deductibles, coinsurance, fixed copayments that are based on the inflated list price, Medicare contribution requirements, and, of course, uninsured diabetes patients must pay the entire list price. Individuals who pay a portion of the list price through any of these charges qualify as direct purchasers.

193.    And, for patients who pay any of these types of charges for glucagon, the price that a person pays out-of-pocket for the drug is calculated based on the inflated list prices. Therefore, each person who pays such charges meets one of the Class definitions and each incurred damages that are directly related to the inflated list prices driven by Defendants' Glucagon Pricing Scheme.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

194.    This action is brought, and may properly be maintained, as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

195.    **Numerosity**. Upon information and belief, each Class consists of millions of purchasers residing throughout the United States. Accordingly, it would be impracticable to join all members of the classes before the Court.

196.    **Typicality**. Plaintiffs' claims are typical of the members of the Classes, in that they share facts and legal claims or questions with Class Members, there is a sufficient relationship between the damage to Plaintiffs and Defendants' conduct affecting Class Members, and Plaintiffs do not have interests that are adverse to those of other Class Members.

197.    **Adequacy**. Plaintiffs will fairly and adequately protect the interests of Class Members and have retained competent counsel that have experience prosecuting complex class actions, including complex questions that arise in consumer protection litigation. Counsel have specific experience litigating pharmaceutical class actions and cases involving Pharmacy Benefit Managers.

198.    **Commonality**. Numerous and substantial questions of law and fact are common to all members of the Classes—all of whom were affected by the Glucagon Pricing Scheme. Some of the common questions of law and fact are:

        i.    Whether the Manufacturer Defendants inflated the list prices for their glucagon products;

        ii.    What the real or net prices for the Manufacturer Defendants' glucagon products are;

        iii.    Whether the list prices are deceptive;

        iv.    Whether members of the Classes must pay a portion (or all) of the inflated list price for glucagon;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 68

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

v.      Whether the reason why the Manufacturer Defendants artificially increased the list price for the glucagon products was to gain better placement on the PBM Defendants' formularies;

vi.      Whether the PBM Defendants profit from the discrepancy between the net prices and the inflated list prices for the Manufacturer Defendants' glucagon products;

vii.      Whether each PBM Defendant and each Manufacturer Defendant participated in the Glucagon Pricing Scheme;

viii.      Whether each Manufacturer Defendant conspired with each PBM Defendant to complete pricing and rebate fraud;

ix.      Whether Defendants engaged in deceptive conduct;

x.      Whether Defendants' marketing materials and other communications distributed by Defendants were false or misleading;

xi.      Whether Defendants intended to defraud or harm Plaintiffs and Class members;

xii.      Whether Defendants violated RICO;

xiii.      Whether Defendants violated state consumer protection laws;

xiv.      Whether Defendants utilized or formed enterprises for the purpose of carrying out a scheme intended to defraud Plaintiffs and the Classes;

xv.      Whether Defendants used the U.S. mails and interstate wire facilities to carry out a scheme intended to defraud Plaintiffs and the Classes;

xvi.      Whether Defendants used the U.S. mails and interstate wire facilities to carry out their conspiracy and agreement;

xvii.      Whether Defendants are liable to Plaintiffs and the Class members for damages;

xviii.      Whether the PBM Defendants are fiduciaries under ERISA;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 69

xix.     Whether the PBM Defendants are parties in interest under ERISA;

xx.     Whether the PBM Defendants breached their fiduciary duties in failing to comply with ERISA as set forth above;

xxi.     Whether the PBM Defendants' acts as alleged above breached ERISA's prohibited transaction rules;

xxii.     Whether the PBM Defendants breached ERISA § 702;

xxiii.     Whether the Manufacturer Defendants knowingly participated in and/or knew or had constructive knowledge of violations of ERISA, including breaches of fiduciary duty or prohibited transactions;

xxiv.     Whether the ERISA Class is entitled to restitution, surcharge, an injunction, and/or other appropriate equitable relief;

xxv.     Whether Defendants violated the common law standards that exist in each state and nationwide;

xxvi.     Whether Defendants have been unjustly enriched at the expense of Plaintiffs and the Classes;

xxvii.     Whether Plaintiffs and the Classes are entitled to compensatory damages and, if so, the nature of such damages;

xxviii.     Whether Plaintiffs and the Classes are entitled to exemplary or punitive damages and, if so, the nature of such damages; and

xxix.     Whether Plaintiffs and the Classes are entitled to injunctive or equitable relief and, if so, the nature of that relief.

199.     A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted in this Complaint is more efficient and manageable for at least the following reasons:

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 70

a. The liability claim presented in this case predominates over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

b. Absent a Class, the Class Members will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendants has been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Classes can seek redress for the harm caused to them by Defendant.

200. This action is also maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted, or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief respecting the Classes as a whole.

201. With respect to Federal Rule of Civil Procedure 23(b)(1)(B), the prosecution of separate actions by each plaintiff in the Classes would create a risk of adjudications with respect to individual members of each Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 71

202.    Finally, Class action status is also warranted under Federal Rule of Civil Procedure 23(b)(1)(A) because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants.

## IX.    CLAIMS FOR RELIEF

### COUNT ONE — VIOLATIONS OF 18 U.S.C. § 1962(c)-(d)
### THE RACKETEER INFLUENCED AND
### CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961, *ET SEQ.*

(By Plaintiffs on Behalf of All Members of the Classes, Against Defendants CVS Health, Eli Lilly, and Novo Nordisk)

203.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

204.    Plaintiffs bring this Count on behalf of themselves and the Classes against Defendants CVS Health, Eli Lilly, and Novo Nordisk (inclusively, for purposes of this Count, the "CVS Health RICO Defendants").

205.    At all relevant times, the CVS Health RICO Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

206.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

207.    Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. *See* 18 U.S.C. § 1962(d).

208.    As explained in detail below, Defendant CVS Health sought to infiltrate the business arrangement established between the two manufacturers of glucagon—Eli Lilly and Novo Nordisk—health plans, and insurance companies across the country through a fraudulent scheme designed to secure greater profits and market share, increase the cost of glucagon, secure a favorable formulary position for the Manufacturer Defendants' glucagon products, and extract

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 72

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

millions of dollars of revenue from Plaintiffs and the Classes. As explained in detail below, the CVS Health RICO Defendants' years-long misconduct violated sections 1962(c) and (d).

**A.    Description of the CVS Health RICO Enterprise.**

209.    RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

210.    For years, CVS Health and other pharmacy benefits managers played a small but meaningful role in the prescription product and insurance business: providing administrative services on behalf of health plans that offer prescription benefits and negotiating with manufacturers on their behalf.

211.    In the past decade, however, CVS Health and other PBMs began to exert influence in their role as insurance-industry middlemen to dictate the success or failure of certain drugs and other medical products in the marketplace by offering to include or threatening to exclude certain products from some or all of their formularies and, in the process, extracting hundreds of millions of dollars in the form of "discounts" or "rebate" payments from manufacturers in exchange.

212.    Negotiations between PBMs and manufacturers regarding those discounts, however, take place in complex, closed-door meetings, during which PBMs sell access to their formularies in exchange for large rebates or discounts, a substantial portion of which they pocket as pure profit.

213.    In order to facilitate the payment of "rebates" to PBMs, and ensure their position on certain formularies without impacting their bottom line, glucagon manufacturers, including the Manufacturer Defendants, participate in a scheme with CVS Health, and other PBMs, to

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

increase the list price of their glucagon instead of competing on cost with other glucagon manufacturers.

214.    This scheme to increase the profits of PBMs through artificially increasing the list price of glucagon benefits everyone in the industry's supply chain except Plaintiffs and the Classes, who are left paying fraudulently obtained, exorbitant, and ever-increasing prices for their glucagon.

215.    At all relevant times, the CVS Health RICO Defendants, along with insurance companies, pharmacies, wholesalers, and other individuals and entities, including unknown third parties, operated an ongoing association-in-fact enterprise. This association-in-fact enterprise was formed for the purpose of ensuring that one or more of the Manufacturer Defendants' glucagon products were included on CVS Health's formularies and increasing CVS Health's profits by fraudulently and artificially increasing the list price of those glucagon products at the expense of Plaintiffs and the Classes, and through which the CVS Health RICO Defendants conducted a pattern of racketeering activity under 18 U.S.C. § 1961(4).

216.    Alternatively, each of the CVS Health RICO Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the CVS Health RICO Defendants conducted a pattern of racketeering activity. The CVS Health RICO Defendants' separate legal statuses facilitated the fraudulent scheme and provided a hoped-for shield from liability for the CVS Health RICO Defendants and their co-conspirators.

217.    Alternatively, each of the Manufacturer Defendants and CVS Health constitute a two-entity associated-in-fact RICO enterprise within the meaning of 18 U.S.C. § 1961(4), through which the members of that enterprise conducted a pattern of racketeering activity described below. The enterprises, alleged in this and the previous paragraphs, are referred to collectively as the "CVS Health RICO Enterprise."

218.    At all relevant times, the CVS Health RICO Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 74

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

as well as individuals and legal entities associated-in-fact for the common purpose of engaging in the CVS Health RICO Defendants' profit-making scheme.

219.    For all of the above alternatives, the association-in-fact CVS Health RICO Enterprise consisted of the following entities and individuals: (a) CVS Health, its subsidiaries, executives, employees, and agents; (b) Eli Lilly, its subsidiaries, executives, employees, and agents; and (c) Novo Nordisk, its subsidiaries, executives, employees, and agents.

220.    While each of the CVS Health RICO Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the CVS Health RICO Enterprise's affairs, at all relevant times, the CVS Health RICO Enterprise: (a) had an existence separate and distinct from each CVS Health RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the CVS Health RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the CVS Health RICO Defendants, along with other individuals and entities, including unknown third parties.

221.    The CVS Health RICO Defendants and their co-conspirators, through their illegal CVS Health RICO Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the CVS Health RICO Defendants and the other entities and individuals associated-in-fact with the CVS Health RICO Enterprise's activities by selling glucagon at an inflated and artificial price ("the CVS Health RICO Scheme").

222.    CVS Health orchestrated the CVS Health RICO Scheme, whereby CVS Health, as a PBM, leveraged its dominant position in the insurance market to demand that the Manufacturer Defendants pay substantial kickbacks in order to have their products included or be given priority on CVS Health's formularies.

223.    The Manufacturer Defendants facilitated the CVS Health RICO Scheme by agreeing to provide ever-larger "discounts" or "rebates" to CVS Health in order to gain or maintain access to its formularies and funding those discounts by artificially increasing the list price of their glucagon products.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 75

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

224.     In furtherance of the scheme, the CVS Health RICO Defendants each affirmatively misrepresented or concealed the existence of the inflated and fraudulent nature of these list price increases as well as the existence, amount, and purpose of the discounts given to CVS Health to Plaintiffs, the Classes, consumers, health care payers, and the general public. Specifically, the CVS Health RICO Defendants claimed that the rebates paid to CVS Health were for the purpose of lowering costs when, in fact, they were *quid pro quo* payments for formulary access that had the opposite effect for Plaintiffs and the members of the Classes.

**B.     The CVS Health RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues.**

225.     Each CVS Health RICO Defendant benefited financially from the CVS Health RICO Enterprise. CVS Health received direct rebate payments from the Manufacturer Defendants, a large portion of which it pocketed as pure profit, as well as other fees.

226.     In exchange, one or more of the Manufacturer Defendants' products received a favorable position on one, or a number of CVS Health's formularies, translating into higher sales and profits for the Manufacturer Defendants. And because the Manufacturer Defendants financed the payment of rebates by inflating the list prices for their glucagon products, they maintained and, in some cases, increased their profit margins.

227.     At all relevant times, the CVS Health RICO Enterprise: (a) had an existence separate and distinct from each CVS Health RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the CVS Health RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the CVS Health RICO Defendants, along with other individuals and entities, including unknown third parties that operated an association-in-fact enterprise, which was formed for the purpose of ensuring that one or more of the Manufacturer Defendants' glucagon products were included on CVS Health's formularies and increasing CVS Health's profits by fraudulently and artificially increasing the

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

list price of those glucagon products at the expense of Plaintiffs and the Classes, and paying rebates from the inflated list price.

228.    The CVS Health RICO Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the CVS Health RICO Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to sell glucagon products at an inflated and artificial price.

229.    The CVS Health RICO Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement, distribution, and sale of glucagon products throughout the country, and the receipt of monies from the sale of the same.

230.    Within the CVS Health RICO Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The CVS Health RICO Enterprise used this common communication network for purposes of marketing, pricing, and engaging in negotiations regarding glucagon products, their pricing, and placement or position on CVS Health's formularies and for furthering the CVS Health RICO Scheme.

231.    Each participant in the CVS Health RICO Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the CVS Health RICO Enterprise, the CVS Health RICO Defendants functioned as a continuing unit with the purpose of furthering the CVS Health RICO Scheme.

232.    The CVS Health RICO Defendants participated in the operation and management of the CVS Health RICO Enterprise by directing its affairs, as described herein. While the CVS Health RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 77

roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

233.    The CVS Health RICO Defendants exerted substantial control over the CVS Health RICO Enterprise, and participated in the affairs of the enterprise by: (a) negotiating and/or offering discounts for glucagon; (b) misrepresenting and/or concealing the existence, amount, or purpose of the discounts negotiated for glucagon; (c) misrepresenting and/or concealing the effect that the negotiated discounts had on the price of the glucagon products for the end payer; (d) negotiating and/or setting the list price for glucagon; (e) misrepresenting and/or concealing the true cost of glucagon; (f) publishing, reproducing, and/or distributing documents containing the list price for glucagon; (g) negotiating and/or offering preferred formulary placement for glucagon; (h) misrepresenting and/or concealing the true nature of the relationship and agreements between the members of the enterprise and its effect on the pricing of glucagon products; (i) otherwise misrepresenting and/or concealing the inflated and fraudulent nature of the pricing of glucagon; (j) collecting discounts, revenues, and/or profits from the sale of glucagon; and (k) ensuring that the other CVS Health RICO Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

234.    Without each CVS Health RICO Defendant's willing participation, the CVS Health RICO Scheme and common course of conduct would not have been successful.

235.    The CVS Health RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiffs cannot fully know at present, because such information lies in the Defendants' and others' hands.

**C.    Predicate Acts: Mail and Wire Fraud.**

236.    To carry out, or attempt to carry out, the scheme to defraud, the CVS Health RICO Defendants, each of whom is a person associated-in-fact with the CVS Health RICO Enterprise, did knowingly conduct or participate, directly or indirectly, in the affairs of the CVS

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Health RICO Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

237.    Specifically, the CVS Health RICO Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

238.    The multiple acts of racketeering activity which the CVS Health RICO Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by the CVS Health RICO Defendants' regular use of the facilities, services, distribution channels, and employees of the CVS Health RICO Enterprise. The CVS Health RICO Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailings and wires in interstate or foreign commerce.

239.    The CVS Health RICO Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

240.    In devising and executing the illegal scheme, the CVS Health RICO Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Plaintiffs and the Classes or to obtain money from Plaintiffs and the Classes by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the illegal scheme, the CVS Health RICO Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

241.    The CVS Health RICO Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1)) include, but are not limited to:

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(a)    <u>Mail Fraud</u>: The CVS Health RICO Defendants violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to design, manufacture, market, price, and/or sell glucagon by means of false pretenses, misrepresentations, promises, and omissions.

(b)    <u>Wire Fraud</u>: The CVS Health RICO Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and omissions.

242.    The CVS Health RICO Defendants' use of the mails and wires include, but are not limited to: (a) the transmission of marketing or other materials indicating, setting, or negotiating the price of glucagon; (b) the transmission of marketing or other materials indicating or advertising that any of the CVS Health RICO Defendants reduce the price of glucagon; (c) written, telephone, or electronic communications regarding and/or negotiating the price of glucagon; (d) written, telephone, or electronic communications regarding and/or negotiating discounts and/or rebates for glucagon; (e) written, telephone, or electronic communications regarding the existence, amount, or purpose of discounts and/or rebates for glucagon; (f) the transmission and/or distribution of glucagon through the mails; and (g) the use of the mails or wires to bill for or collect discounts, revenues, and/or profits from the sale of glucagon.

243.    The CVS Health RICO Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships, and other third-party entities in furtherance of the scheme.

244.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the cost of glucagon products and fraudulently extract hundreds of millions of dollars of revenue from Plaintiffs and the Classes.

245.    Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records. However, Plaintiffs have described the types of predicate acts of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 80

mail and/or wire fraud. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

246.    The CVS Health RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), the CVS Health RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the CVS Health RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

247.    The CVS Health RICO Defendants aided and abetted others in the violations of the above laws.

248.    To achieve their common goals, the CVS Health RICO Defendants hid from Plaintiffs, the Classes, insurers, health plans, and the general public the true net price of glucagon, the inflated and fraudulent nature of the list price of glucagon, the relationship between the CVS Health RICO Defendants and their impact upon the price of glucagon, and the existence, amount, and purpose of rebates and discounts given for glucagon, and the portion of the rebates and discounts pocketed by CVS Health.

249.    The CVS Health RICO Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the CVS Health RICO Defendants and their co-conspirators had to agree to conceal their fraudulent negotiations and pricing tactics.

250.    The CVS Health RICO Defendants knew, and intended that, Plaintiffs and Class members would rely on the material misrepresentations and omissions made by them and incur

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

increased costs as a result. Indeed, if Plaintiffs and the Classes did not make inflated payments for glucagon, the CVS Health RICO scheme could not succeed.

251.    As described herein, the CVS Health RICO Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining significant monies and revenues from Plaintiffs and the Classes based on their misrepresentations and omissions, while providing glucagon products that were worth significantly less than the purchase price paid. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

252.    During the CVS Health RICO Defendants' determination of discounts and/or rebates for glucagon, the true purpose of the discounts, the true cost of glucagon, and the inflated and fraudulent nature of their pricing was revealed to each of the CVS Health RICO Defendants. Nevertheless, the CVS Health RICO Defendants continued to disseminate misrepresentations regarding the true cost of glucagon as well as the existence, amount, and purpose of the discounts on those products, in furtherance of the scheme.

253.    By reason of, and as a result of the conduct of the CVS Health RICO Defendants, and in particular, their pattern of racketeering activity, Plaintiffs and the Classes have been injured in their business and/or property in multiple ways, including but not limited to paying excessive and inflated prices for glucagon.

The CVS Health RICO Defendants' violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiffs and the Classes who are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 82

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT TWO — VIOLATIONS OF 18 U.S.C. § 1962(c)-(d) THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961, *ET SEQ.***

(By Plaintiffs on Behalf of All Members of the Classes, Against
Defendants Express Scripts, Eli Lilly, and Novo Nordisk)

254.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

255.    Plaintiffs bring this Count on behalf of themselves and the Classes against Defendants Express Scripts, Eli Lilly and Novo Nordisk (inclusively, for purposes of this Count, the "Express Scripts RICO Defendants").

256.    At all relevant times, the Express Scripts RICO Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

257.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

258.    Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. *See* 18 U.S.C. § 1962(d).

259.    As explained in detail below, Defendant Express Scripts sought to infiltrate the business arrangement established between the two manufacturers of glucagon—Eli Lilly and Novo Nordisk—health plans, and insurance companies across the country through a fraudulent scheme designed to secure greater profits and market share, increase the cost of glucagon, secure a favorable formulary position for the Manufacturer Defendants' glucagon products, and extract millions of dollars of revenue from Plaintiffs and the Classes. As explained in detail below, the Express Scripts RICO Defendants' years-long misconduct violated sections 1962(c) and (d).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

## A.    Description of the Express Scripts RICO Enterprise.

2

260.    RICO defines an enterprise as "any individual, partnership, corporation,

3

association, or other legal entity, and any union or group of individuals associated in fact

4

although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three

5

structural features: (1) a purpose; (2) relationships among those associated with the enterprise;

6

and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

7

261.    For years, Express Scripts and other pharmacy benefits managers played a small

8

but meaningful role in the prescription product and insurance business: providing administrative

9

services on behalf of health plans that offer prescription benefits and negotiating with

10

manufacturers on their behalf.

11

262.    In the past decade, however, Express Scripts and other PBMs began to exert

12

influence in their role as insurance-industry middlemen to dictate the success or failure of certain

13

drugs and other medical products in the marketplace by offering to include or threatening to

14

exclude certain medications from some or all of their formularies and, in the process, extracting

15

hundreds of millions of dollars in the form of "discounts" or "rebate" payments from

16

manufacturers in exchange.

17

263.    Negotiations between PBMs and manufacturers regarding those discounts,

18

however, take place in complex, closed-door meetings, during which PBMs sell access to their

19

formularies in exchange for large rebates or discounts, a substantial portion of which they pocket

20

as pure profit.

21

264.    In order to facilitate the payment of "rebates" to PBMs, and ensure their position

22

on certain formularies without impacting their bottom line, glucagon manufacturers, the

23

Manufacturer Defendants participate in a scheme with Express Scripts, and other PBMs, to

24

increase the list price of their glucagon instead of competing on cost with each other.

25

265.    This scheme to increase the profits of PBMs through artificially increasing the list

26

price of glucagon benefits everyone in the industry's supply chain except Plaintiffs and the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 84

Classes, who are left paying fraudulently obtained, exorbitant, and ever-increasing prices for their glucagon.

266.     At all relevant times, the Express Scripts RICO Defendants, along with insurance companies, pharmacies, wholesalers, and other individuals and entities, including unknown third parties, operated an ongoing association-in-fact enterprise. This association-in-fact enterprise was formed for the purpose of ensuring that one or more of the Manufacturer Defendants' glucagon products were included on Express Scripts' formularies and increasing Express Scripts' profits by fraudulently and artificially increasing the list price of those glucagon products at the expense of Plaintiffs and the Classes, and through which the Express Scripts RICO Defendants conducted a pattern of racketeering activity under 18 U.S.C. § 1961(4).

267.     Alternatively, each of the Express Scripts RICO Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the Express Scripts RICO Defendants conducted a pattern of racketeering activity. The Express Scripts RICO Defendants' separate legal statuses facilitated the fraudulent scheme and provided a hoped-for shield from liability for the Express Scripts RICO Defendants and their co-conspirators.

268.     Alternatively, each of the Manufacturer Defendants and Express Scripts constitute a two-entity associated-in-fact RICO enterprise within the meaning of 18 U.S.C. § 1961(4), through which the members of that enterprise conducted a pattern of racketeering activity described below. The enterprises, alleged in this and the previous paragraphs, are referred to collectively as the "Express Scripts RICO Enterprise."

269.     At all relevant times, the Express Scripts RICO Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in the Express Scripts RICO Defendants' profit-making scheme.

270.     For all of the above alternatives, the association-in-fact Express Scripts RICO Enterprise consisted of the following entities and individuals: (a) Express Scripts, its

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 85

subsidiaries, executives, employees, and agents; (b) Eli Lilly, its subsidiaries, executives, employees, and agents; and (c) Novo Nordisk, its subsidiaries, executives, employees, and agents.

271.    While each of the Express Scripts RICO Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the Express Scripts RICO Enterprise's affairs, at all relevant times, the Express Scripts RICO Enterprise: (a) had an existence separate and distinct from each Express Scripts RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the Express Scripts RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the Express Scripts RICO Defendants, along with other individuals and entities, including unknown third parties.

272.    The Express Scripts RICO Defendants and their co-conspirators, through their illegal Express Scripts RICO Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the Express Scripts RICO Defendants and the other entities and individuals associated-in-fact with the Express Scripts RICO Enterprise's activities by selling glucagon at an inflated and artificial price ("the Express Scripts RICO Scheme").

273.    Express Scripts orchestrated the Express Scripts RICO Scheme, whereby Express Scripts, as a PBM, leveraged its dominant position in the insurance market to demand that the Manufacturer Defendants pay substantial kickbacks in order to have their products included or be given priority on Express Scripts' formularies.

274.    The Manufacturer Defendants facilitated the Express Scripts RICO Scheme by agreeing to provide ever-larger "discounts" or "rebates" to Express Scripts in order to gain or maintain access to its formularies and funding those discounts by artificially increasing the list price of their glucagon products.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 86

275.    In furtherance of the scheme, the Express Scripts RICO Defendants each affirmatively misrepresented or concealed the existence of the inflated and fraudulent nature of these list price increases as well as the existence, amount, and purpose of the discounts given to Express Scripts to Plaintiffs, the Classes, consumers, health care payers, and the general public. Specifically, the Express Scripts RICO Defendants claimed that the rebates paid to Express Scripts were for the purpose of lowering costs when, in fact, they were *quid pro quo* payments for formulary access that had the opposite effect for Plaintiffs and the members of the Classes.

**B.     The Express Scripts RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues.**

276.    Each Express Scripts RICO Defendant benefited financially from the Express Scripts RICO Enterprise. Express Scripts received direct rebate payments from the Manufacturer Defendants, a large portion of which it pocketed as pure profit, as well as other fees.

277.    In exchange, one or more of the Manufacturer Defendants' products received a favorable position on one, or a number of Express Scripts' formularies, translating into higher sales and profits for each of these manufacturers. And because the Manufacturer Defendants financed the payment of rebates by inflating the list prices for their glucagon products, they maintained and, in some cases, increased their profit margins.

278.    At all relevant times, the Express Scripts RICO Enterprise: (a) had an existence separate and distinct from each Express Scripts RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the Express Scripts RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the Express Scripts RICO Defendants, along with other individuals and entities, including unknown third parties that operated an association-in-fact enterprise, which was formed for the purpose of ensuring that one or more of the Manufacturer Defendants' glucagon products were included on Express Scripts' formularies and increasing Express Scripts' profits by fraudulently and

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

artificially increasing the list price of those glucagon products at the expense of Plaintiffs and the Classes, and paying rebates from the inflated list price.

279.    The Express Scripts RICO Defendants and their co-conspirators, through their illegal enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the Express Scripts RICO Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to sell glucagon at an inflated and artificial price.

280.    The Express Scripts RICO Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement, distribution, and sale of glucagon throughout the country, and the receipt of monies from the sale of the same.

281.    Within the Express Scripts RICO Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The Express Scripts RICO Enterprise used this common communication network for purposes of marketing, pricing, and engaging in negotiations regarding glucagon, its pricing, and placement or position on Express Scripts' formularies and for furthering the Express Scripts RICO Scheme.

282.    Each participant in the Express Scripts RICO Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the Express Scripts RICO Enterprise, the Express Scripts RICO Defendants functioned as a continuing unit with the purpose of furthering the Express Scripts RICO Scheme.

283.    The Express Scripts RICO Defendants participated in the operation and management of the Express Scripts RICO Enterprise by directing its affairs, as described herein. While the Express Scripts RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

284.    The Express Scripts RICO Defendants exerted substantial control over the Express Scripts RICO Enterprise, and participated in the affairs of the enterprise by: (a) negotiating and/or offering discounts for glucagon; (b) misrepresenting and/or concealing the existence, amount, or purpose of the discounts negotiated for glucagon; (c) misrepresenting and/or concealing the effect that the negotiated discounts had on the price of glucagon for the end payer; (d) negotiating and/or setting the list price for glucagon; (e) misrepresenting and/or concealing the true cost of glucagon; (f) publishing, reproducing, and/or distributing documents containing the list price for glucagon; (g) negotiating and/or offering preferred formulary placement for glucagon; (h) misrepresenting and/or concealing the true nature of the relationship and agreements between the members of the enterprise and its effect on the pricing of glucagon; (i) otherwise misrepresenting and/or concealing the inflated and fraudulent nature of the pricing of glucagon; (j) collecting discounts, revenues, and/or profits from the sale of glucagon; and (k) ensuring that the other Express Scripts RICO Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

285.    Without each Express Scripts RICO Defendant's willing participation, the Express Scripts RICO Scheme and common course of conduct would not have been successful.

286.    The Express Scripts RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiffs cannot fully know at present, because such information lies in the Defendants' and others' hands.

C.    Predicate Acts: Mail and Wire Fraud.

287.    To carry out, or attempt to carry out, the scheme to defraud, the Express Scripts RICO Defendants, each of whom is a person associated-in-fact with the Express Scripts RICO Enterprise, did knowingly conduct or participate, directly or indirectly, in the affairs of the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 89

Express Scripts RICO Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

288.    Specifically, the Express Scripts RICO Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

289.    The multiple acts of racketeering activity which the Express Scripts RICO Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by the Express Scripts RICO Defendants' regular use of the facilities, services, distribution channels, and employees of the Express Scripts RICO Enterprise. The Express Scripts RICO Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailings and wires in interstate or foreign commerce.

290.    The Express Scripts RICO Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

291.    In devising and executing the illegal scheme, the Express Scripts RICO Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Plaintiffs and the Classes or to obtain money from Plaintiffs and the Classes by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the illegal scheme, the Express Scripts RICO Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

292.    The Express Scripts RICO Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1)) include, but are not limited to:

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 90

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(a)    <u>Mail Fraud</u>: The Express Scripts RICO Defendants violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to design, manufacture, market, price, and/or sell glucagon by means of false pretenses, misrepresentations, promises, and omissions.

(b)    <u>Wire Fraud</u>: The Express Scripts RICO Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and omissions.

293.    The Express Scripts RICO Defendants' use of the mails and wires include, but are not limited to: (a) the transmission of marketing or other materials indicating, setting, or negotiating the price of glucagon; (b) the transmission of marketing or other materials indicating or advertising that any of the Express Scripts RICO Defendants reduce the price of glucagon; (c) written, telephone, or electronic communications regarding and/or negotiating the price of glucagon; (d) written, telephone, or electronic communications regarding and/or negotiating discounts and/or rebates for glucagon; (e) written, telephone, or electronic communications regarding the existence, amount, or purpose of discounts and/or rebates for glucagon; (f) the transmission and/or distribution of glucagon through the mails; and (g) the use of the mails or wires to bill for or collect discounts, revenues, and/or profits from the sale of glucagon.

294.    The Express Scripts RICO Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships, and other third-party entities in furtherance of the scheme.

295.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the cost of glucagon and fraudulently extract hundreds of millions of dollars of revenue from Plaintiffs and the Classes.

296.    Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records. However, Plaintiffs have described the types of predicate acts of

mail and/or wire fraud. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

297.    The Express Scripts RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), the Express Scripts RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the Express Scripts RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

298.    The Express Scripts RICO Defendants aided and abetted others in the violations of the above laws.

299.    To achieve their common goals, the Express Scripts RICO Defendants hid from Plaintiffs, the Classes, insurers, health plans, and the general public the true net price of glucagon, the inflated and fraudulent nature of the list price of glucagon, the relationship between the Express Scripts RICO Defendants and their impact upon the price of glucagon, and the existence, amount, and purpose of rebates and discounts given for glucagon, and the portion of the rebates and discounts pocketed by Express Scripts.

300.    The Express Scripts RICO Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the Express Scripts RICO Defendants and their co-conspirators had to agree to conceal their fraudulent negotiations and pricing tactics.

301.    The Express Scripts RICO Defendants knew, and intended that, Plaintiffs and Class members would rely on the material misrepresentations and omissions made by them and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 92

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

incur increased costs as a result. Indeed, if Plaintiffs and the Classes did not make inflated payments for glucagon, the Express Scripts RICO scheme could not succeed.

302.    As described herein, the Express Scripts RICO Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining significant monies and revenues from Plaintiffs and the Classes based on their misrepresentations and omissions, while providing glucagon products that were worth significantly less than the purchase price paid. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

303.    During the Express Scripts RICO Defendants' determination of discounts and/or rebates for glucagon, the true purpose of the discounts, the true cost of the glucagon products, and the inflated and fraudulent nature of their pricing was revealed to each of the Express Scripts RICO Defendants. Nevertheless, the Express Scripts RICO Defendants continued to disseminate misrepresentations regarding the true cost of glucagon as well as the existence, amount, and purpose of the discounts on those products, in furtherance of the scheme.

304.    By reason of, and as a result of the conduct of the Express Scripts RICO Defendants, and in particular, their pattern of racketeering activity, Plaintiffs and the Classes have been injured in their business and/or property in multiple ways, including but not limited to paying excessive and inflated prices for glucagon.

305.    The Express Scripts RICO Defendants' violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiffs and the Classes who are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 93

## COUNT THREE — VIOLATIONS OF 18 U.S.C. § 1962(c)-(d) THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961, *ET SEQ.*

(By Plaintiffs on Behalf of All Members of the Classes, Against
Defendants OptumRx, Eli Lilly, and Novo Nordisk)

306.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

307.    Plaintiffs bring this Count on behalf of themselves and the Classes against Defendants OptumRx, Eli Lilly, and Novo Nordisk (inclusively, for purposes of this Count, the "OptumRx RICO Defendants").

308.    At all relevant times, the OptumRx RICO Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

309.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

310.    Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. *See* 18 U.S.C. § 1962(d).

311.    As explained in detail below, Defendant OptumRx sought to infiltrate the business arrangement established between the two manufacturers of glucagon—Eli Lilly and Novo Nordisk—health plans, and insurance companies across the country through a fraudulent scheme designed to secure greater profits and market share, increase the cost of glucagon, secure a favorable formulary position for the Manufacturer Defendants' glucagon products, and extract millions of dollars of revenue from Plaintiffs and the Classes. As explained in detail below, the OptumRx RICO Defendants' years-long misconduct violated sections 1962(c) and (d).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 94

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**A.    Description of the OptumRx RICO Enterprise.**

312.    RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

313.    For years, OptumRx and other pharmacy benefits managers played a small but meaningful role in the prescription product and insurance business: providing administrative services on behalf of health plans that offer prescription benefits and negotiating with manufacturers on their behalf.

314.    In the past decade, however, OptumRx and other PBMs began to exert influence in their role as insurance-industry middlemen to dictate the success or failure of certain drugs and other medical products in the marketplace by offering to include or threatening to exclude certain medications from some or all of their formularies and, in the process, extracting hundreds of millions of dollars in the form of "discounts" or "rebate" payments from manufacturers in exchange.

315.    Negotiations between PBMs and manufacturers regarding those discounts, however, take place in complex, closed-door meetings, during which PBMs sell access to their formularies in exchange for large rebates or discounts, a substantial portion of which they pocket as pure profit.

316.    In order to facilitate the payment of 'rebates' to PBMs, and ensure their position on certain formularies without impacting their bottom line, the Manufacturer Defendants participate in a scheme with OptumRx, and other PBMs, to increase the list price of their glucagon instead of competing on cost with each other.

317.    This scheme to increase the profits of PBMs through artificially increasing the list price of glucagon benefits everyone in the industry's supply chain except Plaintiffs and the

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Classes, who are left paying fraudulently obtained, exorbitant, and ever-increasing prices for their glucagon.

318.    At all relevant times, the OptumRx RICO Defendants, along with insurance companies, pharmacies, wholesalers, and other individuals and entities, including unknown third parties, operated an ongoing association-in-fact enterprise. This association-in-fact enterprise was formed for the purpose of ensuring that one or more of the Manufacturer Defendants' glucagon products were included on OptumRx's formularies and increasing OptumRx's profits by fraudulently and artificially increasing the list price of those glucagon products at the expense of Plaintiffs and the Classes, and through which the OptumRx RICO Defendants conducted a pattern of racketeering activity under 18 U.S.C. § 1961(4).

319.    Alternatively, each of the OptumRx RICO Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the OptumRx RICO Defendants conducted a pattern of racketeering activity. The OptumRx RICO Defendants' separate legal statuses facilitated the fraudulent scheme and provided a hoped-for shield from liability for the OptumRx RICO Defendants and their co-conspirators.

320.    Alternatively, each of the Manufacturer Defendants and OptumRx constitute a two-entity associated-in-fact RICO enterprise within the meaning of 18 U.S.C. § 1961(4), through which the members of that enterprise conducted a pattern of racketeering activity described below. The enterprises, alleged in this and the previous paragraphs, are referred to collectively as the "OptumRx RICO Enterprise."

321.    At all relevant times, the OptumRx RICO Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in the OptumRx RICO Defendants' profit-making scheme.

322.    For all of the above alternatives, the association-in-fact OptumRx RICO Enterprise consisted of the following entities and individuals: (a) OptumRx, its subsidiaries,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 96

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

executives, employees, and agents; (b) Eli Lilly, its subsidiaries, executives, employees, and agents; and (c) Novo Nordisk, its subsidiaries, executives, employees, and agents.

323.    While each of the OptumRx RICO Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the OptumRx RICO Enterprise's affairs, at all relevant times, the OptumRx RICO Enterprise: (a) had an existence separate and distinct from each OptumRx RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the OptumRx RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the OptumRx RICO Defendants, along with other individuals and entities, including unknown third parties.

324.    The OptumRx RICO Defendants and their co-conspirators, through their illegal OptumRx RICO Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the OptumRx RICO Defendants and the other entities and individuals associated-in-fact with the OptumRx RICO Enterprise's activities by selling glucagon at an inflated and artificial price ("the OptumRx RICO Scheme").

325.    OptumRx orchestrated the OptumRx RICO Scheme, whereby OptumRx, as a PBM, leveraged its dominant position in the insurance market to demand that the Manufacturer Defendants pay substantial kickbacks in order to have their products included or be given priority on OptumRx's formularies.

326.    The Manufacturer Defendants facilitated the OptumRx RICO Scheme by agreeing to provide ever-larger "discounts" or "rebates" to OptumRx in order to gain or maintain access to its formularies and funding those discounts by artificially increasing the list price of their glucagon products.

327.    In furtherance of the scheme, the OptumRx RICO Defendants each affirmatively misrepresented or concealed the existence of the inflated and fraudulent nature of these list price increases as well as the existence, amount, and purpose of the discounts given to OptumRx to Plaintiffs, the Classes, consumers, health care payers, and the general public. Specifically, the

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

OptumRx RICO Defendants claimed that the rebates paid to OptumRx were for the purpose of lowering costs when, in fact, they were *quid pro quo* payments for formulary access that had the opposite effect for Plaintiffs and the members of the Classes.

**B.    The OptumRx RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues.**

328.    Each OptumRx RICO Defendant benefited financially from the OptumRx RICO Enterprise. OptumRx received direct rebate payments from the Manufacturer Defendants, a large portion of which it pocketed as pure profit, as well as other fees.

329.    In exchange, one or more of the Manufacturer Defendants' products received a favorable position on one, or a number of OptumRx's formularies, translating into higher sales and profits for each of these manufacturers. And because the Manufacturer Defendants financed the payment of rebates by inflating the list prices for their glucagon products, they maintained and, in some cases, increased their profit margins.

330.    At all relevant times, the OptumRx RICO Enterprise: (a) had an existence separate and distinct from each OptumRx RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the OptumRx RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the OptumRx RICO Defendants, along with other individuals and entities, including unknown third parties that operated an association-in-fact enterprise, which was formed for the purpose of ensuring that one or more of the Manufacturer Defendants' glucagon products were included on OptumRx's formularies and increasing OptumRx's profits by fraudulently and artificially increasing the list price of those glucagon products at the expense of Plaintiffs and the Classes, and paying rebates from the inflated list price.

331.    The OptumRx RICO Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the OptumRx RICO Defendants and the other entities and individuals

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

associated-in-fact with the Enterprise's activities through the illegal scheme to sell glucagon at an inflated and artificial price.

332.    The OptumRx RICO Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement, distribution, and sale of glucagon throughout the country, and the receipt of monies from the sale of the same.

333.    Within the OptumRx RICO Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The OptumRx RICO Enterprise used this common communication network for purposes of marketing, pricing, and engaging in negotiations regarding glucagon, its pricing, and placement or position on OptumRx's formularies and for furthering the OptumRx RICO Scheme.

334.    Each participant in the OptumRx RICO Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the OptumRx RICO Enterprise, the OptumRx RICO Defendants functioned as a continuing unit with the purpose of furthering the OptumRx RICO Scheme.

335.    The OptumRx RICO Defendants participated in the operation and management of the OptumRx RICO Enterprise by directing its affairs, as described herein. While the OptumRx RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

336.    The OptumRx RICO Defendants exerted substantial control over the OptumRx RICO Enterprise, and participated in the affairs of the enterprise by: (a) negotiating and/or offering discounts for glucagon; (b) misrepresenting and/or concealing the existence, amount, or purpose of the discounts negotiated for glucagon; (c) misrepresenting and/or concealing the

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

effect that the negotiated discounts had on the price of glucagon for the end payer; (d) negotiating and/or setting the list price for glucagon; (e) misrepresenting and/or concealing the true cost of glucagon; (f) publishing, reproducing, and/or distributing documents containing the list price for glucagon; (g) negotiating and/or offering preferred formulary placement for glucagon; (h) misrepresenting and/or concealing the true nature of the relationship and agreements between the members of the enterprise and its effect on the pricing of glucagon; (i) otherwise misrepresenting and/or concealing the inflated and fraudulent nature of the pricing of glucagon; (j) collecting discounts, revenues, and/or profits from the sale of glucagon; and (k) ensuring that the other OptumRx RICO Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

337.    Without each OptumRx RICO Defendant's willing participation, the OptumRx RICO Scheme and common course of conduct would not have been successful.

338.    The OptumRx RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiffs cannot fully know at present, because such information lies in the Defendants' and others' hands.

## C.    Predicate Acts: Mail and Wire Fraud.

339.    To carry out, or attempt to carry out, the scheme to defraud, the OptumRx RICO Defendants, each of whom is a person associated-in-fact with the OptumRx RICO Enterprise, did knowingly conduct or participate, directly or indirectly, in the affairs of the OptumRx RICO Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

340.    Specifically, the OptumRx RICO Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

341.    The multiple acts of racketeering activity which the OptumRx RICO Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by the OptumRx RICO Defendants' regular use of the facilities, services, distribution channels, and employees of the OptumRx RICO Enterprise. The OptumRx RICO Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailings and wires in interstate or foreign commerce.

342.    The OptumRx RICO Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

343.    In devising and executing the illegal scheme, the OptumRx RICO Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Plaintiffs and the Classes or to obtain money from Plaintiffs and the Classes by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the illegal scheme, the OptumRx RICO Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

344.    The OptumRx RICO Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1)) include, but are not limited to:

(a)    Mail Fraud: The OptumRx RICO Defendants violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to design, manufacture, market, price, and/or sell glucagon by means of false pretenses, misrepresentations, promises, and omissions.

(b)    Wire Fraud: The OptumRx RICO Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and omissions.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

345.    The OptumRx RICO Defendants' use of the mails and wires include, but are not limited to: (a) the transmission of marketing or other materials indicating, setting, or negotiating the price of glucagon; (b) the transmission of marketing or other materials indicating or advertising that any of the OptumRx RICO Defendants reduce the price of glucagon; (c) written, telephone, or electronic communications regarding and/or negotiating the price of glucagon; (d) written, telephone, or electronic communications regarding and/or negotiating discounts and/or rebates for glucagon; (e) written, telephone, or electronic communications regarding the existence, amount, or purpose of discounts and/or rebates for glucagon; (f) the transmission and/or distribution of glucagon through the mails; and (g) the use of the mails or wires to bill for or collect discounts, revenues, and/or profits from the sale of glucagon.

346.    The OptumRx RICO Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships, and other third-party entities in furtherance of the scheme.

347.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the cost of glucagon and fraudulently extract hundreds of millions of dollars of revenue from Plaintiffs and the Classes.

348.    Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records. However, Plaintiffs have described the types of predicate acts of mail and/or wire fraud. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

349.    The OptumRx RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), the OptumRx RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 102

individuals not named as defendants in this Complaint, have participated as co-conspirators with the OptumRx RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

350.    The OptumRx RICO Defendants aided and abetted others in the violations of the above laws.

351.    To achieve their common goals, the OptumRx RICO Defendants hid from Plaintiffs, the Classes, insurers, health plans, and the general public the true net price of glucagon, the inflated and fraudulent nature of the list price of glucagon, the relationship between the OptumRx RICO Defendants and their impact upon the price of glucagon, and the existence, amount, and purpose of rebates and discounts given for glucagon, and the portion of the rebates and discounts pocketed by OptumRx.

352.    The OptumRx RICO Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the OptumRx RICO Defendants and their co-conspirators had to agree to conceal their fraudulent negotiations and pricing tactics.

353.    The OptumRx RICO Defendants knew, and intended that, Plaintiffs and Class members would rely on the material misrepresentations and omissions made by them and incur increased costs as a result. Indeed, if Plaintiffs and the Classes did not make inflated payments for glucagon, the OptumRx RICO scheme could not succeed.

354.    As described herein, the OptumRx RICO Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining significant monies and revenues from Plaintiffs and the Classes based on their misrepresentations and omissions,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 103

while providing glucagon products that were worth significantly less than the purchase price paid. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

355.    During the OptumRx RICO Defendants' determination of discounts and/or rebates for glucagon, the true purpose of the discounts, the true cost of glucagon, and the inflated and fraudulent nature of their pricing was revealed to each of the OptumRx RICO Defendants. Nevertheless, the OptumRx RICO Defendants continued to disseminate misrepresentations regarding the true cost of glucagon as well as the existence, amount, and purpose of the discounts on those products, in furtherance of the scheme.

356.    By reason of, and as a result of the conduct of the OptumRx RICO Defendants, and in particular, their pattern of racketeering activity, Plaintiffs and the Classes have been injured in their business and/or property in multiple ways, including but not limited to paying excessive and inflated prices for glucagon.

357.    The OptumRx RICO Defendants' violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiffs and the Classes who are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT FOUR — VIOLATION OF §§ 1 AND 3 OF THE SHERMAN ACT, 15 U.S.C. §§ 1, 3, *ET SEQ.*

(By Plaintiffs on Behalf of All Members of the Classes, Against All Defendants)

358.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

359.    Section 1 of the Sherman Act, 15 U.S.C. § 1, provides that: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce" is declared to be illegal. *See also id.* § 3.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 104

360.    Beginning in or about 2010, at a precise date unknown to Plaintiffs and continuing at least through May 2017, within this District and elsewhere, the PBM Defendants together with Manufacturer Defendants conspired and combined to illegally and secretly restrict competition and/or restrain trade and commerce in the prescription glucagon market and raise the price of the prescription glucagon products described herein to inflated and supra-competitive levels.

361.    Specifically, Defendants conspired to artificially raise list prices for glucagon during the Class Period, benefitting from a PBM-controlled captive market. These list price increases, which are detailed more fully above, were not the result of independent decision making by the Manufacturer Defendants engaged in pursuing their independent economic self-interest or free and fair competition, but rather a joint effort with the PBM Defendants to increase PBM profit and secure manufacturer sales.

362.    Defendants and co-conspirators engaged in a continuing agreement, understanding, or concerted action whose anticompetitive goal was to artificially raise the list prices for glucagon.

363.    The effect of this price-fixing conspiracy was to allow the Manufacturer Defendants to pay substantial discounts and rebates to the PBM Defendants to ensure that the prescription glucagon products produced by the Manufacturer Defendants would be included on the PBM Defendants' formularies, allowing the Manufacturer Defendants to profit from the overarching scheme.

364.    Plaintiffs, the Classes and health plans paid inflated, supra-competitive  list prices for prescription glucagon that bear no relationship to its cost, or to the price that would be charged absent the collusive conduct alleged herein. Instead, list prices were raised to pay kickbacks, rebates, and/or discounts to the PBM Defendants, so as to ensure that the Manufacturer Defendants' glucagon products would be included on the PBM Defendants' formularies or receive privileged placement on those formularies. Plaintiffs, the Classes, and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

health plans were forced to pay those higher prices in order to subsidize the Manufacturer Defendants' payments or credits to the PBM Defendants.

365.    As such, these price increases, which are detailed more fully above, were not the result of independent decision making by manufacturers engaged in free and fair competition. Instead, they resulted in the Manufacturer Defendants raising their revenues in order to pay PBMs the required kickbacks. Rather than demonstrate free and fair competition, these price increases evidence only an intention on the part of the Manufacturer Defendants to enter into an overarching illegal price fixing conspiracy orchestrated by the PBM Defendants through individual parallel agreements between each PBM Defendant and each Manufacturer Defendant, each of which entered into a virtually identical arrangement with one another providing for kickbacks, rebates, and/or discounts to the PBM Defendants in exchange for preferential placement on the PBM Defendants' formularies and lock-step price increases in prescription glucagon.

366.    Defendants' arrangement, as more fully described herein, decreased competition between glucagon manufacturers, decreased competition between PBMs, and increased the price of glucagon to supra-competitive levels.

A.    **Description of Defendants' Price Fixing and Inflationary Arrangement.**

367.    Since at least 2010, the PBM Defendants each, separately, entered into contracts, agreements, and/or arrangements with the Manufacturer Defendants in which the PBM Defendants agreed to include the prescription glucagon products produced by the Manufacturer Defendants on one or more of the PBM Defendants' prescription drug formularies. The functional result of these arrangements was to guarantee that the glucagon products were purchased by the insurers and health plans which had prescription drug benefits administered by the PBM Defendants, as well as their participants.

368.    Because the profitability of a drug is often determined by whether or not that drug is included on the PBM Defendants' formularies, the PBM Defendants exert substantial control

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

over their negotiations with the Manufacturer Defendants and are able to extract significant

financial concessions in exchange for a privileged placement on a formulary.

369.    Instead of negotiating fairly and openly with one another, however, the PBM

Defendants and Manufacturer Defendants subsidize their arrangement by taxing a third party,

Plaintiffs and the Classes, by increasing the list price of the glucagon products described herein

to supra-competitive levels in order to pay kickbacks, rebates and/or discounts to the PBM

Defendants.

370.    Each of these arrangements, although apparently negotiated individually and

separately, necessitated a response by both Manufacturer Defendants as evidenced by the fact

that each one increased the price of its prescription glucagon products at around the same dates

and by the same amounts, as detailed above.

371.    However, as indicated above, this was not done out of independent economic self-

interest. Rather, the Manufacturer Defendants raised at least enough revenue through the price

increases to pay PBMs the required kickbacks. Indeed, the Manufacturer Defendants have

publicly stated that much of the list price exists only to pay kickbacks, rebates, and/or discounts

to the PBM Defendants, not only to compensate drug manufacturers. Further, while

Manufacturer Defendants did not receive the full additional compensation that resulted from the

price increases, they benefitted from the PBM Defendants' placement of their glucagon products

on their respective formularies, in exchange for the kickbacks, rebates, and/or discounts

generated by the price increases. The Manufacturer Defendants further benefitted from additional

and higher-priced sales to both insured and uninsured consumers.

372.    As part of the price-fixing conspiracy, each Manufacturer Defendant publishes

and sets list prices for its prescription glucagon products that have changed over the Class Period

not because of any change in cost or demand, but rather, as described by the Manufacturer

Defendants, to reflect the need to pay kickbacks, rebates, and/or discounts to the PBM

Defendants.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 107

373.    That artificially-inflated list price is then passed on by the PBM Defendants to their clients, Plaintiffs, the Classes, health plans, and insurance providers, some of whom purchase glucagon from PBM-owned online (mail order) or brick-and-mortar pharmacies. However, the PBM Defendants do not disclose and, in fact, actively conceal that a substantial portion of that inflated price was not paid to the Manufacturer Defendants as a result of any cost associated with the production of the glucagon products themselves, but is instead paid as a kickback to the PBM Defendants in the form of rebates and/or discounts.

374.    The PBM Defendants, in turn, facilitate the conspiracy by failing to disclose to their clients, Plaintiffs, the Classes, or the public the existence, amount, or purpose of those discounts and/or rebates in order to conceal and further the anti-competitive and illegal scheme. Instead, they merely present and republish the inflated list price as the manufacturer's price and/or the actual price of glucagon. It is, further, part of the conspiracy that each of the PBM Defendants and Manufacturer Defendants fraudulently overstated the price of the prescription glucagon products described herein in each invoice and publication of the drug's list price.

375.    The price-fixing conspiracy required that Defendants engaged in a number of material misrepresentations and omissions regarding their arrangement including but not limited to: (1) making direct statements regarding the true price of the glucagon products described herein or causing reasonable inferences about the prices that had the tendency to mislead consumers, including but not limited publishing, setting, or distributing the list price of the glucagon products described herein; (2) engaging in advertising concerning the role that Defendants played in the price paid for the glucagon products described herein, including but not limited to marketing material averring that Defendants decrease the price of prescription drugs for consumers; (3) failing to make clear the inflated and/or fraudulent nature of the list price(s) set and/or charged by Defendants for the glucagon products described herein; and (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts and/or rebates offered and/or negotiated by Defendants for those

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

products. These material misrepresentations and omissions were made to conceal the true nature of Defendants' price-fixing arrangement.

**B.    Defendants' Violations Restrained Competition and Damaged Plaintiffs and the Classes.**

376.    The aforementioned price fixing and inflationary conspiracy has had the following effect, amongst others:

A.    The purchasers of prescription glucagon have been deprived of free and open competition in the purchasing of prescription glucagon; and

B.    Competition among Defendants has been restrained and prices of prescription glucagon have been raised to artificial and non-competitive levels.

377.    During and throughout the period of the aforementioned price-fixing conspiracy, Plaintiffs and members of the Class purchased substantial quantities of prescription glucagon pursuant to the terms of the Defendants' arrangement at the artificially inflated prices set and negotiated by Defendants in order to subsidize kickbacks, rebates, and/or discounts paid to the PBM Defendants and maintain the Manufacturer Defendants' sales.

378.    The activities of Defendants, as charged herein, were within the flow of, and have substantially affected, interstate commerce.

379.    At all times relevant to this Complaint, Defendants advertised, manufactured, distributed, sold, reimbursed pharmacies for, contracted payments for, set list prices on, and/or paid or received payments for glucagon in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the state in which the Defendants are located.

380.    In addition, substantial quantities of equipment and supplies necessary to the production and distribution of Defendants' glucagon products, as well as payments and rebates for glucagon sold by the Drug Manufacturer Defendants, traveled in interstate trade and commerce.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

381.    Assuming, arguendo, that a relevant market needs to be defined, the relevant product market is the market for prescription glucagon. The relevant geographic market is the United States and its territories.

382.    The conduct alleged herein resulted in Plaintiffs and members of the Class being charged supra-competitive prices with no offsetting pro-competitive benefits. Any potential pro-competitive benefits could have been achieved without the same harm to competition.

383.    Courts recognize different standards for evaluating Sherman Act violations. *Per se* violations include horizontal price fixing and horizontal market division. The "rule of reason" standard considers, under the totality of the circumstances, whether a violation has occurred. And under the "quick-look" standard, a violation has been committed if someone with even a rudimentary understanding of economics would conclude that the activity would have an anticompetitive effect on customers and the market.

384.    Defendants' conduct constitutes *per se* anticompetitive activity, but their acts are anticompetitive under the rule of reason and quick-look standards as well.

385.    As such, and as a result of the aforementioned price-fixing conspiracy, Plaintiffs and the Classes have sustained losses and damages to their property in an amount to be determined at trial and they seek injunctive relief restraining Defendants' anti-competitive behavior in violation of the Sherman Act, as described further in their prayer for relief.

386.    Plaintiffs and Class members who purchased glucagon from a PBM-owned pharmacy also seek damages and such other relief as is permitted by Section 4 of the Clayton Act, 15.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT FIVE — VIOLATIONS OF STATE ANTITRUST AND RESTRAINT OF TRADE LAWS**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs who purchased Glucagon in "Indirect Purchaser States,"[166] Against All Defendants)

387.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

388.     Defendants' anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the following state antitrust statutes.

389.     This claim is brought by Plaintiffs on behalf of individuals who are members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class, and the Uninsured Class, who purchased glucagon in an Indirect Purchaser State (collectively, "State Antitrust Damages Class").

390.     Alabama: Defendants' anticompetitive conduct has restrained trade in violation of Ala. Code §§ 6-5-60, *et seq*. During the Class Period, Defendants' illegal conduct substantially affected Alabama commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all forms of relief available under Ala. Code §§ 6-5-60, *et seq*.

391.     Arizona: Defendants' anticompetitive conduct has restrained trade in violation of Arizona Revised Statutes §§ 44-1401, *et seq*. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq*.

---

[166] The "Indirect Purchaser States" consist of Alabama, Arizona, Arkansas, California, District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 111

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

392.    Arkansas: Defendants' anticompetitive conduct has restrained trade in violation of Ark. Code. Ann.§§ 4-88-107(a)(10), *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all forms of relief available under Ark. Code. Ann.§ 4-99-113(f).

393.    California: During the Class Period, Defendants engaged in anticompetitive conduct in unreasonable restraint of trade and commerce and in violation of California Business and Professions Code sections 16700, *et seq.* Glucagon is a commodity. As a direct result of Defendants' unlawful conduct, Plaintiffs and the Class were overcharged when they purchased glucagon. Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all forms of relief available under of California Business and Professions Code sections 16700, *et seq.*

394.    District of Columbia: Defendants' anticompetitive conduct has restrained trade in violation of District of Columbia Code Annotated §§ 28-4501, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

395.    Florida: Defendants' anticompetitive conduct has restrained trade in violation of Fla. Stat. §§ 542.15, *et seq.* and 501.201 *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Florida commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all forms of relief available under Fla. Stat. §§ 542.15, *et seq.* and 501.201 *et seq.*

396.    Illinois: Defendants' anticompetitive conduct has restrained trade in violation of the Illinois Antitrust Act (740 Illinois Compiled Statutes 10/1, *et seq.*). During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all forms of relief available under the Illinois Antitrust Act (740 Illinois Compiled Statutes 10/1, *et seq.*).

397.    Iowa: Defendants' anticompetitive conduct has restrained trade in violation of Iowa Code §§ 553.1, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all forms of relief available under Iowa Code §§ 553, *et seq.*

398.    Kansas: Defendants' anticompetitive conduct has restrained trade in violation of Kansas Statutes Annotated, §§ 50-101, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

399.    Maine: Defendants' anticompetitive conduct has restrained trade in violation of Maine Revised Statutes (Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*). During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 113

Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

400.    Michigan: Defendants' anticompetitive conduct has restrained trade in violation of Michigan Compiled Laws Annotated §§ 445.771, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

401.    Minnesota: Defendants' anticompetitive conduct has restrained trade in violation of Minnesota Annotated Statutes §§ 325D.49, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

402.    Mississippi: Defendants' anticompetitive conduct has restrained trade in violation of Mississippi Code Annotated §§ 75-21-1, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

403.    Nebraska: Defendants' anticompetitive conduct has restrained trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* During the Class Period, Defendants' illegal

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

conduct substantially affected Nebraska commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

404.    Nevada: Defendants' anticompetitive conduct has restrained trade in violation of Nevada Revised Statutes Annotated §§ 598A.010, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

405.    New Hampshire: Defendants' anticompetitive conduct has restrained trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

406.    New Mexico: Defendants' anticompetitive conduct has restrained trade in violation of New Mexico Statutes Annotated §§ 57-1-1, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 115

407.    New York: Defendants' anticompetitive conduct has restrained trade in violation of New York General Business Laws §§ 340, *et seq*. During the Class Period, Defendants' illegal conduct substantially affected New York commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

408.    North Carolina: Defendants' anticompetitive conduct has restrained trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*. During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, et. seq.

409.    North Dakota: Defendants' anticompetitive conduct has restrained trade in violation of North Dakota Century Code §§ 51-08.1-01, *et seq*. During the Class Period, Defendants' illegal conduct substantially affected North Dakota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

410.    Oregon: Defendants' anticompetitive conduct has restrained trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. During the Class Period, Defendants' illegal conduct substantially affected Oregon commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

411.    South Dakota: Defendants' anticompetitive conduct has restrained trade in violation of South Dakota Codified Laws §§ 37-1-3.1, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected South Dakota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

412.    Tennessee: Defendants' anticompetitive conduct has restrained trade in violation of Tennessee Code Annotated §§ 47-25-101, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

413.    Utah: Defendants' anticompetitive conduct has restrained trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Utah commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

414.    Vermont: Defendants' anticompetitive conduct has restrained trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Vermont commerce. As a direct and proximate result of Defendants'

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

415.    West Virginia: Defendants' anticompetitive conduct has restrained trade in violation of West Virginia Code §§ 47-18-1, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected West Virginia commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq.*

416.    Wisconsin: Defendants' anticompetitive conduct has restrained trade in violation of Wisconsin Statutes §§ 133.01, *et seq.* During the Class Period, Defendants' illegal conduct substantially affected Wisconsin commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the State Antitrust Damages Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and members of the State Antitrust Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

417.    Plaintiffs and members of the State Antitrust Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful conduct. Plaintiffs and members of the State Antitrust Damages Class have paid more for glucagon than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 118

418.     In addition, Defendants have profited significantly from the aforesaid monopolization. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of Plaintiffs and members of the State Antitrust Damages Class.

419.     Accordingly, Plaintiffs and members of the State Antitrust Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, and all available injunctive relief, to the extent permitted by the above state laws.

### COUNT SIX — PURSUANT TO ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR VIOLATIONS OF ERISA § 406(b), 29 U.S.C. § 1106(b)

(By the ERISA Plaintiffs on Behalf of all Members of the ERISA Class,
Against Defendants CVS Health, Express Scripts, and OptumRx)

420.     The ERISA Plaintiffs incorporate by reference all paragraphs as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

421.     ERISA § 406(b), 29 U.S.C. § 1106(b), provides that a fiduciary shall not (1) deal with plan assets in its own interest or for its own account, (2) act in any transaction involving the plan on behalf of a party whose interests are adverse to participants or beneficiaries, or (3) receive any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

422.     As alleged above, the PBM Defendants are fiduciaries to Plaintiffs' ERISA Plans and those of the ERISA Class members. They violated all three subsections of ERISA § 406(b).

423.     As alleged above, both (i) payments from participants and beneficiaries and (ii) the contracts underpinning the ERISA Class members' ERISA Plans are plan assets under ERISA.

424.     First, by setting their own compensation from glucagon prescription payments from participants and beneficiaries, as well as from ERISA Plan contributions, collecting their own compensation from those same sources, and managing pharmacy benefits in their own

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 119

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

interest or for their own account, the PBM Defendants violated ERISA § 406(b)(1). Specifically, in setting the amount of and taking undisclosed kickbacks, often in the form of "rebates" or "discounts" (for the purposes of this and the following ERISA counts, "PBM Kickbacks"), the PBM Defendants dealt with Plaintiffs' ERISA Plans and with the ERISA Plans' plan assets in their own interest and received plan assets and consideration for their personal accounts. Further, by inducing the Manufacturer Defendants to inflate list prices for glucagon to accommodate the PBM Defendants' demands for kickbacks, the PBM Defendants dealt with Plaintiffs' ERISA Plans and the plan assets of those ERISA Plans in their own self-interest, rather than in the interest of ERISA Plan participants and beneficiaries.

425.    Second, by acting on behalf of the Manufacturer Defendants, who also stood to profit from inflated glucagon prices at the expense of the ERISA Plaintiffs and members of the ERISA Class—and thus had interests adverse to the affected participants and beneficiaries—the PBM Defendants engaged in conflicted transactions each time they facilitated, required, or allowed glucagon price inflation and/or the payment of PBM Kickbacks, in violation of ERISA § 406(b)(2). Under this subsection of ERISA § 406(b), plan assets need not be involved—dealing with an ERISA Plan is enough.

426.    Third, the PBM Defendants received consideration for their own personal accounts from other parties—including the Manufacturer Defendants, third parties, and the members of the ERISA Class—that were dealing with ERISA Plans in connection with transactions involving the assets of ERISA Plans.

427.    The PBM Defendants' prohibited transactions described herein not only profited the PBM Defendants, but also injured the ERISA Plaintiffs and members of the ERISA Class, who have suffered losses through the PBM Kickbacks that the PBM Defendants took through these prohibited transactions.

428.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." The ERISA Plaintiffs' § 502(a)(3) claims are on behalf of all participants and beneficiaries of ERISA Plans whose pharmacy benefits are managed and administered by the PBM Defendants, regardless of the type of ERISA Plan it is and whether or not it is underwritten by an insurance contract with a health insurer, to recover the portions of their copayments, coinsurance, and deductible amounts paid for glucagon at an inflated price due to the PBM Kickbacks described herein.

429.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to the ERISA Plaintiffs and the ERISA Class, including but not limited to:

    a.  an accounting;

    b.  a surcharge;

    c.  correction of the transactions;

    d.  disgorgement of profits;

    e.  an equitable lien;

    f.  a constructive trust;

    g.  restitution;

    h.  full disclosure of the foregoing acts and practices;

    i.  an injunction against further violations; and/or

    j.  any other remedy the Court deems proper.

### COUNT SEVEN — PURSUANT TO ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR VIOLATIONS OF ERISA § 404, 29 U.S.C. § 1104

(By the ERISA Plaintiffs on Behalf of all Members of the ERISA Class, Against Defendants CVS Health, Express Scripts, and OptumRx)

430.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 121

431.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

432.    In leveraging their access to millions of dollars in glucagon purchases through ERISA Plans to which they had access and over whose plan assets they had or exercised control for their own benefit or the benefit of third parties, and to the detriment of participants and beneficiaries, the PBM Defendants have breached their fiduciary duties of loyalty and prudence.

433.    Further, in failing to put the interests of participants and beneficiaries first in managing and administering pharmacy benefits, the PBM Defendants have breached their fiduciary duty of loyalty. And in acting in their own self-interest and in the interest of their own corporate affiliates, the PBM Defendants have violated the "exclusive purpose" standard.

434.    The duty to disclose is part of the duty of loyalty. In concealing and failing to disclose to the ERISA Class the fact or amount of the PBM Kickbacks, the inflation of list prices, or the net price of glucagon for which they were being charged, and in concealing and failing to disclose to the ERISA Plaintiffs and the ERISA Class that plan participants were paying inflated amounts for copayments and coinsurance, as well as deductible payments, the PBM Defendants breached this duty. Further, both omissions and misrepresentations are actionable under ERISA's disclosure obligations, and the type that occurred here are not subject to individualized reliance requirements.

435.    Finally, it is never prudent to require or allow excessive compensation in the context of an ERISA-covered plan. In so doing, Defendants violated their duty of prudence.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

436.    The ERISA Plaintiffs and the ERISA Class have been damaged and suffered losses in the amount of the PBM Kickbacks the PBM Defendants took.

437.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

438.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to the ERISA Plaintiffs and the ERISA Class, including but not limited to:

    a.    an accounting;

    b.    a surcharge;

    c.    correction of the transactions;

    d.    disgorgement of profits;

    e.    an equitable lien;

    f.    a constructive trust;

    g.    restitution;

    h.    full disclosure of the foregoing acts and practices;

    i.    an injunction against further violations; and/or

    j.    any other remedy the Court deems proper.

**COUNT EIGHT — PURSUANT TO ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR VIOLATIONS OF ERISA § 702, 29 U.S.C. § 1182**

(By the ERISA Plaintiffs on Behalf of all Members of the ERISA Class, Against CVS Health, Express Scripts, and OptumRx)

439.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

440.    ERISA § 702, 29 U.S.C. § 1182, states in pertinent part:
Prohibiting discrimination against individual participants and beneficiaries based on health status.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 123

(a) In eligibility to enroll.

(1) In general. Subject to paragraph (2), a group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on any of the following health status-related factors in relation to the individual or a dependent of the individual:

   a.   Health status.

   b.   Medical condition (including both physical and mental illnesses).

   c.   Claims experience.

   d.   Receipt of health care.

   e.   Medical history.

   f.   Genetic information.

   g.   Evidence of insurability (including conditions arising out of acts of domestic

        violence).

   h.   Disability.

(2) No application to benefits or exclusions. To the extent consistent with section 701, paragraph (1) shall not be construed—

            (A) to require a group health plan, or group health insurance coverage, to provide particular benefits other than those provided under the terms of such plan or coverage, or

            (B) to prevent such a plan or coverage from establishing limitations or restrictions on the amount, level, extent, or nature of the benefits or coverage for similarly situated individuals enrolled in the plan or coverage.

(3) Construction. For purposes of paragraph (1), rules for eligibility to enroll under a plan include rules defining any applicable waiting periods for such enrollment.

(b) In premium contributions.

(1) In general. A group health plan, and a health insurance issuer offering health insurance coverage in connection with a group health plan, may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 124

any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual.

441.     In setting the price for glucagon and taking excessive and undisclosed rebate payments, Defendants have required plan participants and beneficiaries who have a protected disability condition and/or medical condition that requires glucagon subject to Defendants' artificially inflated prices and undisclosed and excessive PBM Kickbacks to pay greater premiums and contributions for their health plan benefits than those participants and beneficiaries who do not have a protected disability or who do not need prescription glucagon subject to Defendants' artificially inflated prices and undisclosed and excessive rebate payments.

442.     Under Defendants' scheme, the ERISA Plaintiffs and members of the ERISA Class who needed prescription glucagon subject to Defendants' artificially inflated prices and undisclosed and excessive PBM Kickbacks were required to pay hidden additional and/or higher premiums in order to be able to use their benefits as enrollees, thus making the artificially inflated prices and payment of PBM Kickbacks a condition of continued enrollment under their ERISA Plans. Without paying inflated copayments, coinsurance, or deductible payments, above and beyond the required participant contributions set forth in their plans, the ERISA Plaintiffs and members of the ERISA Class could not obtain covered prescription medications under the ERISA Plans, the effect of which is that they would not be enrolled in the Plans.

443.     The ERISA Plaintiffs and the ERISA Class have been damaged and suffered losses in the amount of the PBM Kickback the PBM Defendants took, which were financed by the inflated costs paid by the ERISA Plaintiffs and the ERISA Class for prescription glucagon.

444.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

445.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to the ERISA Plaintiffs and the ERISA Class, including but not limited to:

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

a.   an accounting;

b.   surcharge;

c.   correction of the transactions;

d.   disgorgement of profits;

e.   an equitable lien;

f.   a constructive trust;

g.   restitution;

h.   full disclosure of the foregoing acts and practices;

i.   an injunction against further violations; and/or

j.   any other remedy the Court deems proper.

## COUNT NINE — PURSUANT TO ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR KNOWING PARTICIPATION IN VIOLATIONS OF ERISA

(By the ERISA Plaintiffs on Behalf of all Members of the ERISA Class,
Against Defendants Eli Lilly and Novo Nordisk)

446.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

447.    As noted above, fiduciary status is not required for liability under ERISA where non-fiduciaries participate in and/or profit from a fiduciary's breach or prohibited transaction. Accordingly, the ERISA Plaintiffs and the ERISA Class make claims against the Manufacturer Defendants even though they do not have fiduciary status with respect to the ERISA Plans. As non-fiduciaries, they nevertheless must restore unjust profits or fees and are subject to other appropriate equitable relief, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and pursuant to *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000).

448.    The Manufacturer Defendants had actual or constructive knowledge of and participated in and/or profited from the prohibited transactions and fiduciary breaches alleged above by the PBM Defendants, and these non-fiduciaries are liable to disgorge ill-gotten gains and/or plan assets and to provide other appropriate equitable relief, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and *Harris Trust*.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

449. As a direct and proximate result of the fiduciary breaches and prohibited transactions alleged above and the participation therein of the Manufacturer Defendants, the members of the ERISA Class directly or indirectly lost millions of dollars and/or plan assets (both participant pharmacy payments and Plan contracts) were improperly used to generate profits for the PBM Defendants and the Manufacturer Defendants. The PBM Defendants collected and/or paid these amounts to themselves, their affiliates, or third parties from plan assets or generated them through improper leveraging of plan assets and/or their relationships with and access to ERISA Plans. The PBM Defendants' facilitation of profits to the Manufacturer Defendants due to inflated prices for glucagon harmed the ERISA Class, and the Manufacturer Defendants are liable to restore their ill-gotten gains to the ERISA Plaintiffs.

450. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to the ERISA Plaintiffs and the ERISA Class, including but not limited to:

    a.  an accounting;

    b.  a surcharge;

    c.  correction of the transactions;

    d.  disgorgement of profits;

    e.  an equitable lien;

    f.  a constructive trust;

    g.  restitution;

    h.  full disclosure of the foregoing acts and practices;

    i.  an injunction against further violations; and/or

    j.  any other remedy the Court deems proper.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

**COUNT TEN — VIOLATIONS OF ALABAMA DECEPTIVE TRADE PRACTICES ACT (Ala. Code § 8-19-1, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

3

4        451.     Plaintiffs incorporate by reference each preceding paragraph as though fully set

5    forth herein.

6        452.     Plaintiffs bring this action on themselves and all members of the Non-ERISA

7    Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have

8    been residents of the State of Alabama during the relevant time period (the "Alabama members

9    of the Classes") against all Defendants (for the purposes of this section "Defendants").

10       453.     Plaintiffs and the Alabama members of the Classes are "consumers" within the

11   meaning of Ala. Code § 8-19-3(2).

12       454.     Plaintiffs, the Alabama members of the Classes, and Defendants are "persons"

13   within the meaning of Ala. Code § 8-19-3(5).

14       455.     The glucagon products described herein are "goods" within the meaning of Ala.

15   Code § 8-19-3(3).

16       456.     The Defendants are and were engaged in "trade or commerce" within the meaning

17   of Ala. Code § 8-19-3(8) during all relevant periods by, at a minimum, advertising, offering for

18   sale, and selling the glucagon products described herein in Alabama, to Alabama members of the

19   Classes, and throughout the United States.

20       457.     The Alabama Deceptive Trade Practices Act ("Alabama DTPA"), Ala. Code § 8-

21   19-1, *et seq.*,  declares several specific actions to be unlawful, including: "(2) Causing confusion

22   or misunderstanding as to the source sponsorship, approval, or certification of goods or

23   services," "(5) Representing that goods or services have sponsorship, approval, characteristics,

24   ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or

25   services are of a particular standard, quality, or grade, or that goods are of a particular style or

26   model, if they are of another," "(11) Making a false or misleading statement of fact concerning

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 128

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the reasons for, existence of, or amounts of, price reductions," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

458.    As detailed above, the Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Alabama DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

459.    The Defendants owed and continue to owe Plaintiffs and the Alabama members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

460.    The Defendants knew or should have known that their conduct was in violation of the Alabama DTPA

461.    Despite knowing the true nature of their products and practices for years, the Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Alabama members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Alabama DTPA.

462.    The Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Alabama members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Alabama members of the Classes.

463.    Plaintiffs and other Alabama members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products described herein, as set forth above. These material misrepresentations by the Defendants proximately caused Plaintiffs and the Alabama members of the Classes to overpay for the glucagon products described herein. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against the Defendants under the Alabama DTPA did not begin to accrue until the filing of this lawsuit.  The Defendants either concealed or failed to reveal the facts until this filing.

464.    Plaintiffs and the Alabama members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of the Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

465.    The Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, the Defendants' unlawful acts and practices complained of herein affect the public interest.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 130

466.    Pursuant to Ala. Code § 8-19-10, Plaintiffs and the Alabama members of the Classes seek monetary relief against the Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama member of the Classes.

467.    Plaintiffs also seek an order enjoining the Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Ala. Code § 8-19-1, *et seq.*

468.    On or about the date of the filing of this action, certain Plaintiffs sent a letter complying with Ala. Code § 8-19-10(e).  If the Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Alabama members of the Classes.

## COUNT ELEVEN — VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT. § 45.50.471, *ET SEQ.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

469.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

470.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of the State of Alaska during the relevant period ("the Alaska members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

471.    The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce…." Under the Alaska CPA, unfair competition and unfair or deceptive acts or practices include, but are not limited to, (10) "making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions," (11) "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 131

which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services," and (12) "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471.

472.    Defendants violated the Alaska CPA, at a minimum by: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

473.    The foregoing violations caused harm to Plaintiffs and the members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

474.    Plaintiffs seek to recover against each Defendant the amount of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each plaintiff, whichever is greater. Alaska Stat. § 45.50.531

475.    Plaintiffs additionally request the Court to enjoin each Defendant's unfair, unlawful, and/or deceptive practices. Alaska Stat. § 45.50.535(b)(1).

476.    Also, Plaintiffs seek attorneys' fees and any other relief available under the Alaska CPA.

477.    Certain Plaintiffs will send letters complying with Alaska Stat. § 45.50.535(b)(1) to Defendants on or about the date of the filing of this Complaint. This Count is a placeholder only and will be formally asserted thirty (30) days after demand letters are sent if Defendants fail to remedy their unlawful conduct.

## COUNT TWELVE — VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### (Ariz. Rev. Stat. § 44-1521, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

478.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

479.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of the State of Arizona during the relevant period ("the Arizona members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

480.    The Defendants, Plaintiffs, and the Arizona members of the Classes are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

481.    The glucagon products described herein are "goods" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

482.    The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

483.    As detailed above, the Defendants employed deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in violation of the Arizona CFA by at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

484.    The Defendants owed and continue to owe Plaintiffs and the Arizona members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

485.    The Defendants knew or should have known that their conduct was in violation of the Arizona CFA.

486.    Despite knowing the true nature of their products and practices for years, the Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Arizona members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Arizona CFA.

487.    The Defendants' violations present a continuing risk to Plaintiffs and the Arizona members of the Classes as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, the Defendants' unlawful acts and practices complained of herein affect the public interest.

488.    The Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Arizona members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Arizona members of the Classes.

489.    Plaintiffs and Arizona members of the Classes relied upon the Defendants' material misrepresentations and omissions regarding the glucagon products described herein, as set forth above. These material misrepresentations by the Defendants proximately caused Plaintiffs and the Arizona members of the Classes to overpay for glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Arizona CFA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 135

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

490.    Plaintiffs and the Arizona members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

491.    Plaintiffs and the Arizona members of the Classes seek monetary relief against Defendants in an amount to be determined at trial.  Plaintiffs and the Arizona members of the Classes also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind.

492.    Plaintiffs and the Arizona members of the Classes also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT THIRTEEN — VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICE ACT (Ark. Code Ann. § 4-88-101, *et seq.*)
### (By the Non-ERISA Employee/Exchange Plaintiffs and the Uninsured Plaintiffs, Against All Defendants)

493.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

494.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of Arkansas during the relevant time period (the "Arkansas members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

495.    Plaintiffs, the members of the Arkansas Classes, and Defendants are "persons" within the meaning of Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

496.    The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "(1) [k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations,

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model," and "(10) [e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(1),(10).

497.    The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

498.    In the course of their business, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Arkansas DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 137

or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

499.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

500.    Defendants owed and continue to owe Plaintiffs and the Arkansas members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

501.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Arkansas members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Arkansas members of the Classes.

502.    Plaintiffs and other Arkansas members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Arkansas members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the glucagon products and their pricing as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Arkansas DTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

503.    Defendants knew or should have known that their conduct was in violation of the Arkansas DTPA.

504.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and other Arkansas members, and continued to engage in unfair and deceptive practices in violation of the Arkansas DTPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

505.    Plaintiffs and the Arkansas members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

506.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

507.    Plaintiffs and the Arkansas members of the Classes seek monetary relief against Defendants in an amount to be determined at trial.  Plaintiffs and the Arkansas members of the Classes also seek punitive damages because Defendants acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred.

508.    Plaintiffs and the Arkansas members of the Classes also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT FOURTEEN — VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code §§ 1750, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

509.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

510.    Plaintiffs bring this Count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of California at any relevant time ("California members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

511.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 139

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

512.    Defendants' glucagon products are "goods" as defined in Cal. Civ. Code § 1761(a).

513.    Plaintiffs and the other California members of the Classes are "consumers" as defined in Cal. Civ. Code § 1761(d).

514.    Plaintiffs, the other California members of the Classes, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

515.    Defendants' conduct violates at least the following enumerated CLRA provisions:

    a.    Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

    b.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another; and

    c.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised

    d.    Cal. Civ. Code § 1770(a)(13): Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

516.    As alleged throughout this Complaint, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the CLRA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

517.    Defendants owed and continue to owe Plaintiffs and the California members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

518.    Defendants knew or should have known that their conduct was in violation of the CLRA.

519.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the California members of the Classes, and continued to engage in unfair and deceptive practices in violation of the CLRA.

520.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the California members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the California members of the Classes.

521.    Plaintiffs and other California members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 141

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

These material misrepresentations by Defendants proximately caused Plaintiffs and the California members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the CLRA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

522.    Plaintiffs and the California members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

523.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

524.    Under Cal. Civ. Code § 1780(a), Plaintiffs and the California members of the Classes seek monetary relief against Defendants in an amount to be determined at trial.

525.    Under Cal. Civ. Code § 1780(b), Plaintiffs seek an additional award against Defendants of up to $5,000 for each California member of the Classes who qualifies as a "senior citizen" or "disabled person" under the CLRA.   Defendants knew or should have known that their conduct was directed to one or more California members of the Classes who are senior citizens or disabled persons.   Defendants' conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.   One or more California members of the Classes who are senior citizens or disabled persons are substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

suffered substantial physical, emotional, or economic damage resulting from Defendants' conduct.

526.    Plaintiffs also seek punitive damages against Defendants because they carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the California members of the Classes to potential cruel and unjust hardship as a result.   Defendants intentionally and willfully deceived Plaintiffs on life-or-death matters, and concealed material facts that only Defendants knew.  Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under Cal. Civ. Code § 3294.

527.    Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

528.    Certain Plaintiffs have sent a letter complying with Cal. Civ. Code § 1780(b) on or about the date of the filing of this Complaint.

## COUNT FIFTEEN — VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

529.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

530.    Plaintiffs bring this Count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of California at any relevant time ("California members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

531.    California Bus. & Prof. Code § 17500 provides:

It is unlawful for any corporation...with intent directly or indirectly to dispose of
real or personal property...to induce the public to enter into any obligation relating
thereto, to make or disseminate or cause to be made or disseminated from this

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 143

state before the public in any state, in any newspaper or other publication, or any advertising device, ... or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

532.   As alleged throughout this Complaint, Defendants caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants to be untrue and misleading to consumers, including Plaintiffs and the other members of the Classes.

533.   Defendants' misrepresentations with respect to the design, cost, and efficacy of Defendants' glucagon products were material and likely to, and did in fact, deceive reasonable consumers.

534.   Plaintiffs and the California members of the Classes have suffered an injury in fact, as a result of Defendants' unfair, unlawful, and/or deceptive practices, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

535.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

536.   Plaintiffs, individually and on behalf of the other California members of the Classes, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other members of the Classes any money Defendants acquired by their violations of California's False Advertising law, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

**COUNT SIXTEEN — VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

3

4       537.    Plaintiffs incorporate by reference each preceding paragraph as though fully set

5   forth herein.

6       538.    Plaintiffs bring this Count on behalf of themselves and all members of the Non-

7   ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured who are or

8   have been residents of California at any relevant time ("California members of the Classes")

9   against all Defendants (for the purposes of this section, "Defendants").

10      539.    California Business and Professions Code § 17200 prohibits any "unlawful,

11  unfair, or fraudulent business act or practices."

12      540.    As alleged throughout this Complaint, Defendants engaged in unfair, deceptive,

13  and/or unlawful practices in violation of California's Unfair Competition law by, at a minimum:

14  (1) making misleading statements regarding the true cost of the price of glucagon products or

15  causing reasonable inferences about the cost that had the tendency to mislead consumers,

16  including but not limited to publishing, setting, or distributing the list price of glucagon products;

17  (2) engaging in advertising concerning the role that Defendants played in setting the price paid

18  for glucagon products, including but not limited to marketing material averring that the PBM

19  Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for

20  consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set

21  and/or charged by the Manufacturer Defendants for glucagon products; (4) making material

22  misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of

23  discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM

24  Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier

25  placement of the Manufacturer Defendants' glucagon products on the PBM Defendants'

26  formularies; (5) making material misrepresentations regarding or failing to disclose the portion

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 145

of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

541.    Defendants' grossly excessive and unfair glucagon pricing violates public policy and is, as such, unlawful within the meaning of California Business and Professions Code § 17200.

542.    California's Senate Joint Resolution No. 29 unequivocally condemns Defendants' course of conduct in marketing and pricing the glucagon products. In particular, the California Senate and Assembly declared that "unnecessary and unexplained increases in pharmaceutical pricing is a harm to our health care system that will no longer be tolerated. . . ."

543.    California has a strong public policy favoring the fair and reasonable pricing of health care:

A.    Section 1374.21 of the California Health and Safety Code requires that individuals and small business owners be notified if regulators find that the premium for their health care plan is "unreasonable" or "unjustified."

B.    The California Health and Safety Code contains an entire chapter focused on fair pricing policies for hospitals and emergency physicians.  *See* Cal. Health & Safety Code, Division 107, Part 2, Chapter 2.5 "Fair Pricing Policies".

C.    In California Business & Professions Code § 657, the legislature declared that:

i.    "Health Care should be affordable and accessible to all Californians," and

ii.    "The public interest dictates that uninsured Californians have access to basic, preventative health care at affordable prices."

D.    Article 6.2 of the California Health and Safety Code provides for state review of rate increases for health care service plan contracts (with some exceptions).  *See* Cal. Health & Safety Code § 1385.02.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

544.    The California Unfair Competition Law exhibits a public policy in favor of providing increased protection from unfair practices that harm persons who have a "physical . . . impairment that substantially limits one or more life activities."  Cal. Bus. & Prof. Code § 17206.1. There is no question that people with diabetes are deserving of that protection.

545.    Defendants' unfair, unlawful and/or deceptive activity alleged herein caused Plaintiffs and the California members of the Classes to purchase glucagon products at inflated prices. Accordingly, Plaintiffs, and the California members of the Classes have suffered injury in fact including lost money or property as a result of Defendants' misrepresentations and omissions.

546.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Classes any money Defendants' acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below.

## COUNT SEVENTEEN — VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (Col. Rev. Stat. § 6-1-101, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

547.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

548.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of Colorado during the relevant period (the "Colorado members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

549.    Plaintiffs and the Colorado members of the Classes purchased the glucagon products primarily for personal, family or household purposes, as alleged herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 147

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

550.    Defendants are "person[s]" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101, *et seq.*

551.    The Colorado Consumer Protection Act, C.R.S. 6-1-101, *et seq.*, prohibits "deceptive trade practices," which include, but are not limited to, a list of enumerated items, including: "(b) Knowingly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; (c) Knowingly mak[ing] a false representation as to affiliation, connection, or association with or certification by another; . . . (l) Mak[ing] false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions; . . . (u) Fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Col. Rev. Stat § 6-1-105.

552.    As detailed above, Defendants engaged deceptive trade practices in violation of the above-noted provisions of the Colorado Consumer Protection Act by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants'

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

553.    Defendants knowingly engaged in false, misleading, or deceptive acts or practices through the unlawful conduct alleged herein, in violation of C.R.S. 6-1-105(1)(b), (1)(e), (1)(g), (1)(l), (1)(u), (2), and (3).

554.    Defendants owed and continue to owe Plaintiffs and the Colorado members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

555.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Colorado members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Colorado CPA.

556.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Colorado members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Colorado members of the Classes.

557.    Plaintiffs and the Colorado members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Colorado members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Colorado CPA did not

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 149

1

2

begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

3

558.    Plaintiffs and the Colorado members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

559.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

560.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs, individually and on behalf of the Colorado Classes, seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff and each Colorado Classes member.

561.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT EIGHTEEN — VIOLATIONS OF CONNECTICUT UNFAIR TRADE PRACTICES ACT (Conn. Gen. Stat. § 42-110A, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

562.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

563.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of Connecticut during the relevant period (the "Connecticut members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 150

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

564.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).

565.    Defendants are "person[s]" within the meaning of Conn. Gen. Stat. § 42-110a(3).

566.    Defendants are and were engaged in "trade or commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4) during all relevant periods by, at a minimum, advertising, offering for sale, and selling the glucagon products described herein in Connecticut, to Connecticut members of the Classes, and throughout the United States.

567.    Plaintiffs and Connecticut members of the Classes purchased goods or services primarily for personal, family or household purposes as alleged herein.

568.    The Connecticut UTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b.

569.    In the course of their business, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Connecticut UTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 151

and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

570.    Defendants owed and continue to owe Plaintiffs and the Connecticut members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

571.    Defendants knew or should have known that their conduct was in violation of the Connecticut UTPA.

572.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Connecticut members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Connecticut UTPA.

573.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Connecticut members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Connecticut members of the Classes.

574.    Plaintiffs and the Connecticut members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Connecticut members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 152

Connecticut UTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

575.    Plaintiffs and the Connecticut members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

576.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

577.    Defendants acted with a reckless indifference to another's rights or wanton or intentional violation to another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others.

578.    Plaintiffs and the Connecticut members of the Classes are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

## COUNT NINETEEN — VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT (6 Del. Code § 2513, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

579.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

580.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residing in the State of Delaware (the "Delaware members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

581.    Defendants are "person[s]" within the meaning of 6 Del. Code § 2511(7).

582.    The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 153

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."  6 Del. Code § 2513(a).

583.    As detailed above, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Delaware CFA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

584.    Defendants owed and continue to owe Plaintiffs and the Delaware members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

585.    Defendants knew or should have known that their conduct was in violation of the Delaware CFA.

586.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Delaware members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Delaware CFA.

587.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Delaware members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Delaware members of the Classes.

588.    Plaintiffs and the Delaware members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Delaware members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Delaware CFA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

589.    Plaintiffs and the Delaware members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

590.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

591.    Plaintiffs and the Delaware members of the Classes seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendants' unlawful conduct.[167]

592.    Plaintiffs and the Delaware members of the Classes also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

593.    Defendants engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

## COUNT TWENTY — VIOLATIONS OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (Fla. Stat. § 501.201, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

594.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

595.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Florida at any relevant time (the "Florida members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

596.    Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8) during all relevant periods by, at a minimum, advertising, offering for sale, and selling the glucagon products described herein in Florida, to Florida members of the Classes, and throughout the United States.

597.    FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).

---

[167] *See, e.g., Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 156

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

598.     As detailed above, in the course of their business, Defendants engaged in unfair, unconscionable and deceptive acts or practices in violation of the above-noted provisions of the FUDTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

599.     Defendants owed and continue to owe Plaintiffs and the Florida members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

600.     Defendants knew or should have known that their conduct was in violation of the FUTPA.

601.     Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Florida members of the Classes, and continued to engage in unfair and deceptive practices in violation of the FUTPA.

602.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Florida members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including the Florida members of the Classes.

603.    Plaintiffs and the Florida members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused the Florida members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the FUTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

604.    Plaintiffs and the Florida members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

605.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

606.    Plaintiffs and the Florida Classes are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

607.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 158

**COUNT TWENTY-ONE — VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (Ga. Code Ann. § 10-1-390, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

608.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

609.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Georgia at any relevant time ("the Georgia members of Classes") against all Defendants (for the purposes of this section, "Defendants").

610.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but not limited to "(2) Causing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causing actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another"; "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade … if they are of another," "(9) Advertising goods or services with intent not to sell them as advertised," and "(11) Making false or misleading statements concerning the reasons for, existence of, or amounts of price reductions;"

611.    As detailed above, Defendants engaged in unfair and deceptive acts in violation of the above-noted provisions of the Georgia FBPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

612.    Defendants owed and continue to owe Plaintiffs and the Georgia members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the Glucagon products described herein.

613.    Defendants knew or should have known that their conduct was in violation of the Georgia FBPA.

614.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the Glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Georgia members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Georgia FBPA.

615.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Georgia members of the Classes, and were

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 160

likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Georgia members of the Classes.

616.    Plaintiffs and the Georgia members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Georgia members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Georgia FBPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

617.    Plaintiffs and the Georgia members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

618.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

619.    Plaintiffs and the Georgia members of the Classes are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).

620.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code. Ann. § 10-1-399.

621.    On or about the date of this filing, certain Plaintiffs sent a letter complying with Ga. Code. Ann. § 10-1-399(b).  If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiffs and the Georgia Classes are entitled.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 161

1

2

**COUNT TWENTY-TWO — VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE
TRADE PRACTICES ACT (Ga. Code Ann. § 10-1-370, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

3

4

5

622.    Plaintiffs incorporate by reference each preceding paragraph as though fully set
forth herein.

6

7

8

9

623.    Plaintiffs bring this action on behalf of themselves and all members of the Non-
ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are
or have been residents of Georgia at any relevant time ("the Georgia members of Classes")
against all Defendants (for the purposes of this section, "Defendants").

10

11

12

624.    Defendants, Plaintiffs, and the Georgia members of the Classes are "persons"
within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga.
Code. Ann. § 10-1-371(5).

13

14

15

16

17

18

19

20

21

22

625.    The Georgia UDTPA prohibits "deceptive trade practices," which include "(2)
Caus[ing] [a] likelihood of confusion or of misunderstanding as to the source, sponsorship,
approval, or certification of goods or services; (3) Caus[ing] [a] likelihood of confusion or of
misunderstanding as to affiliation, connection, or association with or certification by another;'"
(5) Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients,
uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval,
status, affiliation, or connection that he does not have;" "(11) Mak[ing] false or misleading
statements of fact concerning the reasons for, existence of, or amounts of price reductions; [and]
(12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of
misunderstanding." Ga. Code Ann. § 10-1-372(a).

23

24

25

26

626.    As detailed above, Defendants engaged in deceptive trade practices in violation of
the above-noted provisions of the Georgia UDTPA by, at a minimum: (1) making misleading
statements regarding the true cost of the price of glucagon products or causing reasonable
inferences about the cost that had the tendency to mislead consumers, including but not limited

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

627.    Defendants owed and continue to owe Plaintiffs, and the Georgia members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

628.    Defendants knew or should have known that their conduct was in violation of the Georgia UDTPA.

629.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Georgia members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Georgia UDTPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

630.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Georgia members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs, and the Georgia members of the Classes.

631.    Plaintiffs and the Georgia members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Georgia members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Georgia UDTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

632.    Plaintiffs and the Georgia members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

633.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

634.    Plaintiffs seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann § 10-1-373.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

**COUNT TWENTY-THREE — UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW (Haw. Rev. Stat. § 480, *et seq.*)**

2

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

3

4        635.    Plaintiffs incorporate by reference each preceding paragraph as though fully set

5    forth herein.

6        636.    Plaintiffs brings this action on behalf of themselves and all members of the Non-

7    ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are

8    or have been residents of Hawaii at any relevant time (the "Hawaii members of the Classes")

9    against all Defendants (for the purposes of this section, "Defendants").

10       637.    Defendants are "person[s]" under Haw. Rev. Stat. § 480-1.

11       638.    Plaintiffs and the Hawaii members of the Classes are "consumer[s]" as defined by

12   Haw. Rev. Stat. § 480-1.

13       639.    Defendants' acts or practices as set forth above occurred in the conduct of trade or

14   commerce.

15       640.    Haw. Rev. Stat. § 480-1 *et seq.* (the "HUPUCA"), prohibits the use of any

16   "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any

17   trade or commerce."

18       641.    As detailed above, Defendants engaged in unfair and deceptive acts in violation of

19   the HUPUCA by, at a minimum: (1) making misleading statements regarding the true cost of the

20   price of glucagon products or causing reasonable inferences about the cost that had the tendency

21   to mislead consumers, including but not limited to publishing, setting, or distributing the list

22   price of glucagon products; (2) engaging in advertising concerning the role that Defendants

23   played in setting the price paid for glucagon products, including but not limited to marketing

24   material averring that the PBM Defendants make efforts to decrease the price of prescription

25   drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or

26   fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 165

glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

642.    Defendants owed and continue to owe Plaintiffs and the Hawaii members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

643.    Defendants knew or should have known that their conduct was in violation of the HUPUCA.

644.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Hawaii members of the Classes, and continued to engage in unfair and deceptive practices in violation of the HUPUCA.

645.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Hawaii members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Hawaii members of the Classes.

646.    Plaintiffs and the Hawaii members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Hawaii

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the HUPUCA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

647. Plaintiffs and the Hawaii members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

648. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

649. Pursuant to Haw. Rev. Stat. § 480-13, Plaintiffs and the Hawaii members of the Classes seek monetary relief against Defendants measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

650. Under Haw. Rev. Stat. § 480-13.5, Plaintiffs seek an additional award against Defendants of up to $10,000 for each violation directed at a Hawaiian elder. Defendants knew or should have known that its conduct was directed to one or more members of the Classes who are elders. Defendants' conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder. One or more Hawaii members of the Classes who are elders are substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendants' conduct.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 167

**COUNT TWENTY-FOUR — VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (Idaho Code § 48-601, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

651.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

652.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Idaho at any relevant time (the "Idaho members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

653.    Defendants are "person[s]" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-602(1).

654.    Defendants' acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code § 48-602(2).

655.    The Idaho CPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," which include "(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;" "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;" "(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." Idaho Code § 48-603.

656.    As detailed above, Defendants engaged in unfair and deceptive acts in violation of the above-noted provisions of the Idaho CPA by, at a minimum: (1) making misleading

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 168

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

657.    Defendants owed and continue to owe Plaintiffs and the Idaho members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

658.    Defendants knew or should have known that their conduct was in violation of the Idaho CPA.

659.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 169

1    intent to mislead regulators, Plaintiffs and the Idaho members of the Classes, and continued to

2    engage in unfair and deceptive practices in violation of the Idaho CPA.

3        660.    Defendants' unfair and deceptive acts or practices, omissions and

4    misrepresentations were material to Plaintiffs and the Idaho members of the Classes, and were

5    likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs

6    and the Idaho members of the Classes.

7        661.    Plaintiffs and the Idaho members of the Classes relied upon Defendants' material

8    misrepresentations and omissions regarding the glucagon products, as set forth above. These

9    material misrepresentations by Defendants proximately caused Plaintiffs and the Idaho members

10   of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true

11   nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the

12   statute of limitation for filing claims against Defendants under the Idaho CPA did not begin to

13   accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts

14   until this filing.

15       662.    Plaintiffs and the Idaho members of the Classes suffered injury-in-fact,

16   ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and

17   deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of

18   increased and unfair prices paid for the glucagon products described herein.

19       663.    Defendants' violations present a continuing risk to Plaintiffs as well as to the

20   general public, who in many cases are unable to afford or gain access to glucagon products. As

21   such, Defendants' unlawful acts and practices complained of herein affect the public interest.

22       664.    Pursuant to Idaho Code § 48-608, Plaintiffs and the Idaho members of the Classes

23   seek monetary relief against Defendants measured as the greater of (a) actual damages in an

24   amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each

25   Plaintiff and each Idaho member of the Classes.

26

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 170

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

665.    Plaintiffs and the Idaho members of the Classes also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

666.    Plaintiffs and the Idaho members of the Classes also seek punitive damages against Defendants because Defendants' conduct evidences an extreme deviation from reasonable standards.

## COUNT TWENTY-FIVE — VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *et seq.* and 720 ILCS 295/1a)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

667.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

668.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Illinois at any relevant time (the "Illinois members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

669.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

670.    Plaintiffs and the Illinois members of the Classes are "consumers" as that term is defined in 815 ILCS 505/1(e).

671.    The Illinois Consumer Fraud ("ICFDPA"), 815 ILCS 505/1 *et seq.*, prohibits the use of "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact[.]"

672.    In addition, the Illinois Deceptive Business Practices Act ("IUDTPA"), 815 ILCS 510/2 *et seq.*, prohibits the use of various deceptive trade practices, including: "(2) caus[ing] a

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 171

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;  (3) caus[ing] a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;" "(5) represent[ing] that goods or services have  sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;"  "(11) mak[ing] false or misleading statements of fact  concerning the reasons for, existence of, or amounts of price reductions;  (12) engag[ing] in any other conduct which similarly  creates a likelihood of confusion or misunderstanding."

673.    As detailed above, Defendants engaged in unfair and deceptive acts in violation of the ICFDPA and the IUDTPA by, at a minimum:  (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

674.    Defendants owed and continue to owe Plaintiffs and the Illinois members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

675.    Defendants knew or should have known that their conduct was in violation of the ICFDPA and the IUDTPA.

676.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Illinois members of the Classes, and continued to engage in unfair and deceptive practices in violation of the ICFDPA and the IUDTPA.

677.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Illinois members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Illinois members of the Classes

678.    Plaintiffs and the Illinois members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Illinois members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the ICFDPA and the IUDTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

679.    Plaintiffs and the Illinois members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

680.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

681.    Pursuant to 815 ILCS 505/10a(a), Plaintiff and the Illinois members of the Classes seek monetary relief against Defendants in the amount of their actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

682.    Plaintiffs also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

### COUNT TWENTY-SIX — VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (Ind. Code § 24-5-0.5-3)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

683.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

684.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Indiana at any relevant time (the "Indiana members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

685.    Defendants are "person[s]" within the meaning of Ind. Code § 24-5-0.5-2(2) and a "supplier" within the meaning of Ind. Code § 24-5-.05-2(a)(3).

686.    Plaintiffs and Indiana members of the Classes' purchases of the glucagon products described herein are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 174

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

687.     Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive act," which includes representing:  "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

688.     As detailed above, Defendants engaged in deceptive acts in violation of the Indiana DCSA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 175

exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

689.    Defendants owed and continue to owe Plaintiffs and the Indiana members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

690.    Defendants knew or should have known that their conduct was in violation of the Indiana DCSA.

691.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Indiana members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Indiana DCSA.

692.    Defendants' unfair and deceptive acts or practices, omissions, and misrepresentations were material to Plaintiffs and the Indiana members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Indiana members of the Classes.

693.    Plaintiffs and the Indiana members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused the Indiana members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Indiana DCSA did not begin to accrue

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

694.    Plaintiffs and the Indiana members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

695.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

696.    Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs and the Indiana members of the Classes seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and each Indiana member of the Classes, including treble damages up to $1,000 for Defendants' willfully deceptive acts.

697.    Plaintiff also seeks punitive damages based on the outrageousness and recklessness of the Defendants' conduct and their high net worth.

698.    On or about the date of this filing, certain Plaintiffs sent notice letters to Defendants pursuant to Ind. Code § 24-5-0.5-2 and § 24-5-0.5-5. If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Indiana members of the Classes are entitled.

## COUNT TWENTY-SEVEN — VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION OR CONSUMER FRAUDS ACT (IOWA CODE § 714H.1, *ET SEQ.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

699.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

700.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of the State of Iowa during the relevant period ("the Iowa members of the Classes") against all Defendants (for the purposes of this section, "Defendants").Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA") provides broadly that "[a] person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes." Iowa Code § 714H.3.

701.    The Iowa members of the Classes are "consumers" under the Iowa CFA. Iowa Code § 714H.2.

702.    For purposes of the Iowa CFA, each Defendant is a "person." Iowa Code §§ 714H.2, 714.16.

703.    Defendants violated the Iowa CFA, at a minimum by: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

704.    These violations harmed the Iowa members of the Classes and likely will continue to harm the Classes if Defendants' misconduct is not stopped.

705.    Under Iowa Code § 714H.5, Plaintiffs seek an injunction to protect the public from further violations of the Iowa CFA by Defendants. Furthermore, Plaintiffs request actual damages, costs of the action, and reasonable attorney's fees. Iowa Code § 714H.5.

706.    Because Defendants' conduct in violation of the Iowa CFA "constitutes willful and wanton disregard for the rights or safety of another," in addition to an award of actual damages, Plaintiffs seek statutory damages in the amount of three times actual damages. Iowa Code § 714H.5.

707.    Plaintiffs further request any other "equitable relief as [the Court] deems necessary to protect the public from further violations…." Iowa Code § 714H.5.

### COUNT TWENTY-EIGHT — VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (Kan. Stat. Ann. § 50-623, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

708.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

709.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 179

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

or have been residents of Kansas at any relevant time (the "Kansas members of the Classes")

against all Defendants (for the purposes of this section, "Defendants").

710.    Defendants are "suppliers" under the Kansas Consumer Protection Act ("Kansas

CPA"), Kan. Stat. Ann. § 50-624(l).

711.    Plaintiffs and the Kansas members of the Classes are "consumers," within the

meaning of Kan. Stat. Ann. § 50-624(b).

712.    The sale of the glucagon products described herein to the Plaintiffs and the

Kansas members of the Classes were "consumer transactions" within the meaning of Kan. Stat.

Ann. § 50-624(c).

713.    The Kansas CPA states "[n]o supplier shall engage in any deceptive act or

practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that

deceptive acts or practices include:  (1) knowingly making representations or with reason to

know that "(A) Property or services have sponsorship, approval, accessories, characteristics,

ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are

of particular standard, quality, grade, style or model, if they are of another which differs

materially from the representation;" "(2) the willful use, in any oral or written representation, of

exaggeration, falsehood, innuendo or ambiguity as to a material fact;" "(3) the willful failure to

state a material fact, or the willful concealment, suppression or omission of a material fact," and

"(7) making false or misleading representations, knowingly or with reason to know, of fact

concerning the reason for, existence of or amounts of price reductions, or the price in comparison

to prices of competitors or one's own price at a past or future time." The Kansas CPA also

provides that "[n]o supplier shall engage in any unconscionable act or practice in connection

with a consumer transaction."  Kan. Stat. Ann. § 50-627(a).

714.    As detailed above, Defendants engaged in misleading, false and deceptive acts in

violation of the above-noted provisions of the Kansas CPA by, at a minimum: (1) making

misleading statements regarding the true cost of the price of glucagon products or causing

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 180

reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

715.    Defendants owed and continue to owe Plaintiffs, and the Kansas members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

716.    Defendants knew or should have known that their conduct was in violation of the Kansas CPA.

717.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Kansas members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Kansas CPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

718.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs, and the Kansas members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs, and the Kansas members of the Classes.

719.    Plaintiffs, and the Kansas members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused the Kansas members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Kansas CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

720.    Plaintiffs, and the Kansas members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

721.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

722.    Pursuant to Kan. Stat. Ann. § 50-634, Plaintiffs and the Kansas members in the Classes seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Plaintiff and each Kansas member of the Classes.

723.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann § 50-623, *et seq.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 182

**COUNT TWENTY-NINE — VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. § 367.110, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

724.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

725.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Kentucky at any relevant time (the "Kentucky members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

726.    Defendants, Plaintiffs, and the Kentucky members of the Classes are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

727.    Defendants engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

728.    The Kentucky Consumer Protection Act (the "Kentucky CPA") prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. 367.170.

729.    As detailed above, Defendants engaged in unfair, misleading, false and deceptive acts in violation of the above-noted provisions of the Kentucky CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

730.    Defendants owed and continue to owe Plaintiffs and the Kentucky members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

731.    Defendants knew or should have known that their conduct was in violation of the Kentucky CPA.

732.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Kentucky members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Kentucky CPA.

733.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Kentucky members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Kentucky members of the Classes.

734.    Plaintiffs and the Kentucky members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Kentucky

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 184

members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Kentucky CPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

735.    Plaintiffs and the Kentucky members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

736.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest

737.    Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs and the Kentucky members of the Classes seek to recover actual damages in an amount to be determined at trial; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## COUNT THIRTY — VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (La. Rev. Stat. § 51:1401, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

738.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

739.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Louisiana at any relevant time (the "Louisiana members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 185

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

740.    Defendants, Plaintiffs, and the Louisiana members of the Classes are "persons" within the meaning of the La. Rev. Stat. § 51:1402(8).

741.    Plaintiffs and the Louisiana members of the Classes are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

742.    Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

743.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A).

744.    In the course of their business, Defendants engaged in deceptive acts or practices in violation of the Louisiana CPL by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 186

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

745.    Defendants owed and continue to owe Plaintiffs and the Louisiana members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

746.    Defendants knew or should have known that their conduct was in violation of the Louisiana CPL.

747.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Louisiana members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Louisiana CPL.

748.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Louisiana members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Louisiana members of the Classes.

749.    Plaintiffs and the Louisiana members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Louisiana members of the Classes to overpay for the glucagon product. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Louisiana CPL did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

750.    Plaintiffs and the Louisiana members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 187

deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

751.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

752.    Pursuant to La. Rev. Stat. § 51:1409, Plaintiffs and the Louisiana members of the Classes seek to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

**COUNT THIRTY-ONE — MAINE UNFAIR TRADE PRACTICES ACT (MUTPA) AND UNIFORM DECEPTIVE TRADE PRACTICES ACT (MUDTPA) (5 M.R.S.A. § 205-A *et seq.*, 5 M.R.S.A. § 1211 *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

753.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

754.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Maine at any relevant time (the "Maine members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

755.    Defendants, Plaintiffs, and the Maine members of the Classes are "persons" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(2).

756.    Defendants are engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(3).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 188

757.    The Maine Unfair Trade Practices Act (the "MUTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."  Me. Rev. Stat. Ann. Tit. 5 § 207.

758.    In addition, the Maine Uniform Deceptive Trade Practices Act (the "MUDTPA"), 5 M.R.S.A. § 1211 *et seq.*, prohibits the use of various deceptive trade practices, including: "Caus[ing] [a] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; Caus[ing] [a] likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;" "Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" "Mak[ing] false or misleading statements of fact concerning the reasons for, existence of or amounts of, price reductions;" and "Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

759.    As detailed above, Defendants engaged in deceptive acts in violation of the MUTPA and the MUDTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

760.    Defendants owed and continue to owe Plaintiffs and the Maine members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

761.    Defendants knew or should have known that their conduct was in violation of the MUTPA and the MUDTPA.

762.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Maine members of the Classes, and continued to engage in unfair and deceptive practices in violation of the MUTPA and the MUDTPA.

763.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Maine members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Maine members of the Classes.

764.    Plaintiffs and the Maine members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Maine members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the MUTPA and the MUDTPA

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

765.    Plaintiffs and the Maine members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

766.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

767.    Pursuant the MUTPA and the MUDTPA, Plaintiffs and the Maine members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the MUTPA and the MUDTPA.

768.    On or about the date of this filing, certain Plaintiffs sent a letter complying with Me. Rev. Stat. Ann. Tit. 5, § 213(1-A). If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Maine members of the Classes are entitled.

## COUNT THIRTY-TWO — VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (Md. Code Com. Law § 13-101, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

769.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

770.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Maryland at any relevant time (the "Maryland members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 191

771.    Defendants, Plaintiffs, and the Maryland members of the Classes are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

772.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.  Md. Code Com. Law § 13-303.

773.    Md. Code Ann., Com. Law § 13-101 *et seq.*, prohibits the use of any "unfair or deceptive trade practices" including any "(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;  (2) Representation that:  (i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;  (ii) A merchant has a sponsorship, approval, status, affiliation, or connection which he does not have;" "(3) Failure to state a material fact if the failure deceives or tends to deceive;" "(6) False or misleading representation of fact which concerns  [t]he reason for or the existence or amount of a price reduction;" and "(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with [t]he promotion or sale of any consumer goods, consumer realty, or consumer service."

774.    In the course of their business, Defendants engaged in unfair and deceptive acts in violation of the Maryland CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

775.    Defendants owed and continue to owe Plaintiffs and the Maryland members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

776.    Defendants knew or should have known that their conduct was in violation of the Maryland CPA.

777.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Maryland members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Maryland CPA.

778.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Maryland members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Maryland members of the Classes.

779.    Plaintiffs and the Maryland members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 193

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

These material misrepresentations by Defendants proximately caused Plaintiff and the Maryland members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Maryland CPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

780.    Plaintiffs and the Maryland members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

781.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

782.    Pursuant to Md. Code Com. Law § 13-408, Plaintiffs and the Maryland Classes seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT THIRTY-THREE — DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW (Mass. Gen. Laws Ch. 93a, § 1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

783.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

784.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been Massachusetts residents at any relevant time (the "Massachusetts members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 194

785.    Defendants, Plaintiffs, and the Massachusetts members of the Classes are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

786.    Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

787.    Massachusetts law (the "Massachusetts CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

788.    As detailed above, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Massachusetts CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

789.    As alleged throughout this Complaint, Defendants also engaged in unfair and unscrupulous practices by raising the price of life-saving medication without justification.

790.    Defendants' conduct offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantial injurious to consumers.

791.    Additionally, Defendants' conduct was deceptive because it caused Plaintiffs and the Massachusetts members of the Classes to act differently from the way they would have otherwise acted.

792.    Defendants owed and continue to owe Plaintiffs, and the Massachusetts members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

793.    Defendants knew or should have known that their conduct was in violation of the Massachusetts CPA.

794.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Massachusetts members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Massachusetts CPA.

795.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs, and the Massachusetts members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs, and the Massachusetts members of the Classes

796.    Plaintiffs, and the Massachusetts members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Massachusetts members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 196

until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Massachusetts CPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

797. Plaintiffs, and the Massachusetts members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

798. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

799. Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs and the Massachusetts members of the Classes seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff and each Massachusetts member of the Classes. Because Defendants' conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Massachusetts member of the Classes, up to three times actual damages, but no less than two times actual damages.

800. Plaintiffs and the Massachusetts members of the Classes also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts CPA.

801. On or about the date of this filing, certain Plaintiffs sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3). If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Massachusetts members of the Classes are entitled.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT THIRTY-FOUR — VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT (Mich. Comp. Laws § 445.903, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

802.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

803.    Plaintiffs bring this count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Michigan at any relevant time (the "Michigan members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

804.    Plaintiffs, and the Michigan members of the Classes are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

805.    At all relevant times, Defendants were "persons" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

806.    The Michigan Consumer Protection Act ("Michigan CPA") specifically prohibits "[c]harging the consumer a price that is grossly in excess of the price at which similar property or services are sold." Mich. Comp. Laws § 445.903(z).

807.    The Michigan CPA also prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" including: "(a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," "(c) Representing that goods or services have … characteristics … that they do not have ….;" "(e) Representing that goods or services are of a particular standard … if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

808.    As detailed above, Defendants engaged in unfair, unconscionable, and deceptive acts in violation of the above-noted provisions of the Michigan CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

809.    Defendants owed and continue to owe Plaintiffs and the Michigan members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

810.    Defendants knew or should have known that their conduct was in violation of the Michigan CPA.

811.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Michigan members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Michigan CPA.

812.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs the Michigan members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Michigan members of the Classes.

813.    Plaintiffs and the Michigan members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Michigan members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Michigan CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

814.    Plaintiffs and the Michigan members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

815.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 200

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

816.    Plaintiffs and the Michigan members of the Classes seek injunctive relief to enjoin Defendants from continuing their unfair and deceptive acts; monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiffs and each Michigan Classes member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

817.    Plaintiffs and the Michigan members of the Classes also seek punitive damages against Defendants because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others.

### COUNT THIRTY-FIVE — VIOLATIONS OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (Minn. Stat. § 325f.68, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

818.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

819.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or who have been residents of Minnesota at any relevant time (the "Minnesota members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

820.    The glucagon products described herein constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

821.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby ...." Minn. Stat. § 325F.69(1).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 201

822.    As detailed above, Defendants engaged in deceptive acts in violation of the Minnesota CFA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

823.    Defendants owed and continue to owe Plaintiffs and the Minnesota members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

824.    Defendants knew or should have known that their conduct was in violation of the Minnesota CFA.

825.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 202

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

intent to mislead regulators, Plaintiffs and the Minnesota members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Minnesota CFA.

826.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Minnesota members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Minnesota members of the Classes.

827.    Plaintiffs and the Minnesota members of the Classes of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Minnesota members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Minnesota CFA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

828.    Plaintiffs and the Minnesota members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

829.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

830.    Pursuant to Minn. Stat. § 8.31(3)(a), Plaintiffs and the Minnesota Classes seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

831.    Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights or safety of others.

**COUNT THIRTY-SIX — VIOLATIONS OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT (Minn. Stat. § 325d.43-48, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

832.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

833.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or who have been residents of Minnesota at any relevant time (the "Minnesota members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

834.    The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;" "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertises goods or services with intent not to sell them as advertised;" "(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" or " (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 204

835.    As detailed above, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Minnesota DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

836.    Defendants owed and continue to owe Plaintiffs and the Minnesota members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

837.    Defendants knew or should have known that their conduct was in violation of the Minnesota DTPA.

838.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 205

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Minnesota members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Minnesota DTPA.

839.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Minnesota members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Minnesota members of the Classes.

840.    Plaintiffs and the Minnesota members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Minnesota members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Minnesota DTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

841.    Plaintiffs and the Minnesota members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

842.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

843.    Pursuant to Minn. Stat. § 8.31(3a) and 325D.45, Plaintiffs and the Minnesota Classes seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

844.    Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) give the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights or safety of others

## COUNT THIRTY-SEVEN — VIOLATIONS OF MISSISSIPPI CONSUMER PROTECTION ACT (Miss. Code. Ann. § 75-24-1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

845.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

846.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of Mississippi at any relevant time (the "Mississippi members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

847.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(b) Misrepresentation of the source, sponsorship, approval, or certification of goods or services; (c) Misrepresentation of affiliation, connection, or association with, or certification by another;" "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(i) Advertising goods or services with intent not to sell them as advertised;" and "(k) Misrepresentations of fact concerning the reasons for, existence of, or amounts of price reductions." Miss. Code. Ann. § 75-24-5.

848.    As detailed above, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Mississippi CPA by, at a minimum: (1) making

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 207

misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

849.    Defendants owed and continue to owe Plaintiffs and the Mississippi members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

850.    Defendants knew or should have known that their conduct was in violation of the Mississippi CPA.

851.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

intent to mislead regulators, Plaintiffs, and the Mississippi members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Mississippi CPA.

852.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Mississippi members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Mississippi members of the Classes.

853.    Plaintiffs and the Mississippi members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Mississippi members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Mississippi CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

854.    Plaintiffs and the Mississippi members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

855.    On or about the date of this filing, certain Plaintiffs sent letters to Defendants pursuant to Miss. Code § 75-24-15(2) seeking to make a reasonable attempt to resolve this claim through informal means. If Defendants fail to respond to Plaintiffs' request to mediate within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Indiana members of the Classes are entitled.

856.    Plaintiffs' seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT THIRTY-EIGHT — VIOLATIONS OF MISSOURI MERCHANDISING
PRACTICES ACT (Mo. Rev. Stat. § 407.010, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

857.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

858.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Missouri at any relevant time (the "Missouri members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

859.    Defendants, Plaintiffs and the Missouri members of the Classes are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

860.    Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

861.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

862.    As detailed above, Defendants engaged in unfair, false, and deceptive practices in violation of the above-noted provisions of the Missouri MPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 210

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

863.    Defendants conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers.  Such acts are unfair practices in violation of 15 Mo. Code of State Reg.  60-8.020.

864.    Defendants owed and continue to owe Plaintiffs and the Missouri members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

865.    Defendants knew or should have known that their conduct was in violation of the Missouri MPA

866.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Missouri members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Missouri MPA.

867.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Missouri members of the Classes, and were

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 211

likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Missouri members of the Classes.

868.    Plaintiffs and the Missouri members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Missouri members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Missouri MPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

869.    Plaintiffs and the Missouri members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

870.    As such, Defendants are liable to Plaintiffs and the Missouri members of the Classes for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

**COUNT THIRTY-NINE — VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973 (MONT. CODE § 30-14-101, *ET SEQ.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

871.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

872.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 212

residents or have been residents of the State of Montana during the relevant period ("the Iowa members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

873.    Montana's Unfair Trade Practices and Consumer Protection Act ("Montana CPA") provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code § 30-14-103.

874.    The Montana members of the Classes are "consumers" for purposes of the Montana CPA. Mont. Code § 30-14-102.

875.    For purposes of the Montana CPA, each Defendant is a "person." Mont. Code § 30-14-102.

876.    Defendants' activities in regard to glucagon products constitute "trade" and "commerce" under the Montana CPA. Mont. Code § 30-14-102.

877.    Defendants violated the Montana CPA, at a minimum by: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

878.    These violations harmed the Montana members of the Classes and likely will continue to harm the Classes if Defendants' misconduct is not stopped.

879.    Under Mont. Code § 30-14-133, Plaintiffs seek an injunction to protect the public from further violations of the Montana CPA by Defendants.

880.    Furthermore, Plaintiffs request actual damages or $500 per Montana member of the Classes, whichever is greater. Mont. Code § 30-14-133. Plaintiffs also seek costs of the action and reasonable attorney's fees. Mont. Code § 30-14-133.

881.    Plaintiffs further request the Court to "provide any other equitable relief that it considers necessary or proper." Mont. Code § 30-14-133.

## COUNT FORTY — VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT (NEB. REV. STAT. § 59-1601, *ET SEQ.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

882.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

883.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of the State of Nebraska during the relevant period ("the Nebraska members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

884.    Nebraska's Unfair Trade Practices and Consumer Protection Act ("Nebraska CPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. Stat. § 59-1602.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

885. For purposes of the Nebraska CPA, each Defendant and each Nebraska member of the Classes is a "person." Neb. Rev. Stat. § 59-1601.

886. Defendants' activities in regard to glucagon products constitute "trade" and "commerce" under the Nebraska CPA. Neb. Rev. Stat. § 59-1601.

887. Defendants violated the Nebraska CPA, at a minimum by: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

888. The foregoing violations caused harm to Plaintiffs and the members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

889. Under Neb. Rev. Stat. § 59-1609, Plaintiffs seek an injunction to protect the public from further violations of the Nebraska CPA by Defendants.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 215

890.    Furthermore, Plaintiffs request actual damages together with costs, including reasonable attorney's fees. Neb. Rev. Stat. § 59-1609. Plaintiffs further seek the maximum discretionary award permitted under Neb. Rev. Stat. § 59-1609, and any other relief pursuant to the Nebraska CPA that the Court finds proper.

### COUNT FORTY-ONE — VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (Nev. Rev. Stat. § 598.0903, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

891.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

892.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of Nevada at any relevant time (the "Nevada members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

893.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et seq.* prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "2. Knowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease.; 3. Knowingly makes a false representation as to affiliation, connection, association with or certification by another person;" "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; "13. Makes false or misleading statements of fact concerning the price of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 216

goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions." or "15. Knowingly makes any other false representation in a transaction."

894.    In the course of their business, Defendants engaged in deceptive trade practices in violation of the Nevada DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

895.    Defendants owed and continue to owe Plaintiffs and the Nevada members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing and legality of the glucagon products described herein.

896.    Defendants knew or should have known that their conduct was in violation of the Nevada DTPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 217

897.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Nevada members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Nevada DTPA.

898.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Nevada members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Nevada members of the Classes.

899.    Plaintiffs and the Nevada members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products described herein, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Nevada members of the Classes to overpay for the Glucagon products described herein. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Nevada DTPA. did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

900.    Plaintiffs and the Nevada members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

901.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

902.    Accordingly, Plaintiffs and the Nevada members of the Classes seek their actual damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act.  Nev. Rev. Stat. § 41.600.

## COUNT FORTY-TWO — VIOLATIONS OF N.H. CONSUMER PROTECTION ACT
### (N.H. Rev. Stat. Ann. § 358-a:1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

903.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

904.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of New Hampshire at any relevant time (the "New Hampshire members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

905.    Plaintiffs, the New Hampshire members of the Classes, and Defendants are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

906.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

907.    The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: (II) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;  (III) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another; . . . (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another;" "(IX) Advertising goods or services with intent not to sell them as advertised;" "(XI) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "XIV.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 219

Pricing of goods or services in a manner that tends to create or maintain a monopoly, or otherwise harm competition." N.H. Rev. Stat. § 358-A:2.

908.   As detailed above, Defendants engaged in unfair and deceptive acts in violation of the New Hampshire CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

909.   Defendants owed and continue to owe Plaintiffs and the New Hampshire members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

910.   Defendants knew or should have known that their conduct was in violation of the New Hampshire CPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 220

911.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the New Hampshire members of the Classes, and continued to engage in unfair and deceptive practices in violation of the New Hampshire CPA.

912.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the New Hampshire members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the New Hampshire members of the Classes.

913.    Plaintiffs and the New Hampshire members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the New Hampshire members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the New Hampshire CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

914.    Plaintiffs and the New Hampshire members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

915.    Because Defendants' willful conduct caused injury to the New Hampshire members of the Classes' property through violations of the New Hampshire CPA, the New Hampshire members of the Classes seeks recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, an order enjoining Defendants'

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. Rev. Stat. § 358-A:10.

### COUNT FORTY-THREE — VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J. Stat. Ann. §§ 56:8-1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

916.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

917.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of New Jersey Classes at any relevant time (the "New Jersey members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

918.    Plaintiffs, the New Jersey members of the Classes, and Defendants are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

919.    Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. § 56:8-1(c), (e).

920.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce within the meaning of the New Jersey Consumer Fraud Act.

921.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." N.J. Stat. § 56:8-2.

922.    In the course of their business, Defendants engaged in unfair and deceptive practices in violation of the New Jersey CFA by, at a minimum: (1) making misleading

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

923.    Defendants owed and continue to owe Plaintiffs and the New Jersey members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

924.    Defendants knew or should have known that their conduct was in violation of the New Jersey CFA.

925.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

intent to mislead regulators, Plaintiffs and the New Jersey members of the Classes, and continued to engage in unfair and deceptive practices in violation of the New Jersey CFA.

926.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the New Jersey members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the New Jersey members of the Classes.

927.    Plaintiffs and the New Jersey members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the New Jersey members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the New Jersey CFA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

928.    Plaintiffs and the New Jersey members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

929.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the New Jersey members of the Classes have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, treble damages, an order enjoining Defendants' deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 224

**COUNT FORTY-FOUR — VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT (N.M. Stat. Ann. §§ 57-12-1, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

930.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

931.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or who have been residents of the State of New Mexico at any relevant time (the "New Mexico members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

932.    Defendants, Plaintiffs and the New Mexico members of the Classes are or were "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 57-12-2.

933.    Defendants actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

934.    The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to: "(2) causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; (3) causing confusion or misunderstanding as to affiliation, connection or association with or certification by another; . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" "(11) making false or misleading statements of fact concerning the price of goods or services, the prices of competitors or one's own price at a past or future time or the reasons for, existence of or amounts of price reduction;"

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and "(14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive."

935.    In the course of their business, Defendants engaged in unfair and misleading acts in violation of the New Mexico UTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

936.    Defendants owed and continue to owe Plaintiffs and the New Mexico members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

937.    Defendants knew or should have known that their conduct was in violation of the New Mexico UTPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

938.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the New Mexico members of the Classes, and continued to engage in unfair and deceptive practices in violation of the New Mexico UTPA.

939.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the New Mexico members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the New Mexico members of the Classes

940.    Plaintiffs and the New Mexico members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the New Mexico members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the New Mexico UTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

941.    Plaintiffs and the New Mexico members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

942.    Because Defendants' unconscionable, willful conduct caused actual harm to Plaintiff and the New Mexico members of the Classes, they seek recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 227

**COUNT FORTY-FIVE — VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW**
**§ 349 (N.Y. Gen. Bus. Law § 349)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

943.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

944.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of New York at any relevant time ("New York members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

945.    Plaintiffs, the New York members of the Classes and all Defendants are "persons" under N.Y. Gen. Bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

946.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

947.    The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

948.    New York State General Business Law Section 349 (N.Y. Gen. Bus. § 349) broadly prohibits deceptive acts or practices in the state of New York toward consumers.

949.    As detailed above, Defendants engaged in deceptive acts toward consumers in violation of New York law in connection with the glucagon products.

950.    In the course of their business, Defendants engaged in deceptive acts or practices in violation of the NY DAPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

951.    Defendants owed and continue to owe Plaintiffs and the New York members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

952.    Defendants knew or should have known that their conduct was in violation of the NY DAPA.

953.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs the New York members of the Classes, and continued to engage in unfair and deceptive practices in violation of the NY DAPA.

954.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the New York members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the New York members of the Classes.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 229

955.    Plaintiffs and the New York members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the New York members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the NY DAPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

956.    Plaintiffs and the New York members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

957.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiffs and the New York members Classes have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs,  an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

**COUNT FORTY-SIX — VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. Gen. Stat. §§ 75-1.1, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

958.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

959.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 230

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

or have been residents of North Carolina at any relevant time (the "North Carolina members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

960.    Plaintiffs and the North Carolina members of the Classes are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA").

961.    Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

962.    The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA.  N.C. Gen. Stat. § 75-16.

963.    In the course of their business Defendants engaged in unfair and deceptive acts or practices in violation of the NCUDTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants'

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

964.    Defendants owed and continue to owe Plaintiffs and the North Carolina members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

965.    Defendants knew or should have known that their conduct was in violation of the NCUDTPA.

966.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the North Carolina members of the Classes, and continued to engage in unfair and deceptive practices in violation of the NCUDTPA.

967.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the North Carolina members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the North Carolina members of the Classes.

968.    Plaintiffs and the North Carolina members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the North Carolina members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the NCUDTPA did

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

969.    Plaintiffs and the North Carolina members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

970.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

971.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the North Carolina members of the Classes have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available under N.C. Gen. Stat. § 75-16.

## COUNT FORTY-SEVEN — VIOLATION OF THE NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING PRACTICES LAW (N.D. CENT. CODE § 51-15-02)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

972.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

973.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of the State of North Dakota during the relevant period ("the North Dakota members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

974.    North Dakota's Unlawful Sales or Advertising Practices Law ("North Dakota USAPL") prohibits "[t]he act, use, or employment by any person of any deceptive act or

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby…." N.D. Cent. Code § 51-15-02.

975.    For purposes of the North Dakota USAPL, each Defendant is a "person." N.D. Cent. Code § 51-15-01.

976.    Glucagon products are "merchandise" under the North Dakota USAPL, for which Defendants conducted "advertisement" and which they offered for "sale," as those terms are defined in the law. N.D. Cent. Code § 51-15-01.

977.    Defendants violated the North Dakota USAPL, at a minimum by: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 234

978.    The foregoing violations caused harm to Plaintiffs and the members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

979.    Plaintiffs seek an injunction to protect the public from further violations of the North Dakota USAPL by Defendants.

980.    Furthermore, because Defendants knowingly committed this conduct, Plaintiffs seek three times the actual damages as well as costs, disbursements, and actual reasonable attorney's fees incurred in the action. N.D. Cent. Code § 51-15-09.

**COUNT FORTY-EIGHT — VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT (Ohio Rev. Code §§ 1345.01, et seq.)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

981.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

982.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of Ohio at any relevant time (the "Ohio members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

983.    Defendants, Plaintiffs and the Ohio members of the Classes are "persons" within the meaning of Ohio Rev. Code § 1345.01(B).

984.    Defendants are "suppliers" as defined by Ohio Rev. Code § 1345.01(C).

985.    Plaintiffs and the Ohio members of the Classes are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchase of the glucagon products described herein are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

986.    Ohio Rev. Code § 1345.02 (the "Ohio CSPA"), prohibits unfair or deceptive acts or practices in connection with a consumer transaction. The Ohio CSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 235

and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

987.    In the course of their business, Defendants engaged in unfair and deceptive practices in violation of the Ohio CSPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

988.    Defendants owed and continue to owe Plaintiffs and the Ohio members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

989.    Defendants knew or should have known that their conduct was in violation of the Ohio CSPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 236

990.     Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Ohio members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Ohio CSPA.

991.     Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Ohio members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Ohio members of the Classes.

992.     Plaintiffs and Ohio members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Ohio members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Ohio CSPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

993.     Plaintiffs and the Ohio members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

994.     Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

995.     Pursuant to Ohio Rev. Code § 1345.09, Plaintiffs and the Ohio members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, actual

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 237

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

damages - trebled, and attorneys' fees, costs, and any other just and proper relief, to the extend available under the Ohio CSPA.

## COUNT FORTY-NINE — VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT (Ohio Rev. Code § 4165.01, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

996.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

997.    This claim is brought by Plaintiffs on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of Ohio at any relevant time (the "Ohio members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

998.    Defendants, Plaintiffs and the Ohio members of the Classes are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

999.    Defendants took the actions complained of herein in "the course of [their] business" within the meaning of Ohio Rev. Code § 4165.02(A).

1000.    The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; . . . (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . . (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (11) Advertises goods or services with intent not to sell them as advertised [or]

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 238

(12) Makes false statements of fact concerning the reasons for, existence of, or amounts of price reductions."

1001.   In the course of their business, Defendants engaged in deceptive trade practices in violation of the Ohio DPTA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1002.   Defendants owed and continue to owe Plaintiffs and the Ohio members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1003.   Defendants knew or should have known that their conduct was in violation of the Ohio DTPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 239

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1004.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Ohio members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Ohio DTPA.

1005.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Ohio members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Ohio members of the Classes.

1006.   Plaintiffs and the Ohio members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Ohio members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Ohio DTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1007.   Plaintiffs and the Ohio members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1008.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1009.   Pursuant to Ohio Rev. Code § 4165.03, Plaintiffs and the Ohio Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 240

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

damages, and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

## COUNT FIFTY — VIOLATIONS OF OKLAHOMA CONSUMER PROTECTION ACT
### (Okla. Stat. Tit. 15 § 751, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

1010.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1011.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of the State of Oklahoma during any relevant time period (the "Oklahoma members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1012.   Defendants, Plaintiffs and the Oklahoma members of the Classes are "persons" within the meaning of Okla. Stat. Tit. 15 § 752.1.

1013.   Defendants engaged in the acts alleged herein in "the course of [their] business" within the meaning of Okla. Stat. Tit. 15 § 752.3.

1014.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits, in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics . . . , uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." Okla. Stat. Tit. 15 § 753.

1015.   Defendants engaged in unfair and deceptive trade practices in violation of the Oklahoma CPA by, at a minimum: (1) making misleading statements regarding the true cost of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 241

the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1016.    Defendants owed and continue to owe Plaintiffs and the Oklahoma members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1017.    Defendants knew or should have known that their conduct was in violation of the Oklahoma CPA.

1018.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Oklahoma members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Oklahoma CPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 242

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1019.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Oklahoma members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Oklahoma members of the Classes.

1020.   Plaintiffs and the Oklahoma members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Oklahoma members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Oklahoma CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1021.   Plaintiffs and the Oklahoma members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1022.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1023.   Pursuant to Okla. Stat. Tit. 15 § 761.1, Plaintiffs and the Oklahoma Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oklahoma CPA.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT FIFTY-ONE — VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (Or. Rev. Stat. §§ 646.605, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

1024.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1025.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or who have been residents of the State of Oregon during the relevant time period (the "Oregon members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1026.    Defendants, Plaintiffs and the Oregon members of the Classes are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

1027.    Defendants are engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

1028.    The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or deceptive acts conduct in trade or commerce," including but not limited to "(b) Caus[ing] [a] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services; (c) Caus[ing] [a] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;" "(j) Mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions;"  and "(u) Mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." Or. Rev. Stat. § 646.608(1).

1029.    Defendants engaged in unfair and deceptive conduct in violation of the Oregon UTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1030.    Defendants owed and continue to owe Plaintiffs and the Oregon members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1031.    Defendants knew or should have known that their conduct was in violation of the Oregon UTPA.

1032.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Oregon members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Oregon UTPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1033.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Oregon members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Oregon members of the Classes.

1034.   Plaintiffs and the Oregon members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Oregon members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Oregon UTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1035.   Plaintiffs and the Oregon members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1036.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1037.   Pursuant to Or. Rev. Stat. § 646.638, Plaintiffs and the Oregon Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT FIFTY-TWO — VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

1038.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1039.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents of or who have been residents of the State of Pennsylvania during any relevant period (the "Pennsylvania members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1040.    Defendants, Plaintiffs and the Pennsylvania members of the Classes are "persons" within the meaning of 73 P.S. § 201-2.(2).

1041.    Defendants are engaged in "trade" or "commerce" within the meaning of 73 P.S. § 201-2(3) with respect to the conduct alleged herein.

1042.    The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," including but not limited to: "(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;" "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;"  and "(xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."  73 P.S. § 201-2(4).

1043.    Defendants engaged in unfair and deceptive acts or practices in violation of the Pennsylvania UTPA by, at a minimum: (1) making misleading statements regarding the true cost

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 247

of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1044.   Defendants owed and continue to owe Plaintiffs and the Pennsylvania members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1045.   Defendants knew or should have known that their conduct was in violation of the Pennsylvania UTPA.

1046.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Pennsylvania members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Pennsylvania UTPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 248

1047.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Pennsylvania members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Pennsylvania members of the Classes.

1048.   Plaintiffs and the Pennsylvania members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Pennsylvania members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Pennsylvania UTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1049.   Plaintiffs and the Pennsylvania members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1050.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1051.   Pursuant to 73 P.S. § 201-9.2(a), Plaintiffs and the Pennsylvania members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT FIFTY-THREE — VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1, *ET SEQ.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

1052.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1053.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of the State of Rhode Island during the relevant period ("the Rhode Island members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1054.   The Rhode Island Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." R.I. Gen. Laws § 6-13.1-2. The Rhode Island CPA prohibits acts such as "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "[e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding; "[e]ngaging in any act or practice that is unfair or deceptive to the consumer;" and "[u]sing any other methods, acts, or practices that mislead or deceive members of the public in a material respect…." R.I. Gen. Laws § 6-13.1-1.

1055.   Defendants' activities in regard to glucagon products constitute "trade" and "commerce" under the Rhode Island CPA. R.I. Gen. Laws § 6-13.1.

1056.   Plaintiffs bought glucagon products "primarily for personal, family, or household purposes…." R.I. Gen. Laws § 6-13.1-5.2.

1057.   Defendants violated the Rhode Island CPA, at a minimum by: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1058.   The foregoing violations caused harm to Plaintiffs and the members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

1059.   Plaintiffs seek an injunction to protect the public from further violations of the Rhode Island CPA by Defendants. R.I. Gen. Laws § 6-13.1-5.2.

1060.   Furthermore, Plaintiffs are entitled to actual damages or $200, whichever is greater. Plaintiffs also seek punitive damages, reasonable attorney's fees and costs, and other equitable relief that the Court deems necessary and proper. R.I. Gen. Laws § 6-13.1-5.2.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

**COUNT FIFTY-FOUR — VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C. Code Ann. § 39-5-10, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

3

4

1061.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

5

forth herein.

6

1062.   Plaintiffs bring this count on behalf of themselves and all members of the Non-

7

ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are

8

residents of or who have been residents of the State of South Carolina during any relevant time

9

period (the "South Carolina members of the Classes"), against all Defendants (for the purposes

10

of this section, "Defendants").

11

1063.   Defendants, Plaintiffs and the South Carolina members of the Classes are

12

"persons" within the meaning of S.C. Code § 39-5-10(a).

13

1064.   Defendants are engaged in "trade" or "commerce" within the meaning of S.C.

14

Code § 39-5-10(b) with respect to the conduct alleged herein.

15

1065.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA")

16

prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C.

17

Code § 39-5-20(a).

18

1066.   Defendants engaged in unfair and deceptive acts in violation of the South

19

Carolina UTPA by, at a minimum: (1) making misleading statements regarding the true cost of

20

the price of glucagon products or causing reasonable inferences about the cost that had the

21

tendency to mislead consumers, including but not limited to publishing, setting, or distributing

22

the list price of glucagon products; (2) engaging in advertising concerning the role that

23

Defendants played in setting the price paid for glucagon products, including but not limited to

24

marketing material averring that the PBM Defendants make efforts to decrease the price of

25

prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated

26

and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 252

for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1067.   Defendants owed and continue to owe Plaintiffs and the South Carolina members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1068.   Defendants knew or should have known that their conduct was in violation of the South Carolina UTPA.

1069.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the South Carolina members of the Classes, and continued to engage in unfair and deceptive practices in violation of the South Carolina UTPA.

1070.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the South Carolina members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the South Carolina members of the Classes.

1071.   Plaintiffs and the South Carolina members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the South

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 253

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Carolina members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the South Carolina UTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

1072.  Plaintiffs and the South Carolina members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1073.  Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1074.  Pursuant to S.C. Code § 39-5-140(a), Plaintiffs and the South Carolina Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the South Carolina UTPA.

### COUNT FIFTY-FIVE — VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW (S.D. CODIFIED LAWS § 37-24-6)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

1075.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1076.  Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of the State of South Dakota during the relevant period ("the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 254

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

South Dakota members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1077.   South Dakota's Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") provides that, among other things, it is a deceptive act or practice to "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby...." S.D. Codified Laws § 37-24-6.

1078.   Defendants violated the South Dakota CPL, at a minimum by: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1079.   The foregoing violations caused harm to Plaintiffs and the members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

1080.   The South Dakota CPL provides that "[a]ny person who claims to have been adversely affected by any act or a practice declared to be unlawful by § 37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice." S.D. Codified Laws § 37-24-31. Plaintiffs seek actual damages under the South Dakota CPL.

### COUNT FIFTY-SIX — VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977 (Tenn. Code Ann. § 47-18-101, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

1081.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1082.   Plaintiffs bring this count of behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of Tennessee during any relevant time period (the "Tennessee members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1083.   Plaintiffs and the Tennessee members of the Classes are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2).

1084.   Defendants are "person[s]" within the meaning of Tenn. Code § 47-18-103(9).

1085.   Defendants engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9) with respect to the conduct alleged herein.

1086.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce" including but not limited to: "(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services."; "(3) Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 256

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

by, another."; "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;" "(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "(27) Engaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code § 47-18-104.

1087. Defendants engaged in unfair and deceptive acts in violation of the Tennessee CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1088.    Defendants owed and continue to owe Plaintiffs and the Tennessee members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1089.    Defendants knew or should have known that their conduct was in violation of the Tennessee CPA.

1090.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Tennessee members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Tennessee CPA.

1091.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Tennessee members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Tennessee members of the Classes.

1092.    Plaintiffs and the Tennessee members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Tennessee members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Tennessee CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1093.    Plaintiffs and the Tennessee members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 258

1094.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1095.    Pursuant to Tenn. Code § 47-18-109, Plaintiffs and the Tennessee members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, pursuant to § 47-18-109(a)(3), punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the Tennessee CPA.

## COUNT FIFTY-SEVEN — VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTION ACT (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

1096.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1097.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of Texas during any relevant period (the "Texas members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1098.    The TDTPA, Tex. Bus. & Com. Code Ann. § 17.41, et. seq., prohibits the use of any "deceptive" or "unfair" or "unconscionable" act or practice in connection with a consumer transaction.

1099.    Plaintiffs and the Texas members of the Classes are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), *see* Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4).

1100.    Defendants are "person[s]" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1101. Defendants were and are engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a) with respect to the conduct alleged herein.

1102. The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and "unconscionable action[s] or course of action[s]," which means "act[s] or practice[s] which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

1103. Defendants engaged in false, misleading, deceptive, and unconscionable acts or practices in violation of the Texas DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading,

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1104.   Defendants owed and continue to owe Plaintiffs and the Texas members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1105.   Defendants knew or should have known that their conduct was in violation of the Texas DTPA.

1106.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs,V and the Texas members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Texas DTPA.

1107.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Texas members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Texas members of the Classes.

1108.   Plaintiffs and the Texas members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Texas members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Texas DTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1109.   Plaintiffs and the Texas members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of
2  increased and unfair prices paid for the glucagon products described herein.

3      1110.   Defendants' violations present a continuing risk to Plaintiffs as well as to the
4  general public, who in many cases are unable to afford or gain access to glucagon products. As
5  such, Defendants' unlawful acts and practices complained of herein affect the public interest.

6      1111.   Pursuant to Tex. Bus. & Com. Code § 17.50, Plaintiffs and the Texas members of
7  the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices,
8  damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1),
9  punitive damages, and attorneys' fees, costs, and any other just and proper relief available under
10  the Texas DTPA.

11      1112.   On or about the date of this filing, certain Plaintiffs sent a letter complying with
12  Tex. Bus. & Com. Code § 17.505(a). If Defendants fail to remedy their unlawful conduct within
13  the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Texas
14  members of the Classes are entitled.

15  **COUNT FIFTY-EIGHT — VIOLATIONS OF UTAH CONSUMER SALES PRACTICES**
16  **ACT (Utah Code Ann. § 13-11-1, *et seq.*)**

        (By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
17              and the Uninsured Plaintiffs, Against All Defendants)

18      1113.   Plaintiffs incorporate by reference each preceding paragraph as though fully set
19  forth herein.

20      1114.   Plaintiffs bring this action on behalf of themselves and all members of the Non-
21  ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are
22  or have been residents of the State of Utah at any relevant time (the "Utah members of the
23  Classes") against all Defendants (for the purposes of this section, "Defendants").

24      1115.   Plaintiffs and Utah members of the Classes are "persons" under the Utah
25  Consumer Sales Practices Act ("Utah CSPA"), Utah Code § 13-11-3(5).

26

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 262

1116.   The purchases of the glucagon products described herein are "consumer transactions" within the meaning of Utah Code § 13-11-3(2).

1117.   Defendants are "suppliers" within the meaning of Utah Code § 13-11-3(6).

1118.   The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction." Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code § 13-11-5.

1119.   Defendants engaged in deceptive and unconscionable acts and practices in violation of the Utah CSPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1120.   Defendants owed and continue to owe Plaintiffs and the Utah members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1121.   Defendants knew or should have known that their conduct was in violation of the Utah CSPA.

1122.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Utah members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Utah CSPA.

1123.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Utah members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Utah members of the Classes.

1124.   Plaintiffs and the Utah members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Utah members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Utah CSPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1125.   Plaintiffs and the Utah members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1126.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest

1127.   Plaintiffs and the Utah members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Utah CSPA.

## COUNT FIFTY-NINE — VIOLATIONS OF VERMONT CONSUMER PROTECTION ACT (Vt. Stat. Ann. Tit. 9, § 2451 *et seq.*)

### (By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

1128.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1129.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of Vermont during any relevant time period (the "Vermont members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

1130.   Plaintiffs and the Vermont members of the Classes are "consumers" within the meaning of Vt. Stat. Tit. 9, § 2451a(a).

1131.   Defendants are "person[s]" within the meaning of Vt. Code R. § 100(3) (citing Vt. Stat. Tit. 9, § 2453).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 265

1132. Defendants are engaged in "commerce" within the meaning of Vt. Stat. Tit. 9, § 2453(a), with respect to the acts and practices alleged herein.

1133. The Vermont Consumer Protection Act ("Vermont CPA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce . . . ." Vt. Stat. Tit. 9, § 2453(a).

1134. Defendants engaged in unfair and deceptive conduct in violation of the Vermont CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1135. Defendants owed and continue to owe Plaintiffs and the Vermont members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1136.   Defendants knew or should have known that their conduct was in violation of the Vermont CPA.

1137.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Vermont members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Vermont CPA.

1138.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Vermont members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Vermont members of the Classes.

1139.   Plaintiffs and Vermont members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Vermont members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Vermont CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1140.   Plaintiffs and the Vermont members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1141.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1142.    Pursuant to Vt. Stat. Tit. 9, § 2461(b), Plaintiffs and the Vermont members of the Classes seek an order enjoining Defendants unfair and/or deceptive acts or practices, actual damages, damages up to three times the consideration provided, punitive damages, attorneys' fees, costs, and any other just and proper relief available under the Vermont CPA.

### COUNT SIXTY — VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (Va. Code Ann. §§ 59.1-196, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

1143.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1144.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents of or who have been residents of the State of Virginia during any relevant time period (the "Virginia members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1145.    Defendants, Plaintiffs, and the Virginia members of the classes are "persons" within the meaning of Va. Code § 59.1-198.

1146.    Defendants are "suppliers" within the meaning of Va. Code § 59.1-198.

1147.    The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

1148.    Defendants engaged in fraudulent acts or practices in violation of the Virginia CPA, at a minimum by: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1149.    Defendants owed and continue to owe Plaintiffs and the Virginia members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1150.    Defendants knew or should have known that their conduct was in violation of the Virginia CPA.

1151.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the Virginia members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Virginia CPA.

1152.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Virginia members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Virginia members of the Classes.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1153.   Plaintiffs and other Virginia members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Virginia members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Virginia CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1154.   Plaintiffs and the Virginia members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1155.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1156.   Pursuant to Va. Code § 59.1-204(A)–(B), Plaintiffs and the Virginia members of the Classes are entitled to the greater of actual damages or $500 for each Virginia member of the Classes, attorneys' fees, and costs. Because Defendants' actions were willful, Plaintiffs and the Virginia Classes should each receive the greater of treble damages or $1,000. *Id.*

### COUNT SIXTY-ONE — VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT (Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

1157.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1158.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 270

residents or who have been residents of the State of Washington (the "Washington members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

1159.   Defendants, Plaintiffs, and the Washington members of the Classes are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

1160.   Defendants are engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

1161.   The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code § 19.86.020.

1162.   The Washington CPA also renders it unlawful "for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce." Wash. Rev. Code § 19.86.040.

1163.   Defendants engaged in unfair, deceptive, and monopolistic acts and practices in violation of the Washington CPA by, at a minimum:  (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 271

regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1164.    Defendants owed and continue to owe Plaintiffs and the Washington members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1165.    Defendants knew or should have known that their conduct was in violation of the Washington CPA.

1166.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Washington members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Washington CPA.

1167.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Washington members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Washington members of the Classes.

1168.    Plaintiffs and other Washington members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Washington members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Washington CPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 272

1169.   Plaintiffs and the Washington members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1170.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1171.   Pursuant to Wash. Rev. Code § 19.86.090, Plaintiffs and the Washington members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Washington CPA. Because Defendants' actions were willful and knowing, Plaintiffs' damages should be trebled.  *Id.*

## COUNT SIXTY-TWO — VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT (W. Va. Code § 46A-1-101, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

1172.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1173.   Plaintiffs bring this count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of West Virginia (the "West Virginia members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

1174.   Defendants, Plaintiffs, and the West Virginia members of the Classes are "persons" within the meaning of W. Va. Code § 46A-1-102(31).

1175.   Plaintiffs and the West Virginia members of the members of the Classes are "consumers" within the meaning of W. Va. Code §§ 46A-1-102(2) and 46A-1-102(12).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1176.    The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  W. Va. Code § 46A-6-104.

1177.    Defendants engaged in unfair and deceptive practices in violation of the West Virginia CCPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1178.    Defendants owed and continue to owe Plaintiffs and the West Virginia members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1179.    Defendants knew or should have known that their conduct was in violation of the West Virginia CCPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1180.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs and the West Virginia members of the Classes, and continued to engage in unfair and deceptive practices in violation of the West Virginia CCPA.

1181.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the West Virginia members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the West Virginia members of the Classes.

1182.   Plaintiffs and the West Virginia members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the West Virginia members of the Classes to overpay for the glucagon products. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the West Virginia CCPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1183.   Plaintiffs and the West Virginia members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1184.   Pursuant to W. Va. Code § 46A-6-106(a), Plaintiffs and the West Virginia members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the West Virginia CCPA.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1185.   On our about the date of this filing, certain Plaintiff sent a letter complying with W. Va. Code § 46A-6-106(c).  If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the West Virginia members of the Classes are entitled.

### COUNT SIXTY-THREE — VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT (Wis. Stat. § 100.18)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

1186.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1187.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are or have been residents of the State of Wisconsin (the "Wisconsin members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

1188.   Plaintiffs and the Wisconsin members of the Classes are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

1189.   Plaintiffs and Wisconsin members of the Classes are "persons" under the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), Wis. Stat. § 100.18(1).

1190.   Each Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

1191.   The Wisconsin DTPA makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

1192.   Defendants acted in violation of the Wisconsin DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 276

for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1193.    Defendants owed and continue to owe Plaintiffs and the Wisconsin members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1194.    Defendants knew or should have known that their conduct was in violation of the Wisconsin DTPA.

1195.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Wisconsin members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Wisconsin DTPA.

1196.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Wisconsin members of the Classes, and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Wisconsin members of the Classes.

1197.   Plaintiffs and the Wisconsin members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Wisconsin members of the Classes to overpay for the glucagon products described herein. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Wisconsin DTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

1198.   Plaintiff and the Wisconsin members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1199.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1200.   Plaintiffs and the Wisconsin members of the Classes seek damages, court costs and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2), and any other just and proper relief available under the Wisconsin DTPA.

### COUNT SIXTY-FOUR — VIOLATIONS OF THE WYOMING CONSUMER PROTECTION ACT (Wyo. Stat. §§ 40-12-101, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs, and the Uninsured Plaintiffs, Against All Defendants)

1201.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1202.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class, the Medicare Class and/or the Uninsured Class who are residents or have been residents of the State of Wyoming (the "Wyoming members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

1203.   Plaintiffs, the Wyoming members of the Classes, and Defendants are "persons" within the meaning of Wyo. Stat. § 40-12-102(a)(i).

1204.   The glucagon products described herein constitute "merchandise" pursuant to Wyo. Stat. § 40-12-102(a)(vi).

1205.   Each sale of a glucagon product constitutes a "consumer transaction" as defined by Wyo. Stat. § 40-12-102(a)(ii).  These consumer transactions occurred "in the course of [Defendants'] business" under Wyo. Stat. § 40-12-105(a).

1206.   The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits unlawful deceptive trade practices, including when a seller: "(i) Represents that merchandise has a source, origin, sponsorship, approval, accessories, or uses it does not have; (ii) Represents that he has a sponsorship, approval or affiliation he does not have; (iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not;" "(vii) Makes false or misleading statements of fact concerning the price of merchandise or the reason for, existence of, or amounts of a price reduction;" "(x) Advertises merchandise with intent not to sell it as advertised;" "(xv) Engages in unfair or deceptive acts or practices."  Wyo. Stat. §§ 40-12-105(a).

1207.   Defendants engaged in unfair and deceptive acts or practices in violation of the Wyoming CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of glucagon products or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of glucagon products; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for glucagon products, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 279

prescription drugs and/or glucagon products for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for glucagon products; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' glucagon products on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of glucagon products at a grossly inflated and/or fraudulently obtained price point.

1208.   Defendants owed and continue to owe Plaintiffs and the Wyoming members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the glucagon products described herein.

1209.   Defendants knew or should have known that their conduct was in violation of the Wyoming CPA.

1210.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the glucagon products described herein, with the intent to mislead regulators, Plaintiffs, and the Wyoming members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Wyoming CPA.

1211.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Wyoming members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Wyoming members of the Classes.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 280

1212.   Plaintiffs and other Wyoming members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the glucagon products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Wyoming members of the Classes to overpay for the glucagon products described herein. Because Defendants did not reveal the true nature of the Glucagon Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Wyoming CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1213.   Plaintiffs and the Wyoming members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the glucagon products described herein.

1214.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to glucagon products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1215.   Pursuant to Wyo. Stat. § 40-12-108(a), Plaintiffs and the Wyoming members of the Classes seek damages as determined at trial, and any other just and proper relief available under the Wyoming CPA, including but not limited to court costs and reasonable attorneys' fees as provided in Wyo. Stat. § 40-12-108(b).

1216.   On or about the date of this filing, certain Plaintiffs sent a letter complying with Wyo. Stat. § 40-12-109.  If Defendants fail to offer to cure, or fail to complete a remedy of their deceptive trade acts and practices within the required time period, see Wyo. Stat. § 40-12-102(a)(ix), Plaintiffs seek all damages and relief available under the Wyoming CPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT SIXTY-FIVE — COMMON LAW FRAUD

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

1217.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1218.    Plaintiffs bring this Count on behalf of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class.

1219.    As alleged extensively above, Defendants affirmatively misrepresented and/or concealed and suppressed material facts concerning: (a) the true cost and/or price of glucagon; (b) the inflated and/or fraudulent nature of the list price(s) set and/or charged by Defendants for glucagon; (c) the existence, amount, and/or purpose(s) of discounts and/or rebates offered and/or negotiated by Defendants for those products; and (d) the role that Defendants' played in the price paid for glucagon, including but not limited to marketing material averring that PBM Defendants decrease the price of prescription drugs for consumers.

1220.    Defendants valued their profits over the trust, health and safety of Plaintiffs and other members of the Classes.

1221.    Necessarily, Defendants took steps to ensure that their employees and co-conspirators did not reveal the details of their scheme to inflate the price of glucagon to consumers, including Plaintiffs and members of the Classes.

1222.    Defendants' false representations and omissions were material to consumers, Plaintiffs and the members of the Classes.

1223.    Plaintiffs and members of the Classes reasonably relied on Defendants' deception, and Defendants intended that they would so rely. Plaintiffs and members of the Classes had no way of discerning that Defendants were, in fact, deceiving them because they possessed exclusive knowledge regarding the nature of glucagon pricing; intentionally concealed the foregoing from, Plaintiffs, the Classes and the public; and made incomplete or negligent representations about the pricing of glucagon and the Defendants' role in that pricing, while

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 282

purposefully withholding material facts from Plaintiffs and the Classes that contradicted these representations.

1224.   Defendants' actions, representations, and misrepresentations demonstrate callous disregard for not only the rule of law but also public health. Indeed, as a direct result of Defendants' actions, access to live-saving glucagon has been limited, denied, or forgone.

1225.   Defendants owed Plaintiffs and the Classes a duty to disclose, truthfully, all the facts concerning the true cost of glucagon and the inflated and fraudulent nature of their pricing; the existence, amount, and purpose of rebated and discounts negotiated for those products; and the role that Defendants played in increasing the price of glucagon.

1226.   Defendants hatched their deceptive schemes and knew that their customers, including Plaintiffs and members of the Classes, did not know about (and could not reasonably discover) the manner in which they sought to artificially inflate the price of glucagon. Defendants not only concealed all the facts concerning the true cost of glucagon, but went further to make affirmative misrepresentations in marketing materials and other communications, that Defendants worked to lower the ultimate cost of prescription medications. Defendants engaged in this fraudulent concealment at the expense of Plaintiffs and the Classes.

1227.   Plaintiffs and the members of the Classes were not aware of the concealed and misrepresented material facts referenced above, and they would not have acted as they did, had they known the truth.

1228.   As a direct and proximate result of Defendants' fraudulent scheme, Plaintiffs and the members of the Classes sustained damages, including but not limited to paying excessive and inflated prices for glucagon.

1229.   Defendants are liable to Plaintiffs and the members of the Classes for damages in an amount to be proven at trial. Moreover, because Defendants acted wantonly, maliciously, oppressively, recklessly, deliberately, and with intent to defraud Plaintiffs and members of the Classes for the purpose of enriching themselves at Plaintiffs' and the members' of the Classes

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

detriment, Defendants' conduct warrants substantial punitive and exemplary damages in an amount to be determined at trial.

### COUNT SIXTY-SIX — UNJUST ENRICHMENT

(By the Non-ERISA Employee/Exchange Plaintiffs, the Medicare Plaintiffs,
and the Uninsured Plaintiffs, Against All Defendants)

1230.  Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1231.  Plaintiffs bring this Count on behalf of themselves and the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class.

1232.  Defendants have benefitted from selling, setting prices for and negotiating discounts for glucagon marketed and sold at an artificially inflated price.

1233.  Defendants have received and retained unjust benefits from the Plaintiffs and members of the Classes, in the form of costs paid, copayments, and coinsurance payments, and inequity has resulted.

1234.  It is inequitable and unconscionable for Defendants to retain these benefits.

1235.  Because Defendants concealed their fraud and deception, Plaintiffs and the members of the Classes were not aware of the true facts concerning Defendants efforts to inflate the cost of glucagon and did not benefit from Defendants' misconduct.

1236.  Defendants knowingly accepted the unjust benefits of its fraudulent conduct.

1237.  As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiffs and members of the Classes, in an amount to be proven at trial.

### X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.  Determine that this action may be maintained as a class action pursuant to Federal
   Rules of Civil Procedure 23(a) and (b)(3), (b)(2), and/or (b)(1), and direct that

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Classes, and declare Plaintiffs as the representatives of the respective Classes they seek to represent, and appoint their attorneys as Class Counsel;

B. Enter judgments against Defendants and in favor of Plaintiffs and the Classes for violations of the federal and state laws and legal standards invoked in this Complaint;

C. Award preliminary and permanent injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the unlawful acts described above; an order requiring Defendants or their agents to disclose the existence and/or amount of any rebates, discounts, fees, or other payments received by the PBM Defendants for including glucagon on any formulary, and an order requiring Defendants or their agents to disclose the true net price of glucagon collected by the Manufacturer Defendants;

D. Find that the PBM Defendants are fiduciaries and/or parties in interest as defined by ERISA;

E. Find that the PBM Defendants violated their fiduciary duties of loyalty and prudence to ERISA Class members, and that they engaged in prohibited transactions in violation of ERISA;

F. Award to the ERISA Plaintiffs and the ERISA Class restitution, surcharge, and/or other appropriate equitable relief, including, without limitation, disgorgement of all profits and unjust enrichment that Defendants obtained from the ERISA Plaintiffs and the ERISA Class, as a result of the Defendants' unlawful actions;

G. Order other such remedial relief as may be appropriate under ERISA, including the permanent removal of Defendants from any positions of trust with respect to the ERISA Plans of the members of the ERISA Class and the appointment of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 285

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

independent fiduciaries to serve in the roles the PBM Defendants occupied with respect to the ERISA Plans of the ERISA Class, including as pharmacy benefit administrators and managers;

H.  Order Defendants to pay pre-judgment and post-judgment interest as provided for by law or allowed in equity;

I.  Award Plaintiffs and the Classes damages (three times overcharges) in an amount to be determined at trial;

J.  Award Plaintiffs and the Classes their costs of suit, including reasonable attorneys' fees as provided by law, including under RICO, ERISA, the Sherman Act, the common fund doctrine, and applicable state law;

K.  Find that Defendants are jointly and severally liable for all claims;

L.  Order that Defendants must notify each and every individual who paid a copayment or coinsurance for covered prescription products that exceeded the true cost of the product about the pendency of this action so that they may obtain relief from Defendants for their harm; and

M.  Award such further and additional relief as the case may require and the Court may deem just and proper under the circumstances.

## XI.    JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, on behalf of themselves and the proposed Classes, demand a trial by jury on all issues so triable.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    DATED this 24th day of May, 2017.

2                                KELLER ROHRBACK L.L.P.

3

4                        By /s/ Derek W. Loeser
                            /s/ Gretchen S. Obrist
5                            Derek W. Loeser, WSBA #24274
                             Gretchen S. Obrist, WSBA #37071
6                            1201 Third Avenue, Suite 3200
                             Seattle, WA 98101-3052
7                            Phone: (206) 623-1900
                             Fax: (206) 623-3384
8                            dloeser@kellerrohrback.com
                             gobrist@kellerrohrback.com
9
                             *Attorneys for Plaintiffs*
10

11

12
4840-1432-7881, v. 1
13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 287